UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BUSINESS CASUAL HOLDINGS, LLC, a Delaware limited liability company, <br><br> Plaintiff, <br><br> v. <br><br> YOUTUBE, LLC, a Delaware limited liability company; GOOGLE LLC, a Delaware limited liability company; and ALPHABET INC., a Delaware corporation, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) Case No.: 21-cv-3610 <br><br> **JURY TRIAL DEMANDED** |

## **COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Business Casual Holdings, LLC, by and through its attorneys, Duff Law PLLC, states as follows:

## **NATURE OF THE DISPUTE**

1. Plaintiff Business Casual Holdings, LLC ("Plaintiff" or "Business Casual") seeks monetary and injunctive relief from Defendants YouTube, LLC ("YouTube"); Google LLC ("Google"); and Alphabet Inc. ("Alphabet") for failure to maintain and reasonably implement a repeat infringer policy as required by the Digital Millennium Copyright Act ("DMCA").

2. To qualify for protection under the safe harbor provision of the DMCA that insulates service providers hosting third-party content, 17 U.S.C. § 512(c), a service provider must meet a set of threshold criteria. The criteria described in § 512 of the DMCA includes a requirement that a service provider seeking shelter in the DMCA's safe harbor provision must have "adopted and reasonably implemented . . . a policy that provides for the termination in

1

appropriate circumstances of subscribers and account holders of the service provider's system or network who are repeat infringers[.]" §512(i)(1)(A).

3. YouTube's repeat infringer policy is published on YouTube's website. (Ex. A.)

4. YouTube's repeat infringer policy states: "[I]f a copyright owner submits a valid DMCA complaint through our webform, we take down that video and apply a copyright strike. If a user gets three copyright strikes in 90 days, their account, along with any associated channels, will be terminated."

5. YouTube's repeat infringer policy also states: "If your channel is part of the YouTube Partner Program, you're eligible for a 7 day courtesy period. After 3 copyright strikes, you'll have 7 additional days to act before your channel is disabled. During this period, your copyright strikes won't expire and you can't upload new videos. Your channel will remain live and you can access it to seek a resolution for your strikes. If you submit a counter notification, your channel won't be disabled while the counter notification is unresolved. If the counter notification is resolved in your favor, or the claim is retracted, your channel won't be impacted."

6. With respect to infringing live streams, YouTube's repeat infringer policy states: "Your channel's live streaming ability will be automatically turned off if . . . your live stream or archived live stream gets a [DMCA] copyright takedown." Furthermore, YouTube's repeat infringer policy also states: "[I]f your account has been restricted from live streaming, you're prohibited from using another channel to live stream on YouTube. This restriction applies for as long as it remains active on your account. Violation of this restriction is considered circumvention under our Terms of Service."

7. When a rights holder files a copyright takedown notification with a service provider like YouTube and the alleged infringer files a counter notification, the DMCA requires the rights holder to file "an action seeking a court order to restrain the subscriber from engaging in infringing activity relating to the material on the service provider's system or network" within ten to fourteen business days following receipt of the counter notification. § 512(g)(2)(C).

8. As detailed below, YouTube knowingly enables repeat infringers that exploit YouTube's repeat infringer policy to avoid termination by submitting frivolous counter notifications.

9. Under YouTube's repeat infringer policy, repeat infringers can, and do, submit counter notifications in bad faith to YouTube to avoid termination of their channels.

10. YouTube materially benefits from its failure to enforce its repeat infringer policy by permitting repeat infringers to enjoy unrestricted access to YouTube's Partner Program.

11. YouTube's Partner Program enables users to monetize their YouTube channels through Google's AdSense network. YouTube's users and Defendants split the revenue generated to their mutual benefit on a 55/45 basis.

12. Defendants have not adopted and reasonably implemented a repeat infringer policy as is necessary to enjoy the protections for service providers given by § 512 of the DMCA.

## THE PARTIES

13. Plaintiff is a limited liability company organized under the laws of Delaware.

14. Plaintiff creates original documentary content that it posts on the YouTube channel that it operates located at the following domain: https://www.youtube.com/BusinessCasual.

15. Defendant YouTube is a limited liability company organized under the laws of the State of Delaware with an address at 75 9th Avenue, New York, New York 10011. Since 2006, Defendant Google has operated YouTube as a wholly-owned subsidiary of Google. At all relevant times, Defendant Google has operated Defendant YouTube.

16. Defendant Google is a limited liability company organized under the laws of the State of Delaware with an address at 111 8th Avenue, New York, New York 10011. Defendant Google is a wholly-owned subsidiary of Defendant Alphabet, which at all relevant times has controlled Defendant Google.

17. Defendant Alphabet is a corporation organized under the laws of the State of Delaware with its principal place of business at 1600 Amphitheatre Parkway, Mountain View, California 94043. Alphabet is the sole owner of Defendant Google and controls Defendant Google. Defendant Alphabet is the alter ego of Defendant of Google. Defendant Google is the alter ego of Defendant YouTube. Defendants YouTube and Google direct all profit to, and report revenue through, Defendant Alphabet.

## JURISDICTION AND VENUE

18. This is a civil action seeking damages and injunctive relief arising, in part, from Defendants' failure to adopt and reasonably implement a repeat infringer policy as required by the Copyright Act, 17 U.S.C. § 101 *et seq*.

19. This Court has original subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and § 1338(a).

20. This Court has personal jurisdiction over Defendants because they purposefully direct their business activities toward consumers in the State of New York, including within this judicial district, derive a commercial benefit from their contacts within the State of New York,

and are causing injury to Plaintiff and consumers by their actions within the State of New York and this judicial district.

21. Venue is proper in this district pursuant to 28 U.S.C. § 1391 and 28 U.S.C. § 1400.

**STATEMENT OF FACTS**

**A.     Business Casual Discovers and Reports Instances of Copyright Infringement**

22. On June 8, 2018, Business Casual published an original documentary video on YouTube titled *How Rockefeller Built His Trillion Dollar Oil Empire* (the "Rockefeller Video").

23. On June 25, 2020, Business Casual published an original documentary video on YouTube titled *J.P. Morgan Documentary: How One Man Financed America* (the "J.P. Morgan Video").

24. On March 8, 2021, Business Casual received federal Copyright Registration No. PA0002280262 for the Rockefeller Video (the "Rockefeller Registration"), a copy of which is attached as **Exhibit B**.

25. On March 8, 2021, Business Casual received federal Copyright Registration No. PA0002280264 for the J.P. Morgan Video (the "J.P. Morgan Registration"), a copy of which is attached as **Exhibit C**.

26. The Rockefeller Registration and J.P. Morgan Registration may be referred to herein as the "Business Casual Registrations."

27. On January 2, 2021, Business Casual submitted a DMCA takedown request to YouTube concerning a video posted on YouTube's website by a third party, TV-Novosti (the "Repeat Infringer" or "TV-Novosti") that illegally copied from Plaintiff's J.P. Morgan Video (the "First Infringing Video"), a copy of which is attached as **Exhibit D**.

28. On January 11, 2021, YouTube removed Repeat Infringer's First Infringing Video and applied a copyright strike to TV-Novosti's RT Arabic YouTube channel.

29. On January 19, 2021, a representative of Repeat Infringer sent Plaintiff two emails in which Repeat Infringer admitted that it had copied from Business Casual's copyrighted J.P. Morgan Video without Plaintiff's prior permission and submitted a DMCA counter notification to YouTube "by mistake."

30. Repeat Infringer's January 19, 2021 email stated "[y]es, you are right. I am terribly sorry about the use of your material in our project. Due to an oversight and misunderstanding here, my colleagues used this fragment without your permission . . . [w]e are ready to pull our entire project from circulation and remove your copyrighted material if you retract the strike," and "[f]ollowing up my previous email I'd like to add that my colleagues filed a counter [notification] by mistake yesterday. So please ignore it."

31. On January 20, 2021, YouTube notified Business Casual that Repeat Infringer had retracted the DMCA counter notification it filed with YouTube concerning TV-Novosti's First Infringing Video that copied portions of Plaintiff's copyrighted J.P. Morgan Video.

32. On February 9, 2021, Business Casual submitted a DMCA takedown request to YouTube concerning a second video posted by Repeat Infringer that copied portions of Plaintiff's Rockefeller Video (the "Second Infringing Video"), a copy of which is attached as **Exhibit E**.

33. On February 15, 2021, Business Casual submitted a DMCA takedown request to YouTube concerning a third video posted by Repeat Infringer that copied portions of Plaintiff's J.P. Morgan Video (the "Third Infringing Video"), a copy of which is attached as **Exhibit F**.

34. Repeat Infringer's Third Infringing Video copied the *exact* same infringing content exploited in Repeat Infringer's First Infringing Video. For the avoidance of any confusion whatsoever: both Repeat Infringer's First Infringing Video and its Third Infringing Video copied from Plaintiff's J.P. Morgan Video.

35. On February 18, 2021, YouTube removed Repeat Infringer's Third Infringing Video and applied a second copyright strike to RT Arabic's YouTube channel.

36. Although Defendants removed the Third Infringing Video, which was live streamed on TV-Novosti's RT Arabic channel, on February 18, 2021, Defendants have not disabled live streaming capabilities for Repeat Infringer's RT Arabic channel or its associated channels as of the date of this filing, which is a violation of YouTube's published policies. (Ex. A.)

37. On February 28, 2021, YouTube notified Business Casual that Repeat Infringer had filed a DMCA counter notification with respect to the Third Infringing Video, and YouTube would reinstate the Third Infringing Video if Business Casual did not seek a court order to restrain Repeat Infringer's infringing activity within ten (10) business days.

38. On March 4, 2021, YouTube removed the Second Infringing Video and applied a third copyright strike to RT Arabic's YouTube channel.

39. On March 9, 2021, Business Casual filed a federal copyright infringement lawsuit against TV-Novosti in the Southern District of New York, captioned *Business Casual Holdings, Inc. v. TV-Novosti*, 1:21-cv-2007-JGK, seeking, in part, a court order restraining TV-Novosti from continuing its pattern of posting content infringing upon Business Casual's copyrighted videos.

40. On March 12, 2021, YouTube notified Business Casual that Repeat Infringer had filed a third counter notification with respect to Repeat Infringer's Second Infringing Video.

41. Consequently, Business Casual was compelled to amend its complaint to include the Third Infringing Video.

42. Upon information and belief, TV-Novosti submitted each of the counter notifications described above knowing that they contained material misrepresentations and in violation of 17 U.S.C § 512 (f)(2) to avoid termination of its YouTube channels under YouTube's repeat infringer policy.

43. In an email to Business Casual, TV-Novosti's counsel acknowledged that withdrawing its counter notifications would result in the termination of its accounts on YouTube: "[O]ur client's understanding [is] that withdrawing the counter-notifications will result in YouTube terminating RT's channel." (Ex. G.)

44. TV-Novosti demonstrated its bad faith and flagrant disregard for Plaintiff's copyrighted material by removing Business Casual's watermark from each of Business Casual's copyrighted videos identified above, adding its own "RT" watermark, and altering the brightness and saturation of each of its infringing videos to, upon information and belief, circumvent YouTube's automated Content ID and Copyright Match Tools to avoid getting caught doing what it knew was unlawful.

**B.  YouTube's Published Repeat Infringer Policy is Not Reasonably Implemented**

45. YouTube's repeat infringer policy states "[i]f a copyright owner submits a valid DMCA complaint through our webform, we take down that video and apply a copyright strike. If a user gets three copyright strikes in 90 days, their account, along with any associated channels, will be terminated." (Ex. A.)

46. YouTube's repeat infringer policy further states that "[i]f your channel is part of the YouTube Partner Program, you're eligible for a 7 day courtesy period. After 3 copyright strikes, you'll have 7 additional days to act before your channel is disabled. During this period, your copyright strikes won't expire and you can't upload new videos. Your channel will remain live and you can access it to seek a resolution for your strikes. If you submit a counter notification, your channel won't be disabled while the counter notification is unresolved. If the counter notification is resolved in your favor, or the claim is retracted, your channel won't be impacted." (Ex. H.)

47. Repeat Infringer's seven-day courtesy period under YouTube's repeat infringer policy ended on March 11, 2021, but Repeat Infringer's channels have not been terminated as required by YouTube's repeat infringer policy.

48. On March 31, 2021, YouTube briefly terminated one of TV-Novosti's channels, RT Arabic. YouTube reinstated RT Arabic's channel a few hours later.

49. As of the date of this filing, YouTube provides the following message when users attempt to access Repeat Infringer's First Infringing Video, Second Infringing Video, or Third Infringing Video: "This video is no longer available due to a copyright claim by Business Casual." (Ex. I.)

C. **TV-Novosti Operates 39 Associated YouTube Channels Identified By "RT"**

50. TV-Novosti is an "autonomous non-profit organization" (ANO) owned-and-controlled by the Russian Federation.

51. According to the United States Department of Justice's FARA Unit and relevant U.S. intelligence authorities, TV-Novosti is Kremlin-controlled state-owned foreign principal

that provides significant funding to several registered foreign agent entities, including RT. (Ex. J.)

52. On August 17, 2017, the United States Department of Justice declared that "RT and TV-Novosti are Proxies of the Russian Government." (Ex. J.) The Department of Justice also stated that RT's editor-in-chief, Margarita Simonyan, "has acknowledged that 'since RT receives its budget from the state, it must complete tasks given by the state.' Simonyan has also referred to RT as 'an information weapon' to be used against the United States." (Ex. K.)

53. Upon information and belief, TV-Novosti owns-and-controls, at least, thirty-nine (39) associated YouTube channels, including RT Arabic.

54. TV-Novosti's thirty-nine associated YouTube channels are listed in **Exhibit L**.

55. TV-Novosti's thirty-nine YouTube channels collectively have more than twenty-six million (26,000,000) subscribers and receive roughly four hundred two million (402,000,000) views each month (or approximately five billion views annually) as of the date of this filing.

56. Upon information and belief, TV-Novosti's thirty-nine associated YouTube channels generate a significant amount of revenue for Defendants.

57. YouTube acknowledges that TV-Novosti's thirty-nine channels are associated by appending a disclaimer that states: "RT is funded in whole or in part by the Russian government" above all video titles published by TV-Novosti's YouTube channels. (Ex. M.)

58. YouTube applied three (3) copyright strikes to TV-Novosti's RT Arabic YouTube channel within a period of fifty-two (52) days following DCMA takedown requests submitted by Business Casual.

59. On March 19, 2021, a senior-level Google executive, Elisabet Lykhina, emailed Business Casual confirming that Repeat Infringer had received three copyright strikes. The

email stated "I would like to kindly get in touch with you to discuss the current case of 3 YT strikes that your channel Business Casual has recently sent to a RU/CIS news YT channel RT Arabic."

60. According to Lykhina's LinkedIn profile, Lykhina was a managing producer for a Russian state-owned television network, "Россия" (known in English as "Rossiya"), prior to joining YouTube as its Moscow-based Head of Enterprise Partnerships for the Commonwealth of Independent States. (Ex. N.)

61. Upon information and belief, Lykhina failed to register as an agent of a foreign principal under the Foreign Agents Registration Act ("FARA") during her tenure as a managing producer at Rossiya.

62. As of the date of this complaint's filing, FARA's eFile system does not return any results under any of Lykhina's names herein ("Yelizaveta Lykhina," "Elisabet Lykhina," or "Элизабет Лыхина").

63. Upon information and belief, Defendants are aware of Lykhina's prior relationship with Rossiya and her potential conflict of interest.

64. On March 31, 2021, the same day YouTube briefly terminated TV-Novosti's RT Arabic YouTube channel, Maya Manna, a representative of TV-Novosti, remarked in a now-deleted Twitter post: "YouTube has restored RT Arabic's channel on its platform. We thank our partners at YouTube Russia for a prompt reaction!" Manna further stated that Business Casual's copyright infringement lawsuit against TV-Novosti is a "coordinated attack by an organization funded by the rich for political reasons." (Ex. O.)

65. Upon information and belief, Manna is an agent of a foreign principal pursuant to 22 U.S.C. § 611(c); 28 C.F.R. § 5.100.

66. As of the date of this complaint's filing, FARA's eFile system does not return any results under any of Manna's names herein ("Maya Manna" or "Майя Манна").

67. Commenting on RT Arabic's brief termination, Russia's Foreign Ministry of Affairs, Maria Zakharova, called Business Casual "an internal American terrorist" and stated "American digital giants have raped free speech." (Ex. P.)

68. TV-Novosti went on to publish a statement that YouTube had confirmed to it: "Today's brief blocking of RT Arabic was unintentional. We will analyze and draw conclusions about what needs to be done to avoid such unintentional actions in the future." (Ex. O.)

**D. Defendants' Actual and Red Flag Knowledge of TV-Novosti's Pattern of Infringement**

69. At least two (2) senior-level Google executives, Mel Silva and Ed Miles, have acknowledged receipt of correspondence from Business Casual detailing TV-Novosti's pattern of copyright infringement.

70. Business Casual's correspondence to the aforementioned executives at Google stated, in part, that: (a) TV-Novosti's RT Arabic YouTube channel received three copyright strikes following Business Casual's DMCA takedown notifications; (b) all three copyright strikes were applied to RT Arabic's YouTube channel within a span of fifty-two calendar days; (c) TV-Novosti is a repeat infringer operating in bad faith as described above; (d) TV-Novosti had admitted to the unauthorized copying of Business Casual's copyrighted content and the filing of at least one counter notification that should not have been filed with YouTube; and (e) YouTube's repeat infringer policy mandates termination of TV-Novosti's YouTube channels in light of TV-Novosti's brazen infringements which demonstrate an obvious and flagrant disregard for Business Casual's copyrighted works. Business Casual also enclosed a copy of its complaint against TV-Novosti.

71. When Business Casual asked Google whether YouTube applies its repeat infringer policy to all channels on its interactive website "regardless of subscriber count and political influence," Miles acknowledged Business Casual's lawsuit against Repeat Infringer and responded: "We do not think that it is appropriate for YouTube to be discussing this matter with you." (Ex. Q.)

72. On April 2, 2021, Business Casual wrote to Defendant Alphabet's board of directors describing the details recited above and requesting the termination of Repeat Infringer's YouTube channels. (Ex. R.)

73. On April 14, 2021, Plaintiff received a response from YouTube confirming that channels within YouTube's Partner Program "[that are] the subject of copyright takedown notifications but that file counter notifications typically 'won't be disabled while the counter notification is unresolved.' . . . If a court resolves the copyright claims you've brought against [the alleged repeat infringer] in your favor, please let us know by emailing a copy of the judgment to copyright@youtube.com." (Ex. S.)

74. Because Defendants have not adopted and reasonably implemented a repeat infringer policy with respect to TV-Novosti, Defendants are not entitled to protection from liability under the DMCA safe harbor.

**CLAIMS FOR RELIEF**

**COUNT 1**
**COPYRIGHT INFRINGEMENT**
**(First Infringing Video)**

75. Plaintiff restates all paragraphs as if fully restated herein.

76. Plaintiff is the owner of the J.P. Morgan Registration for the J.P. Morgan Video.

77. The First Infringing Video includes copied portions of the J.P. Morgan Video.

78. The First Infringing Video infringes upon Plaintiff's J.P. Morgan Registration.

79. Upon information and belief, the First Infringing Video was monetized on YouTube generating revenue for each of the Defendants.

80. Defendants do not qualify for safe harbor protection under the DMCA because they refuse to terminate a repeat infringer as defined by their own published policy.

81. Defendants have each significantly profited from their refusal to enforce YouTube's published repeat infringer policy.

82. As a direct result of Defendants' acts of infringement, Business Casual is entitled to injunctive relief, damages, and disgorgement of profits.

## COUNT 2
## COPYRIGHT INFRINGEMENT
### (Second Infringing Video)

83. Plaintiff restates all paragraphs as if fully restated herein.

84. Plaintiff is the owner of the Rockefeller Registration for the Rockefeller Video.

85. The Second Infringing Video includes copied portions of the Rockefeller Video.

86. The Second Infringing Video infringes upon Plaintiff's Rockefeller Registration.

87. Upon information and belief, the Second Infringing Video was monetized on YouTube generating revenue for Defendants.

88. Defendants do not qualify for safe harbor protection under the DMCA because they refuse to terminate a repeat infringer as defined by their own published policy.

89. Defendants have each significantly profited from their refusal to enforce YouTube's published repeat infringer policy.

90. As a direct result of Defendants' acts of infringement, Business Casual is entitled to injunctive relief, damages, and disgorgement of profits.

# COUNT 3
# COPYRIGHT INFRINGEMENT
# (Third Infringing Video)

91. Plaintiff restates all paragraphs as if fully restated herein.

92. Plaintiff is the owner of the J.P. Morgan Registration for the J.P. Morgan Video.

93. The Third Infringing Video includes copied portions of the J.P. Morgan Video.

94. The Third Infringing Video infringes upon Plaintiff's J.P. Morgan Registration.

95. Upon information and belief, the Third Infringing Video was monetized on YouTube generating revenue for each of the Defendants.

96. Defendants do not qualify for safe harbor protection under the DMCA because they refuse to terminate a repeat infringer as defined by their own published policy.

97. Defendants have each significantly profited from their refusal to enforce YouTube's published repeat infringer policy.

98. As a direct result of Defendants' acts of infringement, Business Casual is entitled to injunctive relief, damages, and disgorgement of profits.

# COUNT 4
# CONTRIBUTORY COPYRIGHT INFRINGEMENT

99. Plaintiff restates all paragraphs as if fully restated herein.

100. Each Defendant has actual knowledge of the direct infringements discussed in Counts 1-3 above and materially and willfully contributed to and aided in such infringements.

101. As a direct result of Defendants' material and willful contributions or aid in the copyright infringement discussed above, Business Casual is entitled to injunctive relief, damages, and disgorgement of profits.

///

///

# COUNT 5
# VICARIOUS COPYRIGHT INFRINGEMENT

102. Plaintiff restates all paragraphs as if fully restated herein.

103. Each Defendant has, with the right and ability to control or supervise the direct infringements discussed in Counts 1-3 above, failed to exercise such right and ability after receiving actual knowledge of TV-Novosti's pattern of infringement and has directly benefited financially from such infringing activity.

104. As a direct result of Defendants' acts of infringement discussed above, Business Casual is entitled to injunctive relief, damages, and disgorgement of profits.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully asks that the Court enter the following judgment against Defendants:

1. That Defendants be court-ordered to immediately terminate Repeat Infringer's thirty-nine (39) associated YouTube channels as required by the Copyright Act, 17 U.S.C. § 101 *et seq*.

2. That Defendants, their officers, agents, servants, employees, and any persons in active concert or participation with it be permanently enjoined and restrained from:

   a. Infringing upon Plaintiff's copyrighted works covered by the Business Casual Registrations;

   b. Taking any action that directly or indirectly enables, facilitates, permits, assists, solicits, encourages or induces any user or other third party to: (i) copy, host, index, reproduce, download, stream, exhibit, distribute, communicate to the public, upload, link to, transmit, publicly perform, or otherwise use or exploit in any manner any of Plaintiff's works covered by the Business Casual Registrations

or portion(s) thereof; or (ii) to make available any of Plaintiff's works covered by the Business Casual Registrations for copying, hosting, indexing, reproducing, downloading, streaming, exhibiting, distributing, communicating to the public, uploading, linking to, transmitting, publicly performing, or for any other use or means of exploitation;

    c.    Assisting, aiding or abetting any other person or business entity in engaging in or performing any of the activities referred to in the above subparagraphs (a)-(b).

2.    For a declaration that Defendants' repeat infringer policy has not been adopted or reasonably implemented as contemplated by § 512(i)(1)(A) of the DMCA;

3.    That Defendants account for and pay Plaintiff all profits realized by Defendants by reason of their unlawful acts alleged herein;

4.    That Plaintiff be awarded its damages caused by Defendants' unlawful acts alleged herein;

5.    That Plaintiff be awarded its costs and attorneys' fees incurred in this action;

6.    That Plaintiff be awarded pre-judgment interest on its judgment; and

7.    Such other and further relief as the Court may deem equitable, proper and just.

Dated:    April 22, 2021
             New York, New York

Respectfully submitted,
DUFF LAW PLLC

By: _____
Anderson J. Duff (AD2029)
43-10 Crescent St. Ste. 1217
New York, New York 11101
(t) 646.450.3607
(f) 917.920.4217
(e) ajd@hoganduff.com