BRIAN M. WILLEN
JASON MOLLICK
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Telephone: (212) 999-5800
Facsimile: (212) 999-5899
bwillen@wsgr.com
jmollick@wsgr.com

*Counsel for Defendants YouTube, LLC,*
*Google LLC, and Alphabet Inc.*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BUSINESS CASUAL HOLDINGS, LLC, | Case No. 1:21-cv-03610-JGK |
| Plaintiff, | |
| v. | |
| YOUTUBE, LLC, GOOGLE LLC, and ALPHABET INC., | |
| Defendants. | |

## MEMORANDUM OF LAW IN SUPPORT OF
## <u>DEFENDANTS' MOTION TO DISMISS</u>

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

BACKGROUND ....................................................................................................................3

    A.     YouTube, Its Terms of Service, and Its Repeat Infringer Policy............................3

    B.     Plaintiff and Its Videos ..........................................................................................6

    C.     Plaintiff's Claims of Infringement Against TVN and YouTube ............................7

ARGUMENT ........................................................................................................................10

I.     PLAINTIFF FAILS TO STATE A CLAIM FOR DIRECT COPYRIGHT
      INFRINGEMENT AGAINST YOUTUBE (COUNTS 1-3)............................................10

    A.     Plaintiff Licensed the Accused Videos to YouTube..............................................10

    B.     The Complaint Does Not Allege That YouTube Engaged in Volitional
         Conduct That Caused The Infringement of Plaintiff's Content............................12

II.    PLAINTIFF FAILS TO STATE A CLAIM FOR SECONDARY COPYRIGHT
      INFRINGEMENT AGAINST YOUTUBE (COUNTS 4-5)............................................16

    A.     Plaintiff Cannot State a Claim for Contributory Infringement Because
         YouTube Removed The Accused Videos Upon Notice Of Alleged
         Infringement........................................................................................................16

    B.     Plaintiff Cannot State a Claim for Vicarious Infringement Because
         YouTube Stopped the Potentially Infringing Activity...........................................18

    C.     YouTube's Unwillingness To Terminate TVN's Entire Account Or
         Remove *Non-Infringing* Content Is Not A Basis For Holding YouTube
         Liable As A Secondary Infringer ........................................................................19

CONCLUSION.....................................................................................................................20

<u>**TABLE OF AUTHORITIES**</u>

**CASES**

*A.N.R. Inv. Co. v. HSBC Private Bank*,
    136 A.D.3d 632 (1st Dep't 2016) ...................................................................12

*Applebaum v. Lyft, Inc.*,
    263 F. Supp. 3d 454 (S.D.N.Y. 2017) (Koeltl, J.) ...........................................11

*Ariel (UK) Ltd. v. Reuters Grp. PLC*,
    2006 WL 3161467 (S.D.N.Y. Oct. 31, 2006),
    *aff'd*, 277 F. App'x 43 (2d Cir. 2008)...........................................................11

*Arista Records LLC v. Usenet.com, Inc.*,
    2008 U.S. Dist. LEXIS 95514 (S.D.N.Y. Nov. 24, 2008).................................20

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...............................................................................17, 18

*Atlantis Info. Tech., GmbH v. CA, Inc.*,
    485 F. Supp. 2d 224 (E.D.N.Y. 2007) .............................................................11

*Benson v. Tiffany & Co.*,
    2021 WL 1864035 (S.D.N.Y. May 10, 2021) ....................................................4

*Blocker v. Black Entm't Television, LLC*,
    2018 WL 3797568 (D. Or. June 26, 2018),
    *report and recommendation adopted*,
    2018 WL 3795219 (D. Or. Aug. 8, 2018)..........................................................14

*BWP Media USA, Inc. v. T & S Software Assocs., Inc.*,
    852 F.3d 436 (5th Cir. 2017) .........................................................................13

*Capitol Records, LLC v. Vimeo, LLC*,
    972 F. Supp. 2d 500 (S.D.N.Y. 2013),
    *aff'd in part, vacated in part on other grounds*,
    826 F.3d 78 (2d Cir. 2016)...........................................................................20

*Cartoon Network LP v. CSC Holdings, Inc.*,
    536 F.3d 121 (2d Cir. 2008)..........................................................................13

*CoStar Grp., Inc. v. LoopNet, Inc.*,
    373 F.3d 544 (4th Cir. 2004) ...............................................................13, 14, 15

*Daniels v. Alphabet Inc.*,
    2021 WL 1222166 (N.D. Cal. Mar. 31, 2021)..................................................12

*Force v. Facebook, Inc.*,
 934 F.3d 53 (2d Cir. 2019),
 *cert. denied*, 140 S. Ct. 2761 (2020) ...............................................................4

*Fteja v. Facebook, Inc.*,
 841 F. Supp. 2d 829 (S.D.N.Y. 2012) .............................................................11

*Gench v. HostGator.com LLC*,
 2015 WL 3757120 (S.D.N.Y. June 17, 2015),
 *report and recommendation adopted*,
 2015 WL 4579147 (S.D.N.Y. July 29, 2015) ...................................................14

*Great Minds v. FedEx Office & Print Servs., Inc.*,
 886 F.3d 91 (2d Cir. 2018) .........................................................................10, 11

*Hydentra HLP Int'l Ltd. v. Luchian*,
 2016 WL 5951808 (S.D. Fla. June 2, 2016) ....................................................18

*In re AutoHop Litig.*,
 2013 WL 5477495 (S.D.N.Y. Oct. 1, 2013) .....................................................13

*Int'l Audiotext Network, Inc. v. AT&T Co.*,
 62 F.3d 69 (2d Cir. 1995) .................................................................................4

*Jasper v. Sony Music Entm't, Inc.*,
 378 F. Supp. 2d 334 (S.D.N.Y. 2005) ..................................................10, 11, 16

*Lefkowitz v. John Wiley & Sons, Inc.*,
 2014 WL 2619815 (S.D.N.Y. June 2, 2014) ...............................................16, 17

*Lopez v. Bonanza.com, Inc.*,
 2019 WL 5199431 (S.D.N.Y. Sept. 30, 2019) .............................................14, 18

*Luvdarts, LLC v. AT&T Mobility, LLC*,
 710 F.3d 1068 (9th Cir. 2013) ....................................................................17, 18

*MGM Studios Inc. v. Grokster, Ltd.*,
 545 U.S. 913 (2005) ...................................................................................18, 19

*Nadav v. Beardwood & Co. LLC*,
 2018 WL 11220833 (S.D.N.Y. Jan. 17, 2018) ..................................................11

*Parker v. Google, Inc.*,
 422 F. Supp. 2d 492 (E.D. Pa. 2006),
 *aff'd*, 242 F. App'x 833 (3d Cir. 2007) .......................................................15, 17

*Parker v. PayPal, Inc.*,
 2017 WL 3508759 (E.D. Pa. Aug. 16, 2017) ...................................................15

*Perfect 10, Inc. v. Giganews, Inc.*,
    847 F.3d 657 (9th Cir. 2017) ...................................................................13, 14

*Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.*,
    907 F. Supp. 1361 (N.D. Cal. 1995) ...............................................................14

*Spinelli v. NFL*,
    96 F. Supp. 3d 81 (S.D.N.Y. 2015) ...........................................................10, 11

*Wilson v. Kellogg Co.*,
    111 F. Supp. 3d 306 (E.D.N.Y. 2015),
    *aff'd*, 628 F. App'x 59 (2d Cir. 2016) .............................................................12

*Wolk v. Kodak Imaging Network, Inc.*,
    840 F. Supp. 2d 724 (S.D.N.Y. 2012),
    *aff'd sub nom. Wolk v. Photobucket.com, Inc.*,
    569 F. App'x 51 (2d Cir. 2014) ........................................................... *passim*

## STATUTES

17 U.S.C. § 107........................................................................................................7

Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 512 ........................ *passim*

## RULES

Fed. R. Civ. P. 12(b)(6)...........................................................................................1

Fed. R. Evid. 201(b)(2) ...........................................................................................4

## OTHER AUTHORITIES

4 Nimmer on Copyright § 12B.10[E][3].................................................................20

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendants YouTube, LLC, Google LLC, and Alphabet Inc. (together, "YouTube") respectfully move the Court to dismiss Plaintiff Business Casual Holdings, LLC's ("Business Casual") Complaint (Dkt. 1) with prejudice for failure to state a claim upon which relief can be granted.[1]

## INTRODUCTION

This lawsuit arises from a dispute between Plaintiff Business Casual and a third-party, TV-Novosti ("TVN"). Business Casual maintains a YouTube channel on which it publishes documentaries regarding key figures in business history. It alleges that TVN, which owns "Russia Today" (a prominent Russian news broadcaster apparently funded by the Russian government) published three videos on its "RT Arabic" YouTube channel that included short snippets of historical, public-domain-derived images that appear in two of Business Casual's videos. After Business Casual submitted takedown notices to YouTube asserting that the TVN videos were infringing its copyrights, YouTube promptly removed them, and those videos remain disabled to this day. That should have been the end of the matter, at least as between Business Casual and YouTube.

Instead, as its Complaint makes clear, Business Casual became upset that YouTube did not apply its "repeat infringer" policy to terminate TVN's entire YouTube account – including thousands of other videos that are not accused of infringing. But there is good reason for that: ***TVN denied Plaintiff's infringement accusations***, submitting counter-notifications to that

---

[1] The Complaint alleges no wrongdoing as to Google or Alphabet in their own right—only that they are jointly liable as "alter ego[s]" of YouTube. Compl. ¶ 17. Thus, for ease of reference, this brief refers collectively to all Defendants as "YouTube," without waiving any arguments or defenses as to Plaintiff's alter ego claims or other issues pertaining to Google and/or Alphabet.

effect, sworn under penalty of perjury, as authorized by the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 512(g). YouTube's DMCA policy states that an account-holder will not be penalized over such contested claims of copyright infringement until that dispute is resolved. That isn't enough for Business Casual. It demands that **all** TVN content be purged from YouTube immediately. But nothing in the DMCA requires YouTube to terminate a user's entire account simply because someone accuses it of infringement – at least where (as here) that claim is challenged using the procedure established by statute and is currently being litigated in federal court.

Given that the whole premise of Plaintiff's lawsuit against YouTube is misbegotten, it is not surprising that the actual copyright infringement claims it has asserted fail as a matter of law. Those problems have nothing to do with the DMCA, and they are the subject of this motion to dismiss. *First*, Plaintiff's direct infringement claims (Counts I-III) fail because Business Casual expressly and broadly authorized YouTube to "use" – including "to reproduce, distribute, prepare derivative works, display and perform" – Business Casual's video content before posting it on YouTube free of charge. Declaration of Meredith Seiberlich, Ex. C at 10 (YouTube Terms of Service). That license covers all of the purported acts of infringement by YouTube in connection with hosting or displaying the TVN videos. And it is black-letter law that a licensor cannot sue a licensee for copyright infringement. But even apart from the license, the facts alleged in the Complaint make clear that YouTube acted simply as an automated online hosting platform for content that TVN selected and uploaded. Plaintiff does not (and could not) allege that YouTube engaged in any volitional conduct that caused the alleged infringement associated with the posting or display of TVN videos. Because TVN, not YouTube, made all the relevant

choices giving rise to that alleged infringement, YouTube cannot be liable as a direct infringer as a matter of law.

Plaintiff's secondary liability claims also fail, not just because YouTube was licensed by Business Casual, but also because the facts alleged in the Complaint rule out any such claims. To establish contributory infringement (Count IV), a plaintiff must allege that the defendant materially contributed to someone else's infringing conduct ***with knowledge of that specific infringing activity***. Likewise, one infringes vicariously (Count V) by profiting from someone else's infringement ***while declining to exercise a right and ability to stop it***. YouTube did the opposite of these things. It removed all of the accused TVN videos promptly upon being told about them, and has kept them down while Plaintiff's claims against TVN are being adjudicated. Taking the facts pleaded in the Complaint as true, therefore, YouTube neither contributed to the alleged infringement upon gaining relevant knowledge of it, nor failed to exercise an ability to stop it from continuing. Rather than suggest otherwise, Plaintiff tries to fault YouTube for not removing ***all*** of TVN's content from the service. But Business Casual has not claimed that those other videos are infringing (nor has anyone else), and YouTube continuing to host lawful content is not a basis for copyright infringement liability.

For these reasons, the Court should dismiss Plaintiff's claims against YouTube, and let this dispute be adjudicated between Plaintiff and TVN in the related action, with YouTube on the sidelines where it belongs.

## **BACKGROUND**

### A. **YouTube, Its Terms of Service, and Its Repeat Infringer Policy**

YouTube is a popular online service for sharing videos and related content. YouTube, LLC is a subsidiary of Google LLC, which in turn is a subsidiary of Alphabet Inc. Compl. ¶¶ 15-17.

YouTube allows users to upload videos and to create dedicated "channels" featuring their content, free of charge, provided they first agree to the YouTube Terms of Service ("TOS") and related policies, including its copyright policies. *See* Seiberlich Decl. Ex. C at 5 ("Your use of the Service is subject to these terms, the YouTube Community Guidelines and the Policy, Safety and Copyright Policies which may be updated from time to time[.]"); *id.* Ex. A at 4.[2]

The TOS states, in relevant part, that "[b]y providing Content to the Service, [users] grant to YouTube a worldwide, non-exclusive, royalty-free, sublicensable and transferable license to use that Content (including to reproduce, distribute, prepare derivative works, display and perform it) in connection with the Service and YouTube's (and its successors' and Affiliates')

---

[2] The Court may take judicial notice of the TOS and copyright policies as publicly-available sources "whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2); *see, e.g.*, *Force v. Facebook, Inc.*, 934 F.3d 53, 59-60 & n.5 (2d Cir. 2019) (taking judicial notice of Facebook's Terms of Service and content moderation policies), *cert. denied*, 140 S. Ct. 2761 (2020). The Court may also consider the TOS and copyright policies in deciding this motion because those documents are cited by and integral to the allegations in the Complaint. The TOS and copyright policies are also cited or quoted repeatedly in Plaintiff's Exhibits. *See, e.g.*, Compl. ¶ 6 (citing portion of repeat infringer policy that cross-references the TOS); *id.* Ex. A at 4; *id.* Ex. E at 19 (Plaintiff's correspondence to YouTube, arguing that TVN's alleged infringement was in "violation of YouTube's Terms of Service"); *id.* Ex. F at 7-8 (same); *id.* Ex. R at 4 (suggesting that YouTube inconsistently applies its TOS); *see also, e.g.*, *Int'l Audiotext Network, Inc. v. AT&T Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (courts may consider documents not attached to a complaint in deciding a motion to dismiss when those documents are incorporated by reference or "integral" to a plaintiff's claims) (citation omitted); *Benson v. Tiffany & Co.*, 2021 WL 1864035, at *5 (S.D.N.Y. May 10, 2021) (a document is "integral" to the complaint where the plaintiff "relies heavily upon its terms and effect") (quoting Second Circuit cases).

business, including for the purpose of promoting and redistributing part or all of the Service." Seiberlich Decl. Ex. C at 10 (section entitled "License to YouTube").[3]

In accordance with Section 512(i)(1)(A) of the DMCA, YouTube's copyright policies "provide for the termination, in appropriate circumstances, of repeat infringers' access to the Service." Seiberlich Decl. Ex. C. at 11; *see also* Compl. ¶¶ 2-7, 45-46. In general, if a copyright owner submits a valid DMCA takedown notice that complies with 17 U.S.C. § 512(c)(3), YouTube will disable the allegedly infringing video and apply a "strike" to the account of the user that posted it. Compl. Ex. A at 7-8 ("Copyright strike basics"). If the user manages content across multiple channels, and one of those channels receives a copyright strike, then channel-level penalties are applied. Seiberlich Decl. Ex. D at 2 ("Content Manager copyright strikes policy"). If the content manager receives 10 strikes across its channels within a 90-day period, then the account at large is subject to further review and penalties, including loss of features or termination. *Id.*

YouTube does not generally require a copyright owner to adjudicate its infringement claims in court before applying strikes to the infringer's account. If, however, the alleged infringer disputes the claim by responding with a DMCA counter-notification that complies with 17 U.S.C. § 512(g)(3) – including a statement under penalty of perjury that the accused content is not infringing – then the user and its channels will not be penalized until the dispute is resolved. Compl. ¶ 46 and Ex. A at 3, 7 ("If you submit a counter notification, your channel

---

[3] YouTube updates the TOS from time to time, but the provisions at issue (including the license) have remained substantially unchanged. *See* https://www.youtube.com/static?template=terms (YouTube's current TOS); *see also* Seiberlich Decl. ¶¶ 5-7 & Exs. A, B, C. This brief generally cites to the TOS in effect at the time Plaintiff uploaded the J.P. Morgan Video – the most recent of the videos at issue.

won't be disabled while the counter notification is unresolved. If the counter notification is resolved in your favor, or the claim is retracted, your channel won't be impacted."). Of course, as envisioned by the DMCA, the ***allegedly infringing content*** will remain disabled if (as here) the claimant files a lawsuit to vindicate its claims against the alleged infringer. *See* 17 U.S.C. § 512(g)(2)(C). But beyond that, YouTube is under no obligation to treat a user as a "repeat infringer" under the DMCA based merely on takedown notices ***that the user has asserted under penalty of perjury are mistaken*** – particularly where the question of whether the material at issue is infringing is being actively litigated between the user and the relevant copyright owner.

### B. Plaintiff and Its Videos

Business Casual maintains a YouTube channel, which it created after agreeing to YouTube's TOS (*see* Seiberlich Decl. ¶ 3), where it publishes documentary videos about key figures in the industrial revolution. Among Business Casual's videos are: (1) a 9-minute video about John D. Rockefeller, which it published on YouTube on June 8, 2018 (the "Rockefeller Video"); and (2) a 40-minute video about J.P. Morgan, which it published on YouTube on June 25, 2020 (the "J.P. Morgan Video"). Compl. ¶¶ 22-23.[4] Business Casual did not receive federal copyright registrations for these videos until March 8, 2021. Compl. ¶¶ 24-25 and Exs. B, C.

Many of the images included in the two Business Casual videos are historical photographs that are in the public domain. In its copyright registrations for the videos, Business Casual expressly disclaimed ownership over all "preexisting photograph(s)" contained within them. Compl. ¶¶ 24-25 and Exs. B, C. Plaintiff claims that it used certain "video editing

---

[4] Full versions of the Rockefeller and J.P. Morgan Videos are available at https://www.youtube.com/watch?v=9saLsvWcppw and https://www.youtube.com/watch?v=5jjdErDkDZE.

methods" to display the images with a "3-D depth of field[.]" *Id.* Ex. E at 19 and Ex. F at 9 (correspondence from Plaintiff to YouTube describing how it displays the images). Thus, by Plaintiff's own description, the scope of its copyright ownership over the images (if any) is extremely narrow – at most, it extends not to the images themselves, but only to the manner in which they were displayed.

### C. Plaintiff's Claims of Infringement Against TVN and YouTube

TVN is a YouTube content manager that operates dozens of distinct YouTube channels, including RT Arabic.[5] Compl. ¶ 53. These channels publish news content from Russia Today, an international news broadcaster apparently funded by the Russian government. *Id.* ¶ 57. The channels (which focus on different regions of the world and are in many different languages) collectively have more than 26 million subscribers and receive roughly 402 million views each month. *Id.* ¶ 55.

Plaintiff alleges that TVN published three videos (the "accused videos") on the RT Arabic channel that included snippets of some of the same public-domain photographs that appear in the Rockefeller and J.P. Morgan Videos. Compl. ¶¶ 27, 32-33; *see also id.* Exs. D, E, F (Plaintiff's takedown notices to YouTube describing the alleged infringements). Plaintiff claims that these images were copied directly from its Rockefeller and J.P. Morgan Videos. *Id.* Plaintiff also claims that TVN "admitted" to copying images from one of the videos. *Id.* ¶¶ 29-30 and Ex. F at 7-9. But TVN did not concede that its use of those images was not "fair use" under 17 U.S.C. § 107, or that any other copyright defenses would not apply. Indeed, the usage of Business Casual's videos that it reported to YouTube in its takedown notices amounted to just 80

---

[5] TVN's main YouTube page is available at https://www.youtube.com/channel/UCpwvZwUam-URkxB7g4USKpg. The RT Arabic channel is available at https://www.youtube.com/user/RTarabic.

total seconds of content, consisting primarily of historical images that are not copyrightable to Plaintiff. *See* Compl. Ex. D at 2; Ex. E at 2, 17-18; Ex. F at 13-40 (timestamps in Plaintiff's takedown notices).

In any event, and out of an abundance of caution, ***YouTube promptly removed all three of the allegedly-infringing RT Arabic videos within days of being notified of their existence***. This is undisputed and clear from the face of the Complaint and the attached Exhibits:

As to the "First Accused Video": Business Casual submitted a DMCA takedown notice to YouTube on January 2, 2021, which identified just three seconds of allegedly infringing content from the 40-minute J.P. Morgan Video. Compl. ¶ 27 and Ex. D at 2. YouTube removed TVN's video nine days later, on January 11. *Id.* ¶ 28.

As to the "Second Accused Video": Plaintiff submitted a takedown notice on February 9, 2021, identifying seven seconds of allegedly infringing content from the 9-minute Rockefeller Video. Compl. ¶ 32 and Ex. E at 2. YouTube responded by email on February 13, expressing concern that Plaintiff had not considered whether TVN's copying was fair use, as Plaintiff is required to do before sending a DMCA takedown notice. *Id.* Ex. E at 2-3. Plaintiff responded by angrily accusing YouTube of "defending the Russian government," but then thought better of it and provided additional information. *Id.* at 3-4. YouTube considered the additional information and removed the video on February 21. *Id.* at 6. After receiving clarification that the accused TVN video was also available at another link, YouTube disabled that link too on March 4. *Id.* at 23; *see also* Compl. ¶ 38.

As to the "Third Accused Video": Plaintiff submitted a takedown notice on February 15, 2021, which included a timestamp report totaling 1 minute and 10 seconds of allegedly

infringing content taken from the 40-minute J.P. Morgan Video. Compl. ¶ 33. YouTube removed that video within 72 hours, on February 18. *Id.* ¶ 35.

In short, the Complaint itself establishes that YouTube removed all three of the accused videos after being notified of them, and that they remain unavailable to this day. *See* Compl. ¶ 49 and Ex. I (screenshots: "This video is no longer available due to a copyright claim by Business Casual"). There is no allegation (nor could there be) that YouTube did anything to contribute to TVN's allegedly infringing activity once YouTube knew of it, or that YouTube failed to exercise a right and ability to remove that content from its platform.

But YouTube has not (yet) gone so far as to disable TVN's entire account, including its 38 other channels publishing thousands of new videos in other languages that no one has accused of infringing any copyright. The reason that YouTube has not deemed TVN (or its RT Arabic channel) a "repeat infringer" is, as Plaintiff admits, because there is an active dispute between Business Casual and TVN as to whether TVN is an "infringer" at all. As explained above, YouTube's repeat infringer policy expressly states that an account-holder will not be penalized over disputed claims of infringement until that dispute is resolved. *See* Compl. ¶ 46 and Ex. A at 3, 7 ("If you submit a counter notification, your channel won't be disabled while the counter notification is unresolved."). Here, TVN denied Plaintiff's accusations and submitted counter-notifications disputing at least two of them, under penalty of perjury, in accordance with Section 512(g)(3) of the DMCA. Compl. ¶¶ 37, 40. Plaintiff responded by filing the related case against TVN to vindicate its claims, as is its right under Section 512(g)(2)(C). Compl. ¶ 39. That case is pending before this Court, and TVN intends to file a motion to dismiss. *See* Case No. 1:21-cv-02007-JGK, at Dkt. 18 (TVN's pre-motion letter).

YouTube thus informed Plaintiff that "[i]f a court resolves the copyright claims you've brought against RT Arabic in your favor," Plaintiff can submit that judgment to YouTube for further consideration under its repeat infringer policy. Compl. ¶ 73 and Ex. S. In the meantime, the allegedly infringing content will remain disabled, and there is no suggestion that TVN's live content on YouTube is harming Plaintiff in any way.[6]

## **ARGUMENT**

## I. **PLAINTIFF FAILS TO STATE A CLAIM FOR DIRECT COPYRIGHT INFRINGEMENT AGAINST YOUTUBE (COUNTS 1-3)**

### A. **Plaintiff Licensed the Accused Videos to YouTube**

The direct infringement claims against YouTube fail right out of the gate because Plaintiff licensed the Rockefeller and J.P. Morgan Videos to YouTube. "It is a hallmark principle of copyright law that licensors may not sue their licensees for copyright infringement." *Jasper v. Sony Music Entm't, Inc.*, 378 F. Supp. 2d 334, 339 (S.D.N.Y. 2005). "A copyright owner waives the right to sue … for uses of copyrighted material that are authorized by a non-exclusive license." *Great Minds v. FedEx Office & Print Servs., Inc.*, 886 F.3d 91, 94 (2d Cir. 2018).

"A defendant may raise a complete defense to a copyright infringement claim by presenting the court with the license or sublicense on a motion to dismiss[.]" *Spinelli v. NFL*, 96 F. Supp. 3d 81, 121 (S.D.N.Y. 2015). When presented with such a license that covers the allegedly infringing activity, courts consistently dismiss claims of copyright infringement. *See,*

---

[6] This case was originally assigned to Judge Ramos, who authorized Defendants to file this motion to dismiss based on Defendants' pre-motion letter (Dkt. 25) and a pre-motion conference held on July 29, 2021. *See* Minute Entry dated July 29, 2021. Judge Ramos then transferred the case to this Court on August 2 based on the related case that Business Casual filed against TVN, which is also pending before this Court (No. 1:21-cv-02007-JGK).

*e.g.*, *Nadav v. Beardwood & Co. LLC*, 2018 WL 11220833, at *4 (S.D.N.Y. Jan. 17, 2018) (dismissing copyright claim on the basis of an applicable license); *Spinelli*, 96 F. Supp. 3d at 121-30 (same); *Atlantis Info. Tech., GmbH v. CA, Inc.*, 485 F. Supp. 2d 224, 234 (E.D.N.Y. 2007) (same); *Ariel (UK) Ltd. v. Reuters Grp. PLC*, 2006 WL 3161467, at *10 (S.D.N.Y. Oct. 31, 2006), *aff'd*, 277 F. App'x 43 (2d Cir. 2008) (same); *Jasper*, 378 F. Supp. 2d at 342 (same); *see also Great Minds*, 886 F.3d 91 (affirming dismissal).

In creating its channel and posting content to YouTube free of charge, Business Casual accepted YouTube's Terms of Service (TOS). *See* Seiberlich Decl. ¶ 3. In so doing, Plaintiff agreed to a provision entitled "License to YouTube": "By providing Content to the Service, [the user] grant[s] to YouTube a worldwide, non-exclusive, royalty-free, sublicensable and transferable license to use that Content (including to reproduce, distribute, prepare derivative works, display and perform it)[.]" Seiberlich Decl. Ex. C at 10. This license, by itself, disposes of Business Casual's infringement claims against YouTube.[7]

According to the Complaint, the only allegedly infringing content in the TVN videos at issue was material that Business Casual itself uploaded to YouTube subject to the TOS. Compl.

---

[7] As noted above, this license provision is found in the version of the TOS that was in effect when Plaintiff uploaded the J.P. Morgan Video. The provision is materially identical to the one in the TOS in effect when Plaintiff previously uploaded the Rockefeller Video, and to the license provision in the TOS in effect when Plaintiff initially created its YouTube account. *See* Seiberlich Decl. Exs. A at 3, B at 6, and C at 10. As explained above, this Court may consider YouTube's TOS and the license therein via judicial notice or incorporation by reference. *See supra* at 4 n.2. This Court has routinely enforced similar terms against users of online services. *See, e.g.*, *Applebaum v. Lyft, Inc.*, 263 F. Supp. 3d 454, 470 (S.D.N.Y. 2017) (Koeltl, J.) (enforcing arbitration clause in Lyft's Terms of Service); *Fteja v. Facebook, Inc*., 841 F. Supp. 2d 829, 841-45 (S.D.N.Y. 2012) (enforcing forum selection clause in Facebook's Terms of Service).

¶¶ 22-23. The license that Business Casual granted squarely covers the content at issue and expressly authorized YouTube "to reproduce, distribute, prepare derivative works, display and perform" that content on its service. That is exactly what Plaintiff's direct infringement claims accuse YouTube of doing. *Id.* ¶¶ 75-98. Under the language of the TOS, it makes no difference whether the use of Business Casual's content occurred in connection with YouTube's hosting of Business Casual's videos or other users' videos that include Business Casual's content – YouTube is licensed either way. And, as a matter of law, Plaintiff cannot maintain a direct infringement claim against YouTube based on fully-licensed uses. *See, e.g.*, *Wilson v. Kellogg Co.*, 111 F. Supp. 3d 306, 313 (E.D.N.Y. 2015) (dismissing claim barred by online terms and conditions to which plaintiff agreed), *aff'd*, 628 F. App'x 59 (2d Cir. 2016); *A.N.R. Inv. Co. v. HSBC Private Bank*, 136 A.D.3d 632, 633 (1st Dep't 2016) (dismissing contract claim because the terms and conditions to which plaintiffs agreed "explicitly authorized the conduct of which plaintiffs complain"); *cf. Daniels v. Alphabet Inc.*, 2021 WL 1222166, at *8 (N.D. Cal. Mar. 31, 2021) (dismissing claim that YouTube impermissibly removed plaintiff's content because "[t]he express terms of [YouTube's TOS] contradict [plaintiff's] claim" and authorized YouTube to do so). This alone requires dismissal with prejudice of Plaintiff's claims.

## B. The Complaint Does Not Allege That YouTube Engaged in Volitional Conduct That Caused The Infringement of Plaintiff's Content

Even apart from the license, Plaintiff's direct infringement claims fail because there is no allegation that YouTube engaged in any volitional conduct that caused the alleged infringement of Plaintiff's content.

"Direct liability [for copyright infringement] requires 'volitional conduct' that 'causes' the infringement." *Wolk v. Kodak Imaging Network, Inc.*, 840 F. Supp. 2d 724, 742 (S.D.N.Y. 2012) (citation omitted), *aff'd sub nom. Wolk v. Photobucket.com, Inc.*, 569 F. App'x 51 (2d Cir.

2014). Specifically, "[t]here must be actual infringing conduct with a nexus sufficiently close and causal to the illegal copying that one could conclude that the [alleged infringer itself] trespassed on the exclusive domain of the copyright owner." *Cartoon Network LP v. CSC Holdings, Inc.*, 536 F.3d 121, 130 (2d Cir. 2008) (citation omitted). It is not enough that the alleged infringer "own[s] … a machine used by others to make illegal copies." *Id.* (citation omitted). Where the user of that machine "issu[es] a command [to copy] directly to a system, which automatically obeys [the] commands," the user issuing the command may have engaged in volitional conduct, but the entity that owns and operates the system has not. *Id.* at 131; *accord In re AutoHop Litig.*, 2013 WL 5477495, at *6 (S.D.N.Y. Oct. 1, 2013) ("[T]he pivotal factor in this Circuit for direct liability is initiation of the act of copying rather than the selection of offerings for possible copying or the creation of the technological structure."). This bedrock "volitional conduct" rule is not just the law in the Second Circuit, *see id.*; it has been adopted by every other circuit that has addressed it. *See, e.g.*, *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 668 (9th Cir. 2017); *BWP Media USA, Inc. v. T & S Software Assocs., Inc.*, 852 F.3d 436, 444 (5th Cir. 2017); *CoStar Grp., Inc. v. LoopNet, Inc.*, 373 F.3d 544, 550 (4th Cir. 2004).

This rule is especially salient for online service providers and website operators who host content uploaded by third parties to their platforms. If "any reproduction, display or transmission of the [relevant content] by or through the … website is an automated process with no human intervention by any employee [of the website]," the website operator has engaged in no volitional conduct and cannot be liable for direct infringement. *Wolk*, 840 F. Supp. 2d at 742; *see also id.* at 742-43 ("[T]he display of copyrighted images on a defendant's website does not demonstrate volition."); *accord BWP Media*, 852 F.3d at 442 ("T & S hosts the forum on which infringing content was posted, but its connection to the infringement ends there. The users posted

the infringing content…. T & S and the infringing content are not linked by volitional conduct."); *Perfect 10*, 847 F.3d at 668 ("[T]he fact that users may use Giganews's reader to display infringing images does not constitute volitional conduct by Giganews.") (citation omitted); *CoStar*, 373 F.3d at 550 (an "[internet service provider] should not be found liable as a direct infringer when its facility is used by a subscriber to violate a copyright without intervening conduct of the ISP"); *Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.*, 907 F. Supp. 1361, 1369-70 (N.D. Cal. 1995) (finding no volitional conduct on behalf of website operator and internet service provider "where a defendant's system is merely used to create a copy by a third party").

Because volition is a required element of direct liability (*see, e.g.*, *Perfect 10*, 847 F.3d at 666), courts routinely dismiss direct infringement claims where the complaint fails to allege facts suggesting volitional conduct on the part of an online service provider. For example, in one recent case, a defendant engaged in no volitional conduct where the plaintiff pleaded only that "user[s] of [defendant's e-commerce] service posted [allegedly] copyrighted images that were displayed on [defendant's] website[.]" *Lopez v. Bonanza.com, Inc.*, 2019 WL 5199431, at *22 (S.D.N.Y. Sept. 30, 2019) (dismissing infringement claim on this basis) (quoting *Wolk*); *see also, e.g.*, *Gench v. HostGator.com LLC*, 2015 WL 3757120, at *11 (S.D.N.Y. June 17, 2015) (dismissing direct infringement claim against web hosting provider where there were "no comprehensible allegations that any of the defendants … copied the site's content, produced an infringing work, or took any voluntary action to cause an infringing work to be produced"), *report and recommendation adopted*, 2015 WL 4579147 (S.D.N.Y. July 29, 2015); *Perfect 10*, 847 F.3d at 670 (affirming dismissal of direct infringement claims based on lack of volitional conduct); *Blocker v. Black Entm't Television, LLC*, 2018 WL 3797568, at *4 (D. Or. June 26,

2018) (dismissing infringement claim where defendant websites "[s]imply list[ed] copyrighted material [uploaded by users] and provid[ed] an online forum for commerce"), *report and recommendation adopted*, 2018 WL 3795219 (D. Or. Aug. 8, 2018); *Parker v. PayPal, Inc.*, 2017 WL 3508759, at *4 (E.D. Pa. Aug. 16, 2017) (same, where plaintiff only alleged that defendants, including Google, "stored the infringing work on their cloud server"); *Parker v. Google, Inc.*, 422 F. Supp. 2d 492, 497 (E.D. Pa. 2006) (same, because "Google's automatic archiving of [user] postings and excerpting of websites in its results to users' search queries do not include the necessary volitional element"), *aff'd*, 242 F. App'x 833 (3d Cir. 2007).

That result is warranted here, as Plaintiff's own Complaint not only fails to allege volition, it actually demonstrates the absence of any such volitional conduct by YouTube. Plaintiff attributes all the alleged copying of the content at issue to TVN, which allegedly created and uploaded videos that incorporated snippets from Plaintiff's Rockefeller and J.P. Morgan Videos. Compl. ¶¶ 27-44. It is clear from the face of the Complaint that YouTube did nothing more than provide a hosting platform to which TVN (and Plaintiff) posted videos of their own creation and selection. In fact, Plaintiff goes so far as to accuse TVN of deliberately "removing Business Casual's watermark from each of Business Casual's copyrighted videos …, adding its own 'RT' watermark, and altering the brightness and saturation of each of its infringing videos to … circumvent YouTube's automated Content ID and Copyright Match Tools to avoid getting caught doing what it knew was unlawful." *Id.* ¶ 44. This underscores that all the supposed infringing acts were done by TVN alone, and that YouTube did nothing to "cause[] in some meaningful way" the alleged infringement. *CoStar*, 373 F.3d at 549. After all, if TVN took active steps to evade YouTube's automated anti-infringement measures, how could YouTube possibly be a volitional infringer in its own right?

In short, because the Complaint does not allege any volitional act by YouTube that caused the alleged infringement, Plaintiff's direct infringement claims must be dismissed.

## II. PLAINTIFF FAILS TO STATE A CLAIM FOR SECONDARY COPYRIGHT INFRINGEMENT AGAINST YOUTUBE (COUNTS 4-5)

Plaintiff's secondary liability claims fail as well. As an initial matter, YouTube cannot be liable for TVN's alleged infringement because, as explained above, Plaintiff licensed the Rockefeller and J.P. Morgan Videos to YouTube when it published those videos on the platform. *See supra* at Part I.A; *e.g.*, *Jasper*, 378 F. Supp. 2d at 339-42. As a licensee, YouTube can no more be liable for indirect infringement than it can be for direct infringement, especially since Plaintiff's secondary infringement claims are premised on YouTube's alleged actions in hosting content that it was expressly authorized to host on its service. *See* Seiberlich Decl. Exs. A at 3, B at 6, and C at 10. But even apart from that, the Complaint shows that Plaintiff cannot make out claims for contributory or vicarious infringement.

### A. Plaintiff Cannot State a Claim for Contributory Infringement Because YouTube Removed The Accused Videos Upon Notice Of Alleged Infringement

"To establish a claim for contributory copyright infringement, a plaintiff must allege that the defendant ***with knowledge of the infringing activity***, induced, caused, or materially contributed to the infringing conduct of another." *Wolk*, 840 F. Supp. 2d at 750 (citation omitted) (emphasis added). Under this rule, "[a]n allegation that a defendant merely provid[ed] the means to accomplish an infringing activity is insufficient to establish a claim…. [T]he plaintiff must also demonstrate the defendant's knowledge of the infringing activity." *Id.* (citation omitted); *accord Lefkowitz v. John Wiley & Sons, Inc.*, 2014 WL 2619815, at *10-12 (S.D.N.Y. June 2, 2014) ("Liability will exist if the defendant engages in personal conduct that encourages or assists the infringement, and there is either actual or constructive knowledge of the infringing

activity[.]") (citations omitted). And "knowledge means actual or constructive knowledge *of specific and identifiable infringements of individual items*, not a general awareness that there are infringements." *Wolk*, 840 F. Supp. 2d at 751 (citation omitted) (emphasis added). In short, the Complaint must allege that YouTube knowingly "authorized or assisted" TVN in infringing Plaintiff's copyrighted works. *Parker*, 422 F. Supp. 2d at 499 (explaining that the "authorization or assistance must bear some direct relationship to the infringing acts, and the person rendering such assistance or giving such authorization must be acting in concert with the infringer") (citation omitted).

Plaintiff here alleges no facts to support this bedrock requirement for contributory infringement. Other than a boilerplate recitation of the element, which is not enough (*see Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *Lefkowitz*, 2014 WL 2619815, at *5-6), there is no allegation whatsoever that YouTube had any knowledge of the accused videos, much less any idea that they were infringing, before receiving Plaintiff's takedown notices for those videos. And, as the Complaint makes clear, once YouTube received those notices, it promptly removed all of the accused videos from its service. Compl. ¶¶ 28, 38, 35, 49. Far from "induc[ing], caus[ing], or materially contribut[ing]" to TVN's alleged infringement, therefore, YouTube did the opposite: upon gaining knowledge of the alleged infringement, YouTube actively intervened to disable access to the material at issue. *Wolk*, 840 F. Supp. 2d at 750 (citation omitted). The facts set forth in the Complaint thus rule out any claim for contributory infringement. *See, e.g.*, *Lefkowitz*, 2014 WL 2619815, at *10-12 (dismissing contributory infringement claim based on failure to plead knowledge element); *see also Luvdarts, LLC v. AT&T Mobility, LLC*, 710 F.3d 1068, 1072-73 (9th Cir. 2013) (same).

**B.** **Plaintiff Cannot State a Claim for Vicarious Infringement Because YouTube Stopped the Potentially Infringing Activity**

Plaintiff's vicarious liability claim is similarly infirm. Vicarious infringement occurs when a party "profit[s] from direct infringement while ***declining to exercise a right to stop or limit it***[.]" *MGM Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005) (emphasis added); *accord Luvdarts*, 710 F.3d at 1071 ("Vicarious infringement occurs when one profits from direct infringement while declining to exercise a right to stop or limit it[.]"); *Hydentra HLP Int'l Ltd. v. Luchian*, 2016 WL 5951808, at *14 (S.D. Fla. June 2, 2016) (same). Where a defendant exercises its ability to stop or limit the infringement, therefore, there can be no vicarious liability.

Plaintiff alleges in a wholly conclusory manner that YouTube "has, with the right and ability to control or supervise the direct infringements …, failed to exercise such right and ability after receiving actual knowledge of TV-Novosti's pattern of infringement[.]" Compl. ¶ 103. This threadbare allegation is, of course, not entitled to a presumption of truth. *See Iqbal*, 556 U.S. at 678-79. That is especially so here, where the actual facts alleged in the Complaint and its Exhibits show that YouTube ***did*** exercise its ability to stop the infringement; as soon as it received Plaintiff's notices, YouTube blocked access to the allegedly infringing videos. *See* Compl. ¶¶ 28, 35, 38, 49. Moreover, as discussed above, Plaintiff alleges that TVN took measures deliberately to "circumvent YouTube's automated Content ID and Copyright Match Tools to avoid getting caught doing what it knew was unlawful." *Id.* ¶ 44. This confirms that far from ***declining*** to exercise any ability to prevent the alleged infringement, YouTube affirmatively deployed tools designed to stop it, which the accused direct infringer allegedly intentionally evaded. These allegations preclude vicarious liability. *See, e.g.*, *Lopez*, 2019 WL 5199431, at *24 (dismissing vicarious infringement claim arising from the display of infringing

products on defendant's website, because plaintiff failed to allege, "as is required," that

defendant "declin[ed] to exercise [the] right" to stop or limit the infringement) (citation omitted).

**C.  YouTube's Unwillingness To Terminate TVN's Entire Account Or Remove *Non-Infringing* Content Is Not A Basis For Holding YouTube Liable As A Secondary Infringer**

It appears from the Complaint that Plaintiff wants to advance a different theory: that

YouTube should be held liable as a secondary infringer because, even though it removed all the

allegedly infringing content, it did not terminate TVN's ***entire YouTube account*** and purge all

of its videos from the services. But that is not remotely a basis for a claim of secondary (or

indeed any kind) of copyright infringement. Plaintiff does not allege that any of the videos

currently posted on TVN's YouTube channel are infringing Business Casual's copyrights, and it

is black-letter law that any claim for secondary infringement requires an act of direct

infringement by a third party. *See Wolk*, 840 F. Supp. 2d at 750 ("As these definitions suggest, in

order to hold a defendant secondarily liable someone else must have directly infringed on the

copyright holder's rights."); *MGM Studios*, 545 U.S. at 940 ("[T]he inducement theory of course

requires evidence of actual infringement by recipients of the device, the software in this case.").

If the videos that have not been removed are not infringing Plaintiff's copyrights, Plaintiff cannot

assert an infringement claim against YouTube for failing to remove them.

Plaintiff suggests that, because Business Casual sent several DMCA notices about TVN's

videos, YouTube was "required" by the DMCA's "repeat infringer" provisions to purge all TVN

content from its service, even if that content was never claimed to be infringing. Compl. ¶¶ 1, 18;

*see also id.* at Prayer for Relief ¶ 1. But that completely misunderstands the DMCA. The

requirement that an online service provider maintain a "repeat infringer" policy under 17 U.S.C.

§ 512(i)(1)(A) is merely a condition for invoking the DMCA safe harbor defense. ***It is not an***

***affirmative legal duty whose breach gives rise to an independent claim of infringement.*** *See*

*Arista Records LLC v. Usenet.com, Inc.*, 2008 U.S. Dist. LEXIS 95514, at *12 (S.D.N.Y. Nov. 24, 2008) ("The DMCA does not provide an affirmative cause of action," but rather "limitations of liability … if the provider is found to be [already] liable *under existing principles of law.*") (citation omitted) (emphasis in original). So even if YouTube misapplied its repeat infringer policy – which it did not – that would not give rise to an affirmative claim of infringement against YouTube or save Plaintiff's claims from dismissal.[8]

## CONCLUSION

For these reasons, this action should be dismissed for failure to state a claim upon which relief can be granted. Dismissal should be with prejudice because the facts admitted by Plaintiff in its own Complaint establish that any amendment would be futile.

---

[8] While this issue is not relevant to the present motion, YouTube's policy is fully consistent with the DMCA. The statute simply requires that platforms maintain a policy to terminate the accounts of "repeat infringers" "in appropriate circumstances," and that they "reasonably implement[]" that policy. 17 U.S.C. § 512(i)(1)(A); *accord Capitol Records, LLC v. Vimeo, LLC*, 972 F. Supp. 2d 500, 513 (S.D.N.Y. 2013) (defendant's repeat infringer policy was sufficient where "the evidence establishe[d] that Vimeo had a policy in place that provided for the termination of service for repeat … infringers…. The DMCA requires nothing more[.]"), *aff'd in part, vacated in part on other grounds*, 826 F.3d 78 (2d Cir. 2016); 4 Nimmer on Copyright § 12B.10[E][3] ("*[A]ny* good faith [repeat infringer] policy meeting [Congress's] plain language satisfies the statutory test.") (emphasis in original). The DMCA does not require YouTube to terminate a user's account simply because a copyright owner accuses it of infringement – at least not where (as here) those claims are affirmatively disputed by the alleged infringer using the very procedure established by the DMCA itself and the infringement claim is being actively litigated in court. Indeed, as things now stand, TVN is ***not*** a repeat "infringer"; it is a party that has ***denied*** accusations of infringement that will be resolved in due course by this Court. Nothing in the DMCA, its case law, or common sense required YouTube to terminate TVN's entire account under these circumstances.

Dated: August 18, 2021

Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

*s/ Brian M. Willen*

Brian M. Willen
Jason Mollick
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Telephone: (212) 999-5800
Facsimile: (212) 999-5899
bwillen@wsgr.com
jmollick@wsgr.com

*Counsel for Defendants YouTube, LLC,*
*Google LLC, and Alphabet Inc.*

## CERTIFICATE OF COMPLIANCE

Pursuant to Section II.D of the Court's Individual Practices, the undersigned certifies that this brief contains 6,460 words and complies with the Court's formatting rules.

Dated: August 18, 2021

Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

*s/ Brian M. Willen*

Brian M. Willen
Jason Mollick
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Telephone: (212) 999-5800
Facsimile: (212) 999-5899
bwillen@wsgr.com
jmollick@wsgr.com

*Counsel for Defendants YouTube, LLC,*
*Google LLC, and Alphabet Inc.*