# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BUSINESS CASUAL HOLDINGS, LLC, <br><br> Plaintiff, <br><br> v. <br><br> YOUTUBE, LLC, GOOGLE LLC, and ALPHABET INC., <br><br> Defendants. | Case No. 1:21-cv-03610-JGK |

## DECLARATION OF MEREDITH SEIBERLICH IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

I, Meredith Seiberlich, declare as follows:

1. I am a Legal Assistant at YouTube, LLC ("YouTube"), a subsidiary of Google LLC ("Google"). I make this Declaration in support of Defendants' Motion to Dismiss. I have personal knowledge of the facts set forth herein and, if called as a witness, I could and would testify competently as to those facts.

2. According to the Complaint, Plaintiff maintains a YouTube account located at https://www.youtube.com/channel/UC_E4px0RST-qFwXLJWBav8Q under the name "Business Casual." Plaintiff alleges that "[o]n June 8, 2018, Business Casual published an original documentary video on YouTube titled *How Rockefeller Built His Trillion Dollar Oil Empire* (the 'Rockefeller Video')." Compl. ¶ 22. Plaintiff further alleges that "[o]n June 25, 2020, Business Casual published an original documentary video on YouTube titled *J.P. Morgan Documentary: How One Man Financed America* (the 'J.P. Morgan Video')." *Id.* ¶ 23.

3. In order to create its account and upload videos to YouTube's website, Plaintiff was required to affirmatively accept the YouTube Terms of Service. YouTube's records show

that Plaintiff created its account in May 2016, accepted the Terms of Service at that time, and has since uploaded dozens of videos to the service.

4. In addition to agreeing to the Terms upon creating an account, users are reminded each time they upload a video that "[b]y submitting your videos to YouTube, you acknowledge that you agree to YouTube's **Terms of Service** and **Community Guidelines**," with the words "Terms of Service" and "Community Guidelines" appearing as bolded hyperlinks to the then-current versions of those policies:



5. Attached to this declaration as <u>Exhibit A</u> is a true and correct copy of the YouTube Terms of Service that were in effect at the time Plaintiff created its YouTube account in May 2016. That version of the Terms contained the following language (at Section 6.C):

> For clarity, you retain all of your ownership rights in your Content. However, by submitting Content to YouTube, you hereby grant YouTube a worldwide, non-exclusive, royalty-free, sublicenseable and transferable license to use, reproduce, distribute, prepare derivative works of, display, and perform the Content in connection with the Service and YouTube's (and its successors' and affiliates')

business, including without limitation for promoting and redistributing part or all of the Service (and derivative works thereof) in any media formats and through any media channels.

6. Attached to this declaration as <u>Exhibit B</u> is a true and correct copy of the YouTube Terms of Service that were in effect at the time Plaintiff uploaded the Rockefeller Video (June 8, 2018). A copy of the Terms of Service effective in June 2018 is also available on the YouTube website at https://www.youtube.com/t/terms?archive=20180525. That version of the Terms contained the following language (at Section 6.C):

> For clarity, you retain all of your ownership rights in your Content. However, by submitting Content to YouTube, you hereby grant YouTube a worldwide, non-exclusive, royalty-free, sublicenseable and transferable license to use, reproduce, distribute, prepare derivative works of, display, and perform the Content in connection with the Service and YouTube's (and its successors' and affiliates') business, including without limitation for promoting and redistributing part or all of the Service (and derivative works thereof) in any media formats and through any media channels.

7. Attached to this declaration as <u>Exhibit C</u> is a true and correct copy of the YouTube Terms of Service that were in effect at the time Plaintiff uploaded the J.P. Morgan Video (June 25, 2020). A copy of the Terms of Service effective in June 2020 is also available on the YouTube website at https://www.youtube.com/t/terms?archive=20191210. That version of the Terms contained the following language (at page 10):

> License to YouTube: By providing Content to the Service, you grant to YouTube a worldwide, non-exclusive, royalty-free, sublicensable and transferable license to

use that Content (including to reproduce, distribute, prepare derivative works, display and perform it) in connection with the Service and YouTube's (and its successors' and Affiliates') business, including for the purpose of promoting and redistributing part or all of the Service.

8. The Terms of Service incorporate YouTube's copyright policies. Attached to this declaration as <u>Exhibit D</u> is a true and correct copy of YouTube's policies for Content Managers, which are users that manage content across multiple channels. Included in those policies is the following rule governing copyright strikes for Content Managers (at page 2):

> When a channel receives a copyright strike, channel-level penalties are applied…. If a partner receives 10 copyright strikes across managed channels in a 90 day period, then the partner is subject to further review, the results of which may include loss of the ability to link channels, loss of the ability to upload videos, and termination of the partnership agreement.

[*signature page follows*]

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge. Executed on August 16, 2021, in Philadelphia, PA.

_____
Meredith Seiberlich