```
 1    UNITED STATES DISTRICT COURT
      SOUTHERN DISTRICT OF NEW YORK
 2    ------------------------------x

 3    BUSINESS CASUAL HOLDINGS, LLC,

 4                     Plaintiff,

 5              v.                          21 CV 3610 (ER)

 6    YOUTUBE, et al.,

 7                     Defendants.          Conference
                                            (via Telephone)
 8    ------------------------------x
                                            New York, N.Y.
 9                                          July 29, 2021
                                            4:30 p.m.
10
      Before:
11
                          HON. EDGARDO RAMOS,
12
                                            District Judge
13

14                            APPEARANCES

15    HOGAN DUFF, LLP
           Attorneys for Plaintiff
16    BY:  ANDERSON J. DUFF

17    WILSON SONSINI GOODRICH & ROSATI
           Attorneys for Defendants
18    BY:  JASON B. MOLLICK

19

20

21

22

23

24

25
```

1                    (Case called)

2                    MR. DUFF:  Your Honor, this is Anderson Duff on behalf

3      of Business Casual Holdings.

4                    THE COURT:  Good afternoon.

5                    MR. MOLLICK:  Good afternoon, your Honor, this is

6      Jason Mollick on behalf of the defendants YouTube, Google, and

7      Alphabet.

8                    THE COURT:  Good afternoon to you.

9                    This matter is on for a premotion conference.  I note

10     for the record that it is being conducted by phone.

11                   This is the first time that the parties have appeared

12     before me, so, Mr. Duff, let me begin with you.  Tell me a

13     little bit about your case.

14                   MR. DUFF:  Your Honor, this is a case that at its

15     heart is about whether or not YouTube has a reasonably

16     implemented repeat infringer policy that would allow them to

17     take advantage of the protections of the safe harbor described

18     in Section 12 of the Digital Millennium Copyright Act.

19     Business Casual believes that --

20                   THE COURT:  I'm sorry, Mr. Duff.  There appears to be

21     background static.  Are you on speaker phone?

22                   MR. DUFF:  No.  I was trying to use headphones to make

23     it clear.  Maybe it's not helping.  I'll take them off right

24     now, your Honor.  Sorry about that.

25                   Your Honor, is that better?

1          THE COURT:  That's much better.

2          MR. DUFF:  I apologize for that.

3          As I was saying, YouTube's repeat infringer policy is

4   not reasonable, not capable of being reasonably implemented on

5   its face because it can be gained by bad actors and it is not

6   reasonable as implemented here for two reasons.

7          The first, their published policy is three strikes and

8   you are out.  That is the policy that we had available to us.

9   The underlying infringer here received three copyright strikes

10  under YouTube's system and that meant that channel should have

11  been terminated and all associated channels.

12         At least two circuits that have considered this issue,

13  and not many have, have found that a reasonably implemented

14  repeat infringer policy, at a minimum, means enforcing the

15  policy that you have published.

16         We also believe that the repeat infringer policy as

17  implemented here is not reasonable because YouTube is

18  requiring -- they imposed an adjudication requirement on the

19  definition of a repeat infringer and that is contrary -- when I

20  say that, I mean that YouTube will not treat a party as a

21  repeat infringer for the purposes of their repeat infringer

22  policy and termination of a repeat infringer until there has

23  been a lawsuit and a court has found that infringer liable for

24  copyright infringement.

25         That adjudication requirement runs counter to Section

1  512 of the Digital Millennium Copyright Act, which in several

2  other sections recognizes the difference between an infringer

3  and an adjudicated infringer and it does not say adjudicated

4  infringer in the subsection discussing the need for a

5  reasonably implemented repeat infringer policy.

6          The adjudication requirement also runs counter to the

7  legislative history of the Digital Millennium Copyright Act.

8  And, finally, it runs counter to the Second Circuit's own

9  interpretation of repeat infringer.

10          Again, not many courts have considered this issue, but

11  courts, and one of them is the Second Circuit, had a

12  dictionary.  In *EMI Christian Music Group v. MP3tunes*, the

13  defendant was trying to argue that there needed to be an

14  adjudication of infringement, and the Second Circuit said no.

15  It says repeat infringer, which is not defined in the statute,

16  so let's look at a dictionary.  The Second Circuit in that case

17  said that someone who interferes with a repeat infringer is

18  someone who interferes with one of the exclusive rights of the

19  copyright again or repeatedly.  The adjudication requirement

20  that's being imposed here makes the YouTube's repeat infringer

21  policy not reasonably implemented.  Because YouTube does not

22  have a reasonably implemented repeat infringer policy, it

23  cannot claim the protections of the safe harbor.

24          THE COURT:  Let me ask you, what constitutes, from

25  your perspective, a strike under YouTube's infringer policy?

1          MR. DUFF:  Well, your Honor, it might be a question

2     that YouTube would be better answering because it's their

3     policy, but their published policy was such that when a party

4     like my client noticed that their content was being infringed

5     upon by some other channel on YouTube, a party like my client

6     could submit a DMCA takedown notice and a copyright strike

7     would be applied to the infringer.  If the infringer collected

8     three strikes within a 90-day period, that's it, they are

9     terminated.  They are out permanently along with any associated

10    channels.

11         THE COURT:  So the only thing that constitutes a

12    strike is someone saying that their content has been infringed

13    upon.

14         MR. DUFF:  That is correct, yes.

15         THE COURT:  You think that that's unreasonable rather

16    than a limitation of their policy because they, YouTube,

17    requires something more.

18         MR. DUFF:  Your Honor, you are absolutely right, the

19    something more is one of the reasons that YouTube does not have

20    a reasonably implemented policy.  The other reason or one of

21    the other reasons is that in this case the underlying infringer

22    here, and we have a separate lawsuit, and I believe we filed in

23    this case notice of related cases, but the underlying infringer

24    received three strikes within 90 days.  YouTube acknowledged

25    that in writing to my client that the underlying infringer had

1    received three copyright strikes.  Under the policy, they

2    should have been terminated.

3         In fact, YouTube did terminate this underlying

4    infringer in, I think, early March, but then -- so the

5    underlying infringer is a Russian state-owned media company,

6    and a representative of the Russian government apparently

7    complained about the termination of that channel, and within

8    hours the channel was reinstated.

9         One final point that I'll make.  When that channel,

10   this repeat infringer, was reinstated, all of their videos were

11   reinstated minus the three videos that my client found that

12   infringed on my client's copyrighted content.

13        As soon as all these other videos, we are talking

14   about thousands of videos, were reinstated, the underlying

15   infringer immediately started removing or making private, we

16   are not sure -- they took them offline so that the public

17   couldn't see them and that we can't see them, but they started

18   taking offline thousands of videos immediately, and they did

19   that for a long time.  We can look and see that they have never

20   done anything like that before.  It strongly suggests that

21   there is a lot more infringing activity on that channel and the

22   associated channels that we did not find and now we will not be

23   able to find, absent discovery.

24        THE COURT:  Let me ask you.  Tell me about what's

25   being infringed here.  Your client, as I understand it,

1    produces documentaries, historical documentaries.

2    MR. DUFF:  That's correct, your Honor, with the focus

3    on business.

4    THE COURT:  As I understand it, the Russian outfit

5    took three snippets from three of your documentaries and ran

6    them on their channels?

7    MR. DUFF:  No, your Honor.  It's that quite that

8    simple.  It was far more than three snippets.  There are three

9    infringing videos that were up and they are slightly different,

10   each one.  One involves a seven-second clip that is an entire

11   scene from one of my client's documentaries, heavily produced

12   scene.  Another contains just under two minutes of content that

13   had been taken from various different places of my client's

14   documentaries, and then the third one was a live-streamed video

15   that contained significantly more.  It was eight minutes and 50

16   seconds, I believe, of my client's content.  So that eight

17   minutes and 50 seconds was made up of smaller snippets that

18   were taken the same way the second video I described was, of

19   somewhere between two seconds and seven or ten seconds each.

20   THE COURT:  And you said that you can no longer see

21   the films, or whatever they are, of this RT Arabic channel,

22   correct?

23   MR. DUFF:  Well, we have the infringing videos, but

24   they have taken thousands of videos offline.  So I think there

25   is a strong -- that strongly indicates to me that there is a

1   lot more infringing content that was there that we just didn't

2   find, and now we don't -- we can't look for it anymore.  I

3   don't know why.

4          THE COURT:  You know more about this stuff than I do

5   from a technology standpoint certainly.  When you say that they

6   took them offline, does that mean that they have put them on

7   the shelf and they are not showing them to the world, or

8   something else?

9          MR. DUFF:  It means that we do not have access to

10  them.  I am not the most tech-savvy person.  But when you have

11  an account with YouTube, you can designate videos as private

12  and then nobody can watch them.  But there are varying levels

13  of that.  But they could have deleted them wholesale.  I don't

14  think that there is a way for us to tell.

15         What matters, though, is that we can't see them

16  anymore.  If they are blocking us from being able to see them,

17  then they are blocking other people from being able.  I am not

18  a hundred percent sure about this, your Honor, but I think they

19  are completely unavailable to the public.

20         One other thing that I do want to mention about the

21  infringing videos that I just described, the three that we know

22  of, is that when they took all these different portions of my

23  client's videos, they removed my client's watermark and then

24  replaced it with their own and then, before they uploaded those

25  infringing videos to YouTube, they played with the saturation

1    and the brightness levels of the videos in a deliberate attempt

2    to evade the standard technical measures that YouTube has in

3    place to automatically detect copyright infringement.  Those

4    are clear indications of bad faith and all of this was

5    communicated by my client to YouTube quite a while ago.

6              THE COURT:  Let me ask you this.  If you say that they

7    have taken these things offline, you can't see them, presumably

8    the rest of the public can't see them.  Putting aside any other

9    damages that you may be seeking, isn't that a good thing?

10             MR. DUFF:  Well, your Honor, the fact that the repeat

11   infringer policy that YouTube has in place right now can be

12   gamed by any bad actor and that YouTube profits off that is not

13   a good thing.  Maybe I should explain, if your Honor wouldn't

14   mind, briefly, just how easy it is for someone to game the

15   system because of the adjudicated infringer requirement.

16             The policy says that if you receive three strikes in

17   90 days, then your channel and all associated channels are

18   terminated.  However, you have to get those three strikes

19   within 90 days.  However, because there is this adjudication

20   requirement, the Digital Millennium Copyright Act itself says

21   that after someone files a counternotification that says, we

22   have a good-faith belief that the material was removed by

23   accident, then the rights holder, in this case my client, has

24   between 10 and 14 days to file a lawsuit, and that's the only

25   way to protect your rights.

1           So because YouTube imposes this adjudication

2    requirement on users, rights holders can only protect

3    themselves from a bad actor that is willing to file a

4    fraudulent counternotification by filing a lawsuit almost

5    immediately.

6           And in this case we know that the underlying infringer

7    filed the counternotifications in bad faith.  We know that

8    because the snippets -- all of the infringing content that was

9    taken from my client's videos that appears in one of the

10   infringing videos was also all used in another one of the

11   infringing videos.  That video contained more, but it used all

12   of that infringing content exactly.  And with the first

13   infringing video, the infringer got in contact with my client

14   and said, yes, we copied your content.  By the way, we

15   accidentally filed a counternotification, which we will

16   retract.  But then they went ahead and filed a

17   counternotification as to this other infringing video that has

18   the exact same infringing content and one other

19   counternotification.  By doing that, they have forced my client

20   to file a lawsuit within 10 or 14 days to protect his rights

21   and avoided receiving three strikes within 90 days.

22           If your Honor has more technical questions about

23   YouTube's procedures, my client has the deep understanding of

24   YouTube's workings because my client is a content creator.

25   That's why this is such an important issue to him.  If your

1    Honor has any questions, he is on the line.

2            THE COURT:  Let me ask you another question, Mr. Duff.

3    The way that you describe it, it seems that it's just as easy

4    to game the system from the front side as from the back side.

5    What I mean by that is, it sounds like it's just as easy for a

6    bad guy, let's say in this case the defendant, to affirmatively

7    or preemptively file a notification of infringement against you

8    and then file two more within 90 days to give you three

9    strikes.  So what's to stop a bad guy from doing that if all

10   that has to happen is that you just file a notice of

11   infringement?

12           MR. DUFF:  Your Honor, that is an excellent question.

13   You are right, bad actors are always going to try to find a way

14   to game the system.

15           The problem here is that the adjudication requirement

16   is not only not included in the Digital Millennium Copyright

17   Act, if you read the other provisions of the DMCA safe harbor,

18   Section 512, it's clear that Congress did not want parties to

19   have to sue to enforce their rights.  So while it may be that

20   the system could be gamed on the other side, that's how

21   Congress intended it to be.

22           Now, they didn't intend it to be gamed, I hope, but

23   there is a safety valve in the language of the provision that

24   requires a reasonably implemented repeat infringer policy.  It

25   says that repeat infringers need to be terminated in

1    appropriate circumstances.  So that does give a bit of an

2    escape valve there, but the escape valve should not be punting

3    to the courts and forcing the parties to file lawsuits and take

4    up a federal court's time.

5              THE COURT:  Let me just ask you a couple more

6    questions, these will be yes or no questions, so I can get over

7    to Mr. Mollick.

8              Question No. 1, is it your understanding that

9    YouTube's adjudication policy, as you have referred to it,

10   requires you, once you filed a notice of infringement and had

11   been served with a counternotice of infringement, to go to

12   court and file a lawsuit?  Yes or no.

13             MR. DUFF:  Yes.

14             THE COURT:  Is it your understanding that the DMCA

15   precludes or prohibits services like YouTube from requiring

16   parties to go to court to establish their rights?

17             MR. DUFF:  Your Honor, it does not prohibit it, but

18   the adjudication requirement is not in this provision.

19             THE COURT:  So the answer is no.

20             Mr. Mollick.

21             MR. MOLLICK:  Yes, your Honor.

22             THE COURT:  Why should I let you make this motion to

23   dismiss?  There is an allegation that your policy is

24   insufficient, does not comply with the terms or the spirit of

25   the DMCA, and that you are imposing overly rigorous

1    restrictions or requirements on content providers like Business

2    Casual.

3            MR. MOLLICK:  Sure.  To begin with, counsel's

4    description of YouTube's policy is actually simply not true.

5    It's not something I'm saying that goes beyond the pleadings.

6    That's something that is in the pleadings itself and it is

7    attached to the pleadings and exhibits.

8            Also, more fundamentally, it happens to be relevant

9    for purposes of our motion to dismiss.  One of the things that

10   we mention our letter, which I think speaks for itself, but I'm

11   happy to go through the reasons, the requirement to maintain

12   and repeat infringer policy, notwithstanding our disagreements

13   about what that means, and I will and am more than happy to get

14   into that, that requirement is merely a prerequisite for a

15   defendant to assert an affirmative defense under the DMCA.

16           But in this case YouTube does not need to assert that

17   affirmative defense because based on the facts as alleged in

18   the complaint, the plaintiff cannot state an infringement claim

19   against YouTube, regardless.  So when we get to the repeat

20   infringer policy, that's really an issue that's going to be

21   litigated only if we get past the motion-to-dismiss stage.

22           I think the fundamental disconnect here with the

23   plaintiff's complaint is that they kind of put the cart before

24   the horse.  They are litigating a defense before they have

25   actually proven or at least can get past the pleadings stage

 1   and show that they can state a claim to begin with.

 2          That's actually very obvious from the complaint

 3   because the very first thing that they ask for is something

 4   that the First Amendment prohibits.  The very first thing that

 5   they ask for in terms of their claims for relief is an order

 6   from this Court to compel YouTube to terminate not TV-Novosti's

 7   infringing content, that's already happened, YouTube has

 8   already removed all that content, but they want this Court to

 9   order a private platform to terminate a user and all of its

10   other channels and all of its noninfringing and lawful content.

11   No Court can order a private platform to do that under the

12   First Amendment, and certainly the DMCA doesn't even come close

13   to requiring such a thing.

14          If your Honor would permit, I'm happy, since we have

15   had a long discussion about the repeat infringer policy, I want

16   to address some of those arguments first, and then I'm happy to

17   go over the reasons why the motion to dismiss should be

18   granted.

19          THE COURT:  OK.

20          MR. MOLLICK:  With respect to counsel's

21   characterization of YouTube's policy, there is no adjudication

22   requirement.  That assertion is completely false.  The policy

23   only requires adjudication if there is a dispute between the

24   claimant and the counterclaimant as to whether infringement

25   actually occurred.  If there is no dispute and there is no

1    counternotification submitted, then there is nothing that needs

2    to be adjudicated.  YouTube terminates accounts every single

3    day, based on takedown notices, without requiring adjudication.

4         Here, in this case, TV-Novosti has submitted

5    counternotifications under penalty of perjury disputing

6    Business Casual's claims that an infringement occurred.  Now, I

7    understand they say with respect to one of them, TV-Novosti

8    withdrew one of the counternotices.  That's true, but that's

9    only with respect to one of the videos.  For two other

10   infringing videos, they submitted counternotifications and

11   never withdrew them.

12        I suspect that the reason why, your Honor, is because

13   TV-Novosti realized that even if they copy content from

14   plaintiff's videos, the content is not copyrightable to

15   plaintiff to begin with, or at least they have a very strong

16   copyrightable defense.  They also very likely have a very

17   strong fair use defense, which is something that is being

18   litigated in the related case because the amount of content

19   that was copied was extremely minimal.

20        We have those counternotifications there.  The

21   plaintiff was telling YouTube one thing.  The other defendant

22   in the other case, TV-Novosti, is telling YouTube something

23   else.  YouTube is caught in the middle.  We are not judge,

24   jury, and executioner, and the DMCA does not require us to be

25   judge, jury, and executioner.  That wouldn't be appropriate.

1          THE COURT:  Can I ask you something about TV-Novosti.

2    I understand that it is or it used to be a state-owned station.

3    I take it that it's a substantial business.  This is not some

4    teenager with a TikTok channel.

5          MR. MOLLICK:  They allege that they are funded by the

6    Russian government.  I think there is some evidence of that.

7    And I actually believe there is notice on YouTube's website

8    that says that they may be funded in whole or in part by the

9    Russian government.  I don't know whether that happens to be

10   true or not.

11         Yes, they are massive content creator.  They have 39

12   channels.  RT Arabic is just one of their 39 channels.  There

13   is also 38 other channels here that never hosted any allegedly

14   infringing content.  There is also thousands upon thousands --

15   I haven't been able to count it, but I can tell you it's

16   thousands and thousands of hours of other content here that is

17   not allegedly infringing.

18         That actually goes, your Honor, towards the issue of

19   whether YouTube is being reasonable here in implementing their

20   policy.  Think of what the plaintiff is asking for here.  They

21   are claiming that the DMCA somehow requires us to remove not

22   just the three infringing videos that they are complaining

23   about, but all, thousands and thousands of hours of lawful,

24   noninfringing content that has nothing to do with this case.

25   Just because the plaintiff accuses them of infringement,

1   somehow YouTube is required by law to remove everything before

2   the plaintiff can even prove its case?  That's not what the

3   DMCA requires.

4        The DMCA calls for the plaintiff to file its lawsuit

5   and vindicate its claims, and they are doing that.  They sued

6   TV-Novosti, that's an active lawsuit pending before Judge

7   Koeltl, and YouTube has told the plaintiffs, and we said, go

8   litigate your case against the alleged infringer, show us that

9   you are right, show us that TV-Novosti is wrong and then come

10  back to us and we can execute our policy accordingly.  But the

11  DMCA does not require a private platform to assume that the

12  claimant is right in an instance where the takedown notice is

13  being disputed.

14        Counsel referred to this adjudication requirement in

15  cases in other circuits.  The one case that they cite in their

16  letters is the *Cox* case in the Fourth Circuit.  That's an

17  excellent example of how this case has nothing to do with the

18  cases that they cite.  In *Cox*, the defendant received millions,

19  and I'm not exaggerating, millions of takedown notices that

20  were uncontested, and the platform never even took down the

21  videos, let alone suspended the users.

22        In this case we have one user who has submitted three

23  takedown notices with respect to just a few seconds' worth of

24  content and those takedown notices are being disputed.  It is

25  absolutely reasonable and appropriate for YouTube in that

circumstance to say, look, we don't know who is right.  There
are arguments on either side.  Go litigate your case.  Then
come back to us and then let us know how that turns out.
That's built into the statute itself, your Honor, because if
you look at the statute there is no mention about how a repeat
infringer policy must be worded or carried out.  The statute is
intentionally vague.  It says that a website has to reasonably
implement a repeat infringer policy and the policy has to call
for a termination of infringers in appropriate circumstances.
Those phrases reasonable, appropriate, intentionally give the
platforms discretion and flexibility, depending on the
circumstances of the case, and that's what YouTube is doing
here.

THE COURT:  I take it there has been no adjudication
of your adjudication policy, by which I mean to say that no
court has to date at least found it unreasonable to require
competing claims to be brought to court?

MR. MOLLICK:  I'm not aware of any.  More generally,
I'm not aware of any court that's ever held that a policy that
says that disputed claims have to be litigated in court is
unreasonable under the DMCA.

THE COURT:  What do you want to do, Mr. Mollick, in
terms of your motion?

MR. MOLLICK:  With respect to the motion, your Honor,
the problem with plaintiff's complaint is that based on the

1    facts that are alleged, I don't think there is a claim here

2    that they can allege against Google, so we don't really get to

3    the repeat infringer policy in the first place.

4         So there is two different types of claim.  There is

5    the direct infringement claim where they accuse YouTube of

6    directly infringing the content issue.  Then there is the

7    secondarily liability claims, which break down into two parts.

8    There is contributory liability and vicarious liability.

9         With respect to direct infringement, we will obviously

10   explain this further in our motion, but YouTube cannot be an

11   infringer for two reasons.  Number one, when the plaintiff

12   uploaded their content onto YouTube's platform, they licensed

13   the content to YouTube, and it is settled law that a licensor

14   cannot sue a licensee for copyright infringement.  They just

15   can't.

16        In addition, YouTube is nothing more, at least with

17   respect to TV and videos, it's nothing more than an automated

18   hosting platform.  There is no allegation and there can be no

19   plausible allegation that YouTube itself or YouTube employees

20   somehow conspired with TBN to infringe plaintiff's content.

21   All it did was host content that was created and uploaded by

22   TBN.  There is no volitional infringing content by YouTube.

23        Again, under settled Second Circuit law, the lack of

24   volitional conduct by the alleged infringer means there is no

25   claim of direct infringement.  That's the direct infringing

1    claims.

2            With respect to the secondary claims, contributory

3    liability requires that the defendant had intentionally

4    contributed to someone else's infringement after acquiring

5    knowledge of that infringement.  But YouTube did the opposite

6    of that.  The plaintiff concedes in their complaint that when

7    YouTube was notified of the infringing content, YouTube took it

8    down.

9            In fact, as Mr. Duff alluded to on the call just a few

10   minutes ago, the complaint specifically alleges that TBN

11   undertook measures to deceive YouTube into being unable to

12   catch TBN's infringing activity, alleged infringing activity,

13   which completely contradicts any notion that YouTube

14   contributed to TBN's infringing activity.

15           Finally, with respect to vicarious liability,

16   vicarious liability requires that the defendant have failed to

17   exercise a right and ability to stop the infringement, which,

18   again, is the exact opposite of what YouTube did, and all of

19   that is in the complaint itself.  When YouTube was notified of

20   the infringement, YouTube immediately took it down.

21           Now, I'll say one other thing about the timing of the

22   takedown notices.  There is three different videos.  With

23   respect to one of the videos, and this is the longer one that

24   counsel referred to, YouTube took that video down extremely

25   quickly, within 72 hours.  I think counsel concedes in their

1    letter, at least they hint in their letter, that that takedown

2    cannot possibly give rise to any liability for YouTube because

3    it was so quick.

4           For the two other videos at issue, YouTube took nine

5    days and 24 days, respectively, to remove them.  But the reason

6    why YouTube took some additional time for those videos is

7    because the total amount of content in those two videos was ten

8    seconds, ten seconds of allegedly infringing content, which

9    raises serious concerns as to whether that alleged infringement

10   is actually a fair use.  As the correspondence attached to the

11   complaint shows, the reason that YouTube did not remove the

12   content immediately or within 24 or 72 hours is because YouTube

13   was concerned that the plaintiff was not taking principles of

14   fair use into account.  By the way, fair use is important here

15   because not only was the content so de minimus, ten seconds,

16   but the content at issue is really historical public domain

17   images.  The only originality that they claim is the way that

18   those images were displayed.  So there is correspondence

19   between the plaintiff and YouTube.

20          Again, I'm not straying anywhere beyond the complaint.

21   This is all attached to the complaint where YouTube says,

22   please give us more information as to whether these alleged

23   acts of infringement are actually fair use.

24          The plaintiff's first response was to accuse YouTube

25   of supporting the Russian government.  The plaintiff then

1    thought better of it and sent YouTube more information.  Then,

2    after a few more days, YouTube took down the content.  Because

3    it took those actions, YouTube cannot be liable as a secondary

4    infringer, so we don't even get to the repeat infringer policy

5    issues.

6                 THE COURT:  I've heard enough.

7           I will grant defendants the ability to make their

8    motion to dismiss.  It will be on the following schedule.  The

9    motion will be filed by August 18.  The response will be filed

10   by September 8 and the reply by September 15.  So that's three

11   weeks, three weeks, one week.

12                MR. DUFF:  Are we able to respond to that, by any

13   chance?

14                THE COURT:  Are you able to respond to what?

15                MR. DUFF:  We can respond in our filing.

16                THE COURT:  You have the dates.

17          Is there anything else that we should do today, Mr.

18   Duff?

19                MR. DUFF:  We will respond to the points made by

20   opposing counsel in our responsive memorandum.

21                THE COURT:  Anything else from you, Mr. Mollick?

22                MR. MOLLICK:  I think that's it.  Thank you, your

23   Honor.

24                THE COURT:  Thank you all.  We are adjourned.  Please

25   stay well.              (Adjourned)