UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| BUSINESS CASUAL HOLDINGS, LLC, a Delaware limited liability company, | ) ) ) | |
| Plaintiff, | ) ) | Case No.:  21-cv-3610-JGK-RWL |
| v. | ) ) | |
| YOUTUBE, LLC, a Delaware limited liability company; GOOGLE LLC, a Delaware limited liability company; and ALPHABET INC., a Delaware corporation, | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**PLAINTIFF'S MEMORANDUM OPPOSING DEFENDANTS'**

**MOTION TO DISMISS**

# TABLE OF CONTENTS

I.     **INTRODUCTION**     **1**

II.    **BACKGROUND**     **3**

III.    **ARGUMENT**     **6**

    A.    **Legal Standard**     **6**

    B.    **Defendants Are Not Entitled to a Legal Determination That They Are Insulated from Liability Under a DMCA Safe Harbor Provision**     **7**

    C.    **Business Casual Plead Facts Alleging Defendants' Failure to Reasonably Implement a Repeat Infringer Policy**     **9**

        i.    **YouTube Did Not Follow Its Own Repeat Infringer Policy**     **10**

        ii.    **YouTube Seeks A Repeat Infringer Judgement Before it Applies its Repeat Infringer Policy to TV-Novosti, Which is *Prima Facie* Unreasonable**     **13**

    D.    **Defendants Did Not Expeditiously Remove All Infringing Videos**     **17**

IV.    **Business Casual's Contributory Infringement and Vicarious Liability Claims Against Defendants are Not Facially Defective**     **18**

    A.    **Business Casual Has Adequately Plead a Contributory Infringement Claim**     **18**

    B.    **Business Casual Has Adequately Plead a Vicarious Liability Claim**     **20**

V.    **Business Casual Has Adequately Plead Liability for Direct Infringement**     **21**

VI.    **Defendants Have Not Proven They Are Immunized by YouTube's Terms of Service**     **22**

VII.   CONCLUSION                                                          23

# TABLE OF AUTHORITIES

## CASES

*Agence France Presse v. Morel*, 769 F. Supp. 2d 295, 304 (S.D.N.Y. 2011) ............................. 19

*ALS Scan, Inc. v. CloudFlare, Inc.*, No. CV 16-5051-GW(AFMX), 2017 WL 1520444, at *8

  (C.D. Cal. Feb. 16, 2017) ........................................................................................ 7

*Arista Recs. LLC v. Lime Grp. LLC,* 784 F. Supp. 2d 398, 422-23 (S.D.N.Y. 2011) ................. 19

*Arista Recs. LLC v. Usenet.com, Inc.*, 633 F. Supp. 2d 124, 148 (S.D.N.Y. 2009) .............. 21, 22

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) .................................................. 6

*BMG Rts. Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 881 F.3d 293, 305 (4th Cir. 2020)  10, 13, 14,

  16

*Bourne v. Walt Disney Co.*, 68 F.3d 621, 631 (2d Cir. 1995)....................................... 22

*BWP Media USA Inc. v. Hollywood Fan Sites, LLC*, 69 F. Supp. 3d 342, 358-59 (S.D.N.Y. 2014)

  ....................................................................................................... 6, 7, 8, 21

*Capitol Records, Inc. v. MP3Tunes, LLC*, 821 F. Supp. 2d 627, 638 (S.D.N.Y. 2011) ............. 3, 8

Capitol Records, LLC v. Vimeo, LLC, 826 F.3d 78 (2d Cir. 2016)................................. 9

*Capitol Recs., LLC v. ReDigi Inc.*, 934 F. Supp. 2d 640, 657 (S.D.N.Y. 2013), *aff'd,* 910 F.3d

  649 (2d Cir. 2018)................................................................................... 21

*Capitol Recs., LLC v. Vimeo, LLC,* 972 F. Supp. 2d 500, 512–13 (S.D.N.Y.2013)....................... 9

*Cartoon Network LP, LLLP v. CSC Holdings, Inc.*, 536 F.3d 121, 133 (2d Cir. 2008)......... 21, 22

*Corbis Corp. v. Amazon.com, Inc.*, 351 F. Supp. 2d 1090, 1104-06 (W.D. Wash. 2004).............. 3

*Democratic Nat'l Comm. v. Russian Fed'n*, 392 F. Supp. 3d 410, 418 (S.D.N.Y. 2019) ............. 6

*Ellison v. Robertson*, 357 F.3d 1072, 1080 (9th Cir. 2004)........................................... 7

*Fioranelli v. CBS Broad. Inc.*, No. 15-CV-0952 (VSB), 2021 WL 3372695, at *28 (S.D.N.Y. July 28, 2021).................................................................................................... 16

*Gershwin Publ'g Corp. v. Columbia Artists Mgmt, Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971) .. 18, 19

*In re Aimster Copyright Litig.*, 252 F. Supp. 2d 634, 659 (N.D. Ill. 2002), *aff'd,* 334 F.3d 643 (7th Cir. 2003)...................................................................................................... 10

*John Wiley & Sons, Inc. v. DRK Photo*, 882 F.3d 394, 402 (2d Cir. 2018).................................. 18

*Kelly-Brown v. Winfrey*, 717 F.3d 295, 308 (2d Cir. 2013)........................................................ 22

*Matthew Bender & Co., Inc. v. West Publ'g Co.*, 158 F.3d 693, 706 (2d Cir. 1998) ................... 19

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005) ........... 18, 19, 20

*Michael Grecco Prods., Inc. Alamy, Inc.*, 372 F. Supp. 3d 131, 140 (E.D.N.Y. 2019) ................ 6

*Patterson v. Diggs*, No. 18-CV-03142 (NSR), 2019 WL 3996493, at *3 (S.D.N.Y. Aug. 23, 2019) ...................................................................................................................... 21

*Peer Int'l Corp. v. Luna Recs., Inc.*, 887 F. Supp. 560, 564–65 (S.D.N.Y. 1995)........................ 18

*Rosen v. eBay, Inc.*, No. CV 16-9183-MWF (EX), 2018 WL 4808513, at *7 (C.D. Cal. Apr. 4, 2018) ................................................................................................................ 9, 10

*Shapiro, Bernstein & Co. v. H.L. Green Co.*, 316 F.2d 304, 307 (2d Cir. 1963) ........................ 20

*Softel, Inc. v. Dragon Med. & Sci. Communc'ns, Inc.*, 118 F.3d 955, 971 (2d Cir. 1997)..... 19, 20

*Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 434-35 (1984).................. 18, 19

*Spinelli v. Nat'l Football League*, 903 F.3d 185, 197 (2d Cir. 2018)..................................... 21, 22

*United States v. Texas,* 507 U.S. 529, 534 (1993) ........................................................................ 8

*Ventura Content, Ltd. v. Motherless, Inc.*, 885 F.3d 597, 614 (9th Cir. 2018)............................. 9

*Viacom Int'l v. YouTube, Inc.*, 676 F.3d 19, 27 (2d Cir. 2012) ............................................... 7, 18

*Windstream Servs., LLC v. BMG Rts. Mgmt. (US) LLC*, No. 16CIV5015KMWRLE, 2017 WL
    1386357, at *5 (S.D.N.Y. Apr. 17, 2017) ................................................................. 19

*Wu v. John Wiley & Sons, Inc.*, No. 14 CIV. 6746 AKH AJP, 2015 WL 5254885, at *13
    (S.D.N.Y. Sept. 10, 2015) ......................................................................................... 18

**STATUTES**

17 U.S.C. § 106 ............................................................................................................... 18

17 U.S.C. § 501(g)(1) ..................................................................................................... 14

17 U.S.C. § 512 ........................................................................................................... 6, 14

17 U.S.C. § 512(b)(2)(E)(i) ............................................................................................. 14

17 U.S.C. § 512(c)(1)(A)-(C), (2) ..................................................................................... 8

17 U.S.C. § 512(c)(1)(A)(iii) ........................................................................................... 17

17 U.S.C. § 512(i) ............................................................................................................. 2

**RULES**

Federal Rule of Civil Procedure 8(a)(2) ........................................................................... 6

Rule 12(b)(6) ..................................................................................................................... 6

**LEGISLATIVE MATERIALS**

H.R. Rep. No. 105-551, pt. 2, at 61 (1998) .................................................................... 14

H.R. Rep. No. 105–551, pt. 2, at 61 (1998) ..................................................................... 9

S. Rep. No. 105-190, at 52 (1998) ................................................................................. 14

**SECONDARY AUTHORITY**

Black's Law Dictionary 902 (10th ed. 2014)................................................................................. 13

I.      **INTRODUCTION**

Plaintiff Business Casual Holdings, LLC ("Business Casual") opposes Defendants

YouTube, LLC ("YouTube"), Google LLC ("Google"), and Alphabet Inc. ("Alphabet")

(collectively, "Defendants") Motion to Dismiss Business Casual's claims for direct copyright

infringement (Counts 1-3) and indirect copyright infringement (Counts 4-5). Defs.' Mot.

Dismiss, ECF No. 28 (hereafter, "YT MTD").

Defendants' Motion attempts an end run around the threshold question of whether they

are entitled to use a special infringement immunity provision under the Digital Millennium

Copyright Act ("DMCA") to avoid traditional copyright infringement claims. In this case, the

pleadings show that Defendants are not entitled to the benefits of a copyright protection

procedure that they *chose* not to follow. Contrary to Defendants' position, Business Casual's

copyright infringement claims are not defective. Nor does Business Casual fail to state a viable

infringement claim. Business Casual's arguments rest on the premise that Defendants made *the*

*choice* to abandon certain protections they might otherwise enjoy because of their decisions

relating to the infringing activities central to this case.

Congress enacted the DMCA in 1998 to address certain copyright issues raised by easy

online distribution of copyrighted materials. In this law, Congress crafted a careful balance

between the rights of copyright holders and the potential for copyright infringement liability that

might arise for online service providers, like YouTube, based on the actions of their users.

Congress also sought to encourage cooperation between the two groups though a fair, speedy,

and transparent process for dealing with copyright disputes in the online context.

The DMCA promotes these objectives with "safe harbor" provisions and procedural

requirements that YouTube *must* follow to avoid direct and indirect infringement claims for

1

activities that others take on its platform. To qualify for DMCA safe harbor protection, YouTube *must* have "adopted and *reasonably implemented*, and inform[ed] subscribers and account holders of [YouTube's] *policy that provides for the termination" of repeat infringers' use of [YouTube's] "system or network" under "appropriate circumstances*." 17 U.S.C. § 512(i) (emphasis added).

Business Casual filed this lawsuit because YouTube does not "reasonably implement" a policy for terminating repeat infringers on its platform under appropriate circumstances, such as in this case when it comes to TV-Novosti's infringing activities. YouTube's Orwellian two-tiered system which, in their own words, proclaims "all channels are equal, but some channels are more equal than others," or "three strikes for thee, but not for me," is unreasonable, and thus, not *reasonably implemented*.

Defendants' position is that they may ignore the DMCA's mandatory requirements, as they did with TV-Novosti's infringing activities, and still avoid liability for infringement under the DMCA's "safe harbor" provisions. This is an abuse of the statute, not a position that supports YouTube's immunity claim.

Business Casual alleges that Defendants do not qualify for safe harbor protection given the facts plead in this case. If the fact finder determines that Defendants do not qualify for safe harbor protection, they are not immune to liability for copyright infringement.

This is the threshold issue that this Court must decide before it throws out Business Casual's claims against YouTube. A proper analysis requires evaluation *of all relevant facts and circumstances* surrounding YouTube's unreasonable implementation of its repeat infringer policy. Even at this early stage, Business Casual's 243-page Complaint has provided evidence of Defendants' actual knowledge and red flag knowledge of TV-Novosti's repeated and brazen

infringement on its platform, which is crucial to determining whether it has reasonably implemented a repeat infringer policy. *See Capitol Records, Inc. v. MP3Tunes, LLC*, 821 F. Supp. 2d 627, 638 (S.D.N.Y. 2011); *Corbis Corp. v. Amazon.com, Inc*., 351 F.  Supp. 2d 1090, 1104-06 (W.D. Wash. 2004). Business Casual simply seeks the opportunity to complete discovery relating to this, and the other affirmative defense and infringement issues, before its copyright infringement claims are dismissed on an affirmative defense that is not ripe.

## II.    BACKGROUND

YouTube's repeat infringer policy states "[i]f a copyright holder submits a valid DMCA complaint through our webform, we take down that video and apply a copyright strike. ***If a user gets three copyright strikes in 90 days, their account, along with any associated channels, will be terminated.***" Compl. ¶ 4, ECF No. 1 (emphasis added). If a YouTube channel is part of the YouTube Partner Program, that user gets seven additional days to act before their channel is disabled after receiving three copyright strikes within ninety-days. *Id*. ¶ 5. With respect to infringing live streams, YouTube's repeat infringer policy states "Your channel's live streaming ability will be automatically turned off if . . . your live stream or archived live stream gets a [DMCA] copyright takedown. . . . [I]f your account has been restricted from live streaming, you're prohibited from using another channel to live stream on YouTube." *Id*. ¶ 6.

If a channel in the YouTube Partner Program receives a copyright strike, they avoid the strike's impact by filing a counter notification or convincing the rights holder that filed the relevant takedown notice to retract the claim. *Id*. ¶ 5. YouTube's repeat infringer policy states that "[i]f you submit a counter notification, your channel won't be disabled while the counter notification is unresolved." *Id*. ¶ 5. Defendants materially benefit from repeat infringers that submit DMCA counter notifications, in bad faith, to avoid termination under YouTube's repeat

3

infringer policy. By avoiding termination, the account remains active and Defendants continue to derive ad revenue from all channels associated with the account. *Id*. ¶¶ 8-11, 22-49.

In this case, the repeat infringer is TV-Novosti, an "autonomous non-profit organization" owned and controlled by the Russian Federation, which the United States Department of Justice considers a proxy of the Russian government. *Id*. ¶¶ 50-52. TV-Novosti controls at least 39 YouTube channels, including "RT Arabic," that collectively have more than 26 million subscribers and receive more than 400 million views each month. *Id*. ¶¶ 53-55.

Business Casual creates original documentary videos that it posts on a YouTube channel that it owns and controls called "Business Casual." *Id*. ¶ 14.

In early 2021, Business Casual discovered that TV-Novosti's RT Arabic YouTube channel (the "Infringing Channel") had published at least three videos that infringed on two original videos that Business Casual previously created and published on its own YouTube channel (both of which are protected by Business Casual's copyright registrations). *Id*. ¶¶ 22-44.

On January 2, 2021, Business Casual submitted its first of three DMCA takedown notifications concerning the three infringing videos appearing on the Infringing channel. *Id*. ¶¶ 27-33.  On January 19, 2021, TV-Novosti admitted that it had copied Business Casual's "copyrighted material" and that it had filed a DMCA counter notification with YouTube "by mistake." *Id*. ¶¶ 29-30.

The following month, Business Casual identified additional videos published by the Infringing Channel that infringed on Business Casual's copyrights and submitted two additional DMCA takedown requests. *Id*. ¶¶ 32-33. The third infringing video Business Casual identified was a live stream that used the *exact* same content copied from Business Casual's original work as the first infringing video that Business Casual discovered on the Infringing Channel.

TV-Novosti responded by filing DMCA counter notifications as to its second and third infringing videos to avoid termination of its YouTube account and all of its associated channels. *Id*. ¶¶ 37, 40-43. In accordance with the DMCA notice and takedown procedure, Business Casual filed a lawsuit in this District against TV-Novosti within ten business days to prevent YouTube from reinstating the infringing videos after receiving TV-Novosti's counter notification concerning its second infringing video. *Id*. ¶ 39. YouTube possesses actual knowledge of the fact that Infringer Channel's *first* infringing video and the *third* infringing concern the *exact* same 28 original segments the Infringing Channel already admitted to copying from Business Casual without permission. *Id*. ¶ 34, Ex. F.

Because of the infringing acts described above, YouTube applied three copyright strikes to the Infringing Channel within a period of fifty-two days, *i.e.*, well within the 90-day period that leads to termination under the plain language of YouTube's repeat infringer policy. *Id*. ¶¶ 58-59. This fact has been acknowledged in writing by YouTube's and Google's *own executives*. *Id.* ¶¶ 59, 69-70.

On March 31, 2021, YouTube briefly terminated the Infringing Channel following the application of three copyright strikes from Business Casual, but then ***reinstated*** it a few hours later following public demands from the Russian government that YouTube stop censoring Russian media. *Id*. ¶¶ 48, 67, Ex. P. After the Infringing Channel was reinstated, in violation of YouTube's own policy, a TV-Novosti representative published a statement suggesting that YouTube's *Moscow* office had worked with TV-Novosti to reinstate the Infringing Channel. *Id*. ¶ 64.

Business Casual corresponded with Defendants providing notice of TV-Novosti's repeated, bad faith copyright infringement and expressly described why the bad actor's repeated

and brazen and illegal actions constituted the appropriate circumstances for termination. *Id*. ¶¶ 69-73, Ex. Q, Ex. R. On April 14, 2021, YouTube wrote to Business Casual stating that it does not disable accounts like TV-Novosti's until a counter notification has been adjudicated in the rights holder's favor. *Id*. ¶ 73. Business Casual filed the above-captioned 243-page lawsuit eight days later.

## III.    ARGUMENT

### A.    Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, Business Casual need only plead factual allegations sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The adequacy of Business Casual's Complaint is governed by Federal Rule of Civil Procedure 8(a)(2), which "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Id.* at 555 (citation omitted).

In deciding a motion to dismiss, the Court accepts the allegations in Business Casual's Complaint "as true, and all reasonable inferences must be drawn in the plaintiff's favor." *Democratic Nat'l Comm. v. Russian Fed'n*, 392 F. Supp. 3d 410, 418 (S.D.N.Y. 2019) (citation omitted). Moreover, a motion to dismiss asserting the affirmative defense of immunity from copyright infringement liability under § 512 of the DMCA is premature—unless entitlement to immunity is apparent on the face of the Complaint. *Michael Grecco Prods., Inc. Alamy, Inc.*, 372 F. Supp. 3d 131, 140 (E.D.N.Y. 2019).

Fact-specific safe-harbor-entitlement decisions should not be resolved via a motion to dismiss. *BWP Media USA Inc. v. Hollywood Fan Sites, LLC*, 69 F. Supp. 3d 342, 358-59 (S.D.N.Y. 2014); *ALS Scan, Inc. v. CloudFlare, Inc.*, No. CV 16-5051-GW(AFMX), 2017 WL

6

1520444, at *8 (C.D. Cal. Feb. 16, 2017) (noting that most courts have denied requests to conclude a service provider is entitled to safe harbor protections at the motion to dismiss phase as "it is difficult to conclude as a matter of law [that a defendant] ha[s] 'reasonably implemented' a policy against repeat infringers") (quoting *Ellison v. Robertson*, 357 F.3d 1072, 1080 (9th Cir. 2004)); *see also BWP Media*, 69 F. Supp. 3d at 358-59 ("At the complaint stage, there are insufficient facts to demonstrate that the Defendants named in this action satisfy even the threshold requirements [of the DMCA].").

Accepting the factual allegations contained in Business Casual's Complaint as true, then drawing all reasonable inferences in Business Casual's favor, the record contains sufficient competent evidence to demonstrate that Business Casual's copyright infringement claims against Defendants are not fatally defective. Defendants' motion is premature—it seeks analysis of two fact-intensive affirmative defenses (safe harbor entitlement and a license defense), without the benefit of a full record. For the reasons set forth herein and in the Complaint, Defendants' Motion to Dismiss should be denied.

**B.      Defendants Are Not Entitled to a Legal Determination That They Are Insulated from Liability Under a DMCA Safe Harbor Provision**

To benefit from the safe harbor protections under the DMCA, Defendants must show they satisfy a set of threshold criteria. *BWP Media*, 69 F. Supp. 3d at 358 (quoting *Viacom Int'l, Inc. v. YouTube, Inc.*, 676 F.3d 19, 27 (2d Cir. 2012)). These threshold criteria include adopting and reasonably implementing a repeat infringer policy. 17 U.S.C. § 512(i)(1)(A). In addition, the DMCA's safe harbor provisions require that service providers *affirmatively* show "lack of knowledge of infringement, its receipt of no direct financial benefit from the infringing activity,

its compliance with DMCA takedown requests, and the designation of an agent for such requests." *BWP Media*, 69 F. Supp. 3d at 358 (citing 17 U.S.C. § 512(c)(1)(A)-(C), (2)).

It is well settled that "the DMCA's safe harbors, as with all immunities from liability[,] should be narrowly construed." *Capitol Recs. v. MP3Tunes,* 821 F. Supp. 2d at 636 (citing *United States v. Texas,* 507 U.S. 529, 534 (1993)). Business Casual's Complaint contains detailed factual allegations that YouTube:

(1) Has not reasonably implemented a repeat infringer policy;

(2) *Reinstated* a Russian-state owned YouTube channel within hours of the Russian government's demands concerning its termination — *after confirming* that the Infringing Channel received "3 YT Strikes" within 52 days;

(3) Acquired both actual knowledge — and red flag knowledge – concerning TV-Novositi's brazen and repeated infringements, including a 10-page timeline of material events which YouTube executives discussed in "an internal call" held on March 17, 2021;

(4) Directly benefited from the Infringing Channel's infringing activity;

(5) Failed to meet its obligations under the notice and takedown procedures described in the DMCA; and

(6) Willfully turned a blind eye to the "appropriate circumstances" for termination by ignoring evidence of a repeat infringer who engaged in bad faith practices including removing watermarks and engaging in other detection circumvention activities.

Defendants cannot demonstrate their entitlement to a safe harbor or license defense based on Business Casual's pleadings. Defendants are not entitled to an early judgment that they are shielded from Business Casual's direct and indirect copyright infringement claims.

C.      **Business Casual Plead Facts Alleging Defendants' Failure to Reasonably Implement a Repeat Infringer Policy**

To demonstrate entitlement to safe harbor protection and immunity from Business Casual's claims, Defendants must first establish that they both *adopted* and *reasonably implemented* a policy providing for the termination of *account access* for repeat infringers. "This statutory requirement emanates from Congress' concern that 'those who repeatedly or flagrantly abuse their access to [a service provider's services] through disrespect for the intellectual property rights of others should know that there is a realistic threat of losing that access*." Capitol Recs., LLC v. Vimeo, LLC,* 972 F. Supp. 2d 500, 512–13 (S.D.N.Y.2013) (quoting H.R. Rep. No. 105–551, pt. 2, at 61 (1998)), *rev'd in part on other grounds,* 826 F.3d 78 (2d Cir. 2016).

"This repeat infringer policy requirement does not focus on the particular infringements at issue. . . . Unlike subsection (c), subsection (i) addresses how the site is generally managed, not just how the site responds to notice of a particular infringement." *Rosen v. eBay, Inc.*, No. CV 16-9183-MWF (EX), 2018 WL 4808513, at *7 (C.D. Cal. Apr. 4, 2018) (quoting *Ventura Content, Ltd. v. Motherless, Inc.*, 885 F.3d 597, 614 (9th Cir. 2018)). Defendants have not provided any evidence of how YouTube's site is generally managed—no discovery has occurred. Defendants seek to shut this inquiry down and avoid their obligation to demonstrate entitlement to safe harbor protection from traditional infringement claims based on their support of TV-Novosti's infringing activities and failure to shut its channels down after three strikes.

Defendants must raise DMCA safe harbor protections as an affirmative defense to copyright infringement allegations. *Capitol Recs.*, 826 F.3d at 94 (stating defendant bears the burden of raising entitlement to the safe harbor and demonstrating that it is a service provider, as

9

defined in the DMCA, and has taken the steps necessary for eligibility); *see also BMG Rts. Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 881 F.3d 293, 305 (4th Cir. 2020) ( "[defendant must] point to evidence showing that it reasonably implemented a repeat infringer policy.").

Taking the Complaint and all factual inferences in Business Casual's favor, Defendants cannot demonstrate that they are entitled to a ruling that they satisfy all of the conditions for safe harbor eligibility at the motion to dismiss phase. Defendants have not proven they "adopted and reasonably implemented, and inform[ed] subscribers and account holders . . . of, a policy that provides for the termination in appropriate circumstances of subscribers and account holders of the service provider's system or network who are repeat infringers." § 512(i)(1)(A).

This affirmative defense involves a highly-specific fact inquiry, and it must be based on a complete record, after discovery has occurred and after the full set of relevant evidence is presented to the Court. *See Rosen*, 2018 WL 4808513, at *15 ("[T]he ultimate conclusion about whether Defendant did or did not reasonably implement the policy is one of fact, and is inappropriate for determination [on a motion to dismiss]."). Defendant's request for a ruling on this affirmative defense is premature.

### i.      YouTube Did Not Follow Its Own Repeat Infringer Policy

Business Casual alleged that YouTube has not "reasonably implemented" its repeat infringer policy because it effectively "fail[ed] to enforce the terms of its policy in any meaningful fashion." *Rosen*, 2018 WL 4808513, at *6  (quoting *BMG Rts. Mgmt.*, 881 F.3d at 303 (finding Cox  did not show it was entitled to protection under the DMCA safe harbor because it failed to implement its repeat infringer policy in a consistent or meaningful way)); *see also In re Aimster Copyright Litig.*, 252 F. Supp. 2d 634, 659 (N.D. Ill. 2002), *aff'd,* 334 F.3d 643 (7th Cir. 2003). Business Casual alleged that the Infringing Channel posted three infringing

videos to YouTube and received three copyright strikes "within a period of fifty-two (52) days following DMCA takedown requests submitted by Business Casual." *Id.* ¶ 58. A representative from Google, Elisabet Lykhina, confirmed that the Infringing Channel received "3 YT strikes." *Id.* ¶ 59.

Prior to Defendants' Motion to Dismiss, all relevant parties behaved as though the Infringing Channel should be terminated under YouTube's 3-strike repeat infringer policy. YouTube terminated the Infringing Channel on March 31, 2021, after it received three copyright strikes. *Id.* ¶ 48. **TV-Novosti's counsel wrote that TV-Novosti would not withdraw the counter notifications it filed because TV-Novosti's "understanding [is] that withdrawing the counter-notifications will result in YouTube terminating RT's channel."** *Id.* ¶ 43, Ex. G, at 2. After YouTube restored the Infringing Channel, TV-Novosti posted on Twitter that "YouTube has restored RT Arabic's channel on its platform. We thank our partners at YouTube Russia for a prompt reaction!" *Id.* ¶ 64, Ex. O, at 6.

Defendants have now surfaced a new, different, "Content Manager copyright strikes policy" that it asserts should be applied to TV-Novosti. YT MTD Mem. 5. It is not clear when Defendants created this policy, issued it, and decided to implement it for infringement allegations involving parties deemed Content Managers on its platform.

Moreover, if YouTube would have applied this new "Content Manager copyright strikes policy" to TV-Novosti at the time this dispute arose, YouTube would not have terminated the Infringing Channel on March 31, 2021, even for a short time. Defendants' newly revealed shadow rules demonstrates that YouTube is defending its actions in this case with an off the books infringer policy for special channels who don't have to play by the normal rules that 40 million other channels must obey. This shadow policy allows for significant infringement

without repercussions:  a Content Manager can theoretically republish 9 feature-length movies—one to each of its associated YouTube channels—and receive 9 *uncontested* copyright strikes from those movie studios (one on each channel), and still not be terminated. YouTube's shadow and published policies deserve judicial scrutiny on the merits.

Moreover, the "Content Manager copyright strikes policy" described by Defendants conflicts with the portion of YouTube's repeat infringer policy that states "any associated channels will be terminated." Compl. ¶ 45, Ex. A, at 2. Even assuming this new policy is applicable, TV-*Novosti's RT Arabic channel should still have been terminated under YouTube's 3-strike repeat infringer policy because, as Defendants concede, the Content Manager copyright strikes policy also recognizes that "[w]hen a channel receives a copyright strike, channel-level penalties are applied.*" Seiberlich Decl. Ex. D, at 3, ECF No. 30-4.

Business Casual also alleged that YouTube's repeat infringer policy mandates that a channel featuring an infringing live stream that receives a strike will be restricted from live streaming in the future and prohibited from using another channel to live stream on YouTube. Compl. ¶ 6. Although TV-Novosti's Third Infringing Video (as defined in the Complaint) was live streamed on the Infringing Channel, Defendants have not disabled live streaming capabilities for *any* of TV-Novosti's channels, including its RT Arabic channel—not even during the uncontested strike period. *Id*. ¶ 36.

Business Casual has sufficiently alleged that YouTube did not adopt or apply its own policies as written or as described in Defendants' motion papers against RT Arabic or any of TV-Novosti's affiliated channels. Defendants are therefore not entitled to a summary claim of immunity from the infringing acts described in the Complaint.

ii.     **YouTube Seeks A Repeat Infringer Judgement Before it Applies its Repeat Infringer Policy to TV-Novosti, Which is *Prima Facie* Unreasonable**

Defendants argue that YouTube's repeat infringer policy has been reasonably implemented in this circumstance, despite YouTube's refusal to terminate TV-Novosti's account or any of its channels until Business Casual proves TV-Novosti is a repeat infringer in a court of law. YT MTD Memo. 5-6. When the Fourth Circuit addressed this specific statutory interpretation issue in the *BMG* case, it held that the DMCA does not mean an "adjudicated" or tried and judged "repeat infringer." *See BMG Rts. Mgmt.*, 881 F.3d at 301. YouTube seeks a contrary interpretation of the statute and legislative history from this Court by arguing its adjudication requirement is reasonable.

The DMCA does not define the phrase "repeat infringers," and when a statute does not define a term, courts first look at the term's ordinary meaning. *Id.* When engaging in this statutory construction analysis, the Fourth Circuit concluded that the "ordinary meaning of an infringer is '[s]omeone who interferes with one of the exclusive rights of a . . . copyright' holder—in short, one who infringes a copyright." *Id.* (quoting *Infringer*, Black's Law Dictionary 902 (10th ed. 2014)). Given that background, the *BMG* court concluded that a "repeat infringer" is "one who infringes a copyright more than once." *Id.* As part of this construction analysis, the court noted that "the DMCA's use of phrases like 'alleged infringer' in other portions of the statute indicates . . . that the term 'infringer' alone must mean something different than 'alleged infringer,' otherwise, the word 'alleged' would be superfluous." *Id.* "Moreover, other provisions of the Copyright Act use the term 'infringer' (and similar terms) to refer to all who engage in

13

infringing activity, not just the narrow subset of those who have been so adjudicated by a court." *Id.*

The DMCA protects service providers that store copyrighted works from liability for removal of "material or activity *claimed to be infringing or* based on facts or circumstances from which *infringing activity is apparent*, regardless of whether the material or activity is *ultimately determined to be infringing*." *Id.* at 302 (emphasis in original) (quoting 17 U.S.C. § 501(g)(1)). "Congress knew how to expressly refer to adjudicated infringement, but did not do so in the repeat infringer provision." *Id.* (citing 17 U.S.C. § 512(b)(2)(E)(i)). The term "infringer" in the repeat infringer provision of the DMCA is not restricted to adjudicated infringers, *Id.*, and Defendant's request for a contrary interpretation of the "repeat infringers" provision of the DMCA in this case should be denied.

As the Fourth Circuit recognized in the *BMG* case, the legislative history of the DMCA also supports its interpretation of the repeat infringer provision as not restricted to adjudicated repeat infringers. The House Commerce and Senate Judiciary Committee Reports concerning the DMCA stated that "those who repeatedly or flagrantly abuse their access to the Internet through disrespect for the intellectual property rights of others should know that there is a realistic threat of losing that access." *Id.* at 302 (quoting H.R. Rep. No. 105-551, pt. 2, at 61 (1998); S. Rep. No. 105-190, at 52 (1998)). The Court recognized that the risk of losing access to an ISP's services would hardly constitute a realistic threat that would deter infringement if that sanction applied *only* to parties sued by rights holders and found liable for copyright infringement. *Id.*

Just as in *BMG*, Defendants do not cite a single case adopting their contrary view that *only adjudicated infringers* can be "repeat infringers" for the purposes of § 512. YT MTD Memo. 5-6. Defendants' contrary interpretation of the DMCA's repeat infringer provision means

any infringer willing to make misrepresentations in a counter notification can effectively avoid termination and withdrawal of their access to the service or network. Most parties will not spend the extraordinary amount of time, money, and energy needed to adjudicate their infringement claim in court. Defendants' interpretation of the DMCA would make repeat infringer status under a repeat infringer policy would be quite rare, and the deterrence value of the penalties that Congress infused in the DMCA would become illusory.

Business Casual has alleged that Defendants' repeat infringer policy is not reasonably implemented because of its new adjudication requirement. Their new requirement that Business Casual get three strikes against TV-Novosti, in court, is not found in the language of the posted repeat infringer policy. It is the position Defendants are taking—contrary to the plain language of their written policy—in this case, against this Plaintiff.

Plaintiff alleges in detail how TV-Novosti gamed YouTube's repeat infringer policy to avoid termination of its entire account and 39 channels. After Business Casual filed its first DMCA takedown request, TV-Novosti contacted Plaintiff and stated that it had filed a DMCA counter notification "by mistake." Compl. ¶¶ 29-30. When Business Casual discovered additional infringing videos on the Infringing Channel, including an additional video using the exact same infringing content as was used in the first infringing video, TV-Novosti responded to each DMCA takedown request with counter notifications. *Id*. ¶¶ 34, 37.

In accordance with the DMCA's procedures, YouTube would have reinstated TV-Novosti's infringing videos had Business Casual not filed a lawsuit against TV-Novosti within ten business days from receiving notice of TV-Novosti's counter notifications. Compl. ¶ 37. The burden of undertaking this effort, after YouTube and TV-Novosti left Plaintiff no other choice, is significant. This is why the *BMG* court's determination that the DMCA protects service

15

providers that store copyrighted works from liability for removal of "material or activity *claimed to be infringing or* based on facts or circumstances from which *infringing activity is apparent*, regardless of whether the material or activity is *ultimately determined to be infringing*" should be applied here. *BMG Rts. Mgmt.*, 881 F.3d at 302. Otherwise, the DMCA's notice and takedown procedure is ripe for abuse by parties filing counter notifications. Congress chose to require such service providers adopt and reasonably implement a repeat infringer policy that does not require rights holders to litigate before the strikes are recognized by the service provider and acted upon.

Moreover, this is not a case where the copyright owner has abused the DMCA's notice and takedown process. In fact, the opposite is true. It was TV-Novosti who filed fraudulent counter notifications to avoid application of YouTube's repeat infringer policy to their account. Compl. ¶ 43. This is not merely Business Casual's theory; it is evident from the plead facts relating to TV-Novosti's activities and statements in response to Business Casual's DMCA notifications.

As detailed in the Complaint, TV-Novosti admitted to actual copying of Business Casual's content and that it should not have filed its first counter notification, which it subsequently retracted after making that admission. *Id*. ¶¶ 29-30. Additionally, TV-Novosti went so far as to remove Business Casual's watermark and replace it with its own watermark before posting the infringing videos on YouTube. *Id.* ¶ 44. TV-Novosti undertook this affirmative act to pass Business Casual's copyrighted works off as its own, *Id*. ¶ 44, which in turn weighs against avoidance of an infringement claim (based on fair use). The removal of a watermark in such circumstances is evidence of bad faith. *Fioranelli v. CBS Broad. Inc.*, No. 15-CV-0952 (VSB), 2021 WL 3372695, at *28 (S.D.N.Y. July 28, 2021) (collecting cases holding that removal of a watermark from a visual work is competent evidence of bad faith). TV-Novosti also altered the

brightness and saturation of Business Casual's copied content to circumvent YouTube's automated Content ID and Copyright Match Tools and avoid having its infringing actions discovered. Compl. ¶ 44. And Defendants had actual knowledge of TV-Novosti's infringing videos and bad faith, as demonstrated by the emails, letters, and other detailed information Plaintiff provided to Defendants regarding TV-Novosti's egregious actions on the YouTube platform. *Id*. ¶¶ 69-73. Defendants turned a blind eye to all of this evidence and gave TV-Novosti a free pass until Business Casual gets a court ruling of infringement, which will likely take years.

By forcing Business Casual to file a lawsuit to remove an obvious repeat infringer from YouTube, Defendants have preserved a large revenue stream for themselves during the pendency of the litigation to Business Casual's detriment. Compl. ¶¶ 11, 55-56. Plaintiff has sufficiently stated, in its pleading, why Defendants have not adopted and reasonably implemented a repeat infringer policy that provides for termination in appropriate circumstances of its users that repeatedly infringe copyrights. Defendants cannot demonstrate that they are entitled to the safe harbor protections of the DMCA on this record, and at this stage of the case.

### D.   Defendants Did Not Expeditiously Remove All Infringing Videos

Plaintiff submitted a DMCA takedown request to YouTube concerning TV-Novosti's Second Infringing Video (as defined in the Complaint) on February 9, 2021. Compl. ¶ 32. YouTube did not remove the Second Infringing Video until March 4, 2021, almost a month later. *Id*. ¶ 38.  Plaintiff's pleading supports its allegation that YouTube failed to act "expeditiously to remove, or disable access to, the material" identified in Plaintiff's February 9, 2021 DMCA takedown request. It was required to do so expeditiously under § 512(c)(1)(A)(iii) to demonstrate that it is entitled to seek immunity from copyright infringement.

17

IV.    **Business Casual's Contributory Infringement and Vicarious Liability Claims
       Against Defendants are Not Facially Defective**

Under 17 U.S.C. § 106, the owner of a copyright holds the rights to "reproduce the work,
prepare derivative works, distribute the work to the public, perform the work, display the work,
and perform the work by means of digital transmission." *John Wiley & Sons, Inc. v. DRK Photo*,
882 F.3d 394, 402 (2d Cir. 2018). Third parties may be held liable for violation of any of these
enumerated rights under either the contributory infringement or vicarious liability infringement
theories. *Id.*; *see, e.g.*, *Gershwin Publ'g Corp. v. Columbia Artists Mgmt, Inc.*, 443 F.2d 1159,
1162 (2d Cir. 1971); *Peer Int'l Corp. v. Luna Recs., Inc.*, 887 F. Supp. 560, 564–65 (S.D.N.Y.
1995). "Courts in this Circuit routinely address contributory and vicarious copyright
infringement as separate claims from direct infringement." *Wu v. John Wiley & Sons, Inc.*, No.
14 CIV. 6746 AKH AJP, 2015 WL 5254885, at *13 (S.D.N.Y. Sept. 10, 2015) (citing *Viacom*,
676 F.3d at 28–29 n.5 ).

Business Casual's indirect infringement claims are not defective and should not be
dismissed at this early stage of the case before the record can be fully developed to support an
evaluation of these claims on the merits.

A.     **Business Casual Has Adequately Plead a Contributory Infringement Claim**

Although the Copyright Act does not explicitly impose liability for infringing acts
committed by a third party, courts have recognized that a defendant "infringes contributorily by
intentionally inducing or encouraging direct infringement." *Metro-Goldwyn-Maver Studios Inc.
v. Grokster, Ltd*., 545 U.S. 913, 930 (2005); *see also Sony Corp. of Am. v. Universal City
Studios, Inc.*, 464 U.S. 417, 434-35 (1984)). "[T]he concept of contributory infringement is
merely a species of the broader problem of identifying the circumstances in which it is just to

hold one individual accountable for the actions of another." *Sony Corp.*, 464 U.S. at 435; *see also Gershwin Publ'g Corp.,* 443 F.2d at 1162.

Business Casual has plead sufficient facts to support an allegation that Defendants are indirect infringers, under the contributory liability theory, because they have "authorized the infringing use." *Softel, Inc. v. Dragon Med. & Sci. Communc'ns, Inc.*, 118 F.3d 955, 971 (2d Cir. 1997). This is because, where a direct infringer like TV-Novosti exists, Defendants may be held liable for contributory infringement if "with knowledge of the infringing activity, [they] induce[], cause[], or materially contribute[] to" TV-Novosti's infringing conduct. *See Agence France Presse v. Morel*, 769 F. Supp. 2d 295, 304 (S.D.N.Y. 2011) ("[A]ctivities that lead to contributory liability are (i) personal conduct that encourages or assists the infringement; and (ii) provision of machinery or goods that facilitate the infringement." (quoting *Matthew Bender & Co., Inc. v. West Publ'g Co.,* 158 F.3d 693, 706 (2d Cir. 1998)).

If Defendants do not demonstrate they are entitled to the protection of the DMCA safe harbor provisions, they face secondary liability for copyright infringement because they "'played a significant role in direct infringement committed by others, for example by providing direct infringers with a [content platform] that enables infringement.'" *See Windstream Servs., LLC v. BMG Rts. Mgmt. (US) LLC*, No. 16CIV5015KMWRLE, 2017 WL 1386357, at *5 (S.D.N.Y. Apr. 17, 2017) (internal quotations and citations omitted); *Arista Recs. LLC v. Lime Grp. LLC,* 784 F. Supp. 2d 398, 422-23 (S.D.N.Y. 2011); *Metro-Goldwyn-Mayer,* 545 U.S. at 929-30; *Sony Corp.,* 464 U.S. at 434-35.

Defendants offer an online tool with the potential for abuse on an enormous scale. *Metro-Goldwyn-Mayer*, 545 U.S. at 930 ("The rationale for secondary liability is that a party who distributes infringement-enabling products or services may facilitate direct infringement on a

19

massive scale, making it 'impossible to enforce [copyright protection] effectively against all direct infringers.'") TV-Novosti's 39 YouTube channels collectively have more than 26 million subscribers and receive roughly 402 million views each month. Compl. ¶ 55. Business Casual has alleged sufficient facts to support a determination that Defendants are not entitled to the DMCA's safe harbor protections from liability under traditional copyright infringement theories, including contributory infringement. A party that publishes infringing content on its worldwide platform is not absolved of liability because it stops infringing once caught.

### B.    Business Casual Has Adequately Plead a Vicarious Liability Claim

Business Casual has alleged that Defendants are vicariously liable because they "profited from direct infringement while declining to exercise a right to stop or limit it." *Metro-Goldwyn-Mayer*, 545 U.S. at 930.  Defendants had the "'right and ability to supervise [that] coalesce[d] with an obvious and direct financial interest in the exploitation of copyrighted materials." *Softel*, 118 F.3d at 971 (2d Cir. 1997) (quoting *Shapiro, Bernstein & Co. v. H.L. Green Co.*, 316 F.2d 304, 307 (2d Cir. 1963)). The Second Circuit recognizes that vicarious liability can be quite common:

> . . . the cases are legion which hold the dance hall proprietor liable for the infringement of copyright resulting from the performance of a musical composition by a band or orchestra whose activities provide the proprietor with a source of customers and enhanced income. He is liable whether the bandleader is considered, as a technical matter, an employee or an independent contractor, and whether or not the proprietor has knowledge of the compositions to be played or any control over their selection.

*Shapiro*, 316 F.2d at 307 (collecting cases). In *Shapiro*, the Second Circuit held that a party receiving 10 or 12 percent of a direct infringer's revenue satisfied the "direct financial interest" element of a claim for vicarious liability. *Id*. at 308. In this case, YouTube's Partner Program enables users to monetize their YouTube channels through Google's AdSense network, and

YouTube's users and Defendants split the ad revenue on a 55/45 basis. Compl. ¶ 11. Defendants do not even argue that Business Casual failed to plead facts sufficient to show that Defendants have the right and ability to supervise and control TV-Novosti's infringing activities on YouTube.

## V.      Business Casual Has Adequately Plead Liability for Direct Infringement

A copyright owner who claims infringement must demonstrate "(1) ownership of a valid copyright and (2) infringement of the copyright by the defendant." *Spinelli v. Nat'l Football League*, 903 F.3d 185, 197 (2d Cir. 2018). "To withstand a motion to dismiss, 'a complaint based on copyright infringement must allege: (1) which original works are the subject of the copyright claim; (2) that the plaintiff owns the copyrights in those works; (3) that the copyrights have been registered in accordance with the statute; and (4) by what acts during what time the defendant infringed the copyright.'" *Patterson v. Diggs*, No. 18-CV-03142 (NSR), 2019 WL 3996493, at *3 (S.D.N.Y. Aug. 23, 2019) (quoting *BWP Media*, 69 F. Supp. 3d at 353 (citation omitted)). The Second Circuit "allowed that a case may exist where 'one's contribution to the creation of an infringing copy [is] so great that it warrants holding that party directly liable for the infringement, even though another party has actually made the copy.'" *Capitol Recs., LLC v. ReDigi Inc.*, 934 F. Supp. 2d 640, 657 (S.D.N.Y. 2013), *aff'd,* 910 F.3d 649 (2d Cir. 2018) (quoting *Cartoon Network LP, LLLP v. CSC Holdings, Inc.*, 536 F.3d 121, 133 (2d Cir. 2008)); *see also Arista Recs. LLC v. Usenet.com, Inc.*, 633 F. Supp. 2d 124, 148 (S.D.N.Y. 2009) (holding on summary judgment that defendants actively engaged in the process by which defendants' users uploaded and exchanged content in a manner that satisfied the volitional conduct requirement for direct infringement).

In this case, Business Casual has alleged that TV-Novosti, which the United States Department of Justice classified as "'an information weapon' to be used against the United States," Compl. ¶ 52, worked in tandem with YouTube to reinstate the Infringing Channel after YouTube terminated it. Compl. ¶ 64. In *Cartoon Network* and *Arista Records*, the issue of direct infringement was decided at summary judgment and not on a motion to dismiss. 536 F.3d at 133; 633 F. Supp. 2d at 129. Business Casual should likewise be entitled to discovery so that it may investigate why YouTube reinstated the Infringing Channel and the facts and circumstances relating to the volitional acts Defendants have taken with respect to the infringing content relevant to this case.

## VI.    Defendants Have Not Proven They Are Immunized by YouTube's Terms of Service

"The existence of a license is an affirmative defense, placing upon the party claiming a license 'the burden of coming forward with evidence' of one." *Spinelli*, 903 F.3d at 197 (quoting *Bourne v. Walt Disney Co.*, 68 F.3d 621, 631 (2d Cir. 1995)). Because the determination of whether or not Defendants have a license is an affirmative defense, Defendants have the burden of persuasion on this issue and  "it is a permissible basis for dismissal only 'where the facts necessary to establish the defense are evident on the face of the complaint[.]'" *Spinelli*, 903 F.3d at 199 (quoting *Kelly-Brown v. Winfrey*, 717 F.3d 295, 308 (2d Cir. 2013)) (citation omitted). In contrast, "'[w]here only the scope of the license is at issue,' it is the copyright owner's burden to show that the defendant's use of a work was unauthorized." *Spinelli*, 903 F.3d at 197 (citation omitted).

The terms of service submitted in connection with YouTube's motion to dismiss state:

> By providing Content to the Service, you grant to YouTube a worldwide, non-exclusive, royalty-free, sublicensable and transferable license to use that Content (including to reproduce, distribute, prepare derivative works, display and perform it) in

22

> connection with the Service and YouTube's (and its successors'
> and Affiliates') business, including for the purposes of promoting
> and redistributing part or all of the Service.

Seiberlich Decl. Ex. C, at 10. Even assuming, *arguendo*, that YouTube obtained a license to do

what it desired with Business Casual's copyright protected video content Business Casual posted

on its platform, Business Casual alleges that a third party, with no license or authorization to use

Business Casual's videos, created infringing videos incorporating segments of Business Casual's

works and uploaded those infringing videos to YouTube. TV-Novosti had no rights in Business

Casual's works and therefore could not grant YouTube a license to use the infringing video

content in any manner. Therefore, as alleged in Plaintiff's Complaint, TV-Novosti did not create

the infringing derivative video segments, so they fall outside of the scope of the language recited

above.

Defendants are still liable for copyright infringement because TV-Novosti's infringing

videos identified in the Complaint are outside of the scope of this asserted Terms of Service

license. The language upon which Defendants rely does not grant any type of license to an

unrelated third party, like TV-Novosti, to do whatever it pleases with Business Casual's content.

Therefore, Defendants' activities that aid and abet TV-Novosti's infringement provide a basis for

finding them liable for copyright infringement, despite the Terms of Service language above.

## VI.    CONCLUSION

Defendants have not proven they are protected from copyright infringement claims for

their role in TV-Novosti's infringing activities under the DMCA safe harbor provisions. For the

reasons stated herein, and based on the Complaint, associated exhibits, and public information,

Defendants' Motion to Dismiss should be denied in its entirety. To the extent that any portion of

Defendants' Motion to Dismiss is granted, Business Casual respectfully asks that it be permitted to amend its Complaint to cure any pleading deficiencies.

Dated:      September 22, 2021                        Respectfully submitted,
            New York, New York                       DUFF LAW PLLC


                                          By:    /Anderson J. Duff/
                                                 Anderson J. Duff (AD2029)
                                                 43-10 Crescent St. Ste. 1217
                                                 New York, New York 11101
                                                 (t) 646.450.3607
                                                 (f) 917.920.4217
                                                 (e) ajd@hoganduff.com

## CERTIFICATE OF COMPLIANCE

Pursuant to Your Honor's Individual Practices, Plaintiff Business Casual Holdings LLC, hereby certifies, through counsel, that it has complied with the formatting rules for Memoranda of Law in Civil Cases described in Paragraph II.D of Your Honor's Individual Practices and that the foregoing Memorandum contains six thousand eight hundred ninety-three (6,893) words, excluding certifications, the cover page, the table of contents, and table of authorities.

Dated: September 22, 2021                    Respectfully submitted,

By: _____
                                                       Anderson J. Duff (AD2029)
                                                       DUFF LAW, PLLC
                                                       43-10 Crescent St. Ste. 1217
                                                       New York, New York 11101
                                                       (t) 646.450.3607
                                                       (f) 917.920.4217
                                                       (e) ajd@hoganduff.com

25