```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------
BUSINESS CASUAL HOLDINGS, LLC,
                                              21-cv-3610 (JGK)
                        Plaintiff,
                                              MEMORANDUM OPINION
        - against -                           AND ORDER

YOUTUBE, LLC, ET AL.,

                        Defendants.
-----------------------------------------
```

**JOHN G. KOELTL, District Judge:**

The plaintiff, Business Casual Holdings, LLC ("Business Causal"), brought this copyright infringement action against YouTube, LLC, Google LLC ("Google"), and Alphabet, Inc. ("Alphabet") (collectively, "YouTube"). YouTube now moves to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, YouTube's motion to dismiss is **granted**.

### I.

Unless otherwise noted, the following allegations are taken from the complaint and accepted as true for the purposes of resolving the motion to dismiss. YouTube operates a user-generated content hosting platform on which users may upload, view, and share video content.[1] YouTube, LLC is a wholly

---

[1] Counsel for the defendants provided the foregoing description of YouTube at oral argument on the present motion. The Court takes judicial notice of the nature of YouTube's services, which is generally known and not subject to reasonable dispute. See Fed. R. Evid. 201; Viacom Int'l v. YouTube, Inc., 676

owned subsidiary of Google, which in turn is owned by Alphabet. Compl. ¶¶ 14-17. Business Casual creates documentary content that it posts on its YouTube channel. Id. ¶ 14.

On June 8, 2018, Business Casual published an original documentary video on YouTube entitled How Rockefeller Built His Trillion Dollar Oil Empire (the "Rockefeller Video"). Id. ¶ 22. On June 25, 2020, Business Casual published an original documentary video on YouTube entitled J.P. Morgan Documentary: How One Man Financed America (the "J.P. Morgan Video"). Id. ¶ 23. Business Casual obtained federal copyright registrations for both videos on March 8, 2021. Id. ¶¶ 24-25.

YouTube's terms of service provide in relevant part that by uploading video content to the platform, users grant "to YouTube a worldwide, non-exclusive, royalty-free, sublicensable and transferable license to use that [c]ontent (including to reproduce, distribute, prepare derivative works, display and perform it)" (the "License"). ECF No. 30-3 at 11; see also id. at 6 ("Your use of the [YouTube service] is subject to these terms . . . .").[2] Additionally, YouTube has rules and policies

---

F.3d 19, 28 (2d Cir. 2012) ("The basic function of the YouTube website permits users to 'upload' and view videos clips free of charge.").

[2] Unless otherwise noted, this Memorandum Opinion and Order omits all alterations, omissions, emphasis, quotation marks, and citations in quoted text.

The Court may consider the terms of service, which include the License, on this motion to dismiss even though the terms of service were not reproduced in or attached to the complaint. Business Casual has not raised any doubts as to the authenticity of the terms of service and does not otherwise argue it

2

related to the posting and maintenance of copyrighted content on its platform. See generally ECF No. 1-1. Under one such policy, YouTube will remove a video if a copyright owner lodges a complaint with YouTube against that video pursuant to the Digital Millennium Copyright Act ("DMCA") alleging that the video infringes the copyright owner's copyright. Compl. ¶ 45. If a valid DMCA complaint is filed and a video is taken down from the platform, YouTube will give the user against whom the complaint was lodged a so-called "copyright strike." Id. If a user gets three copyright strikes within a 90-day period, "their account, along with any associated channels, will be terminated." Id. However, if the user participates in YouTube's "Partner Program" and gets three copyright strikes in a 90-day period, YouTube affords the user an additional seven-day courtesy period during which their channel will remain on the platform. Id. ¶ 46. If, during that time, the user submits a "counter notification" to YouTube challenging the DMCA copyright

---

would be inappropriate to consider the terms of service at this stage of the litigation. Business Casual also does not dispute that the terms of service are publicly available on the internet and consequently are subject to judicial notice. See Force v. Facebook, Inc., 934 F.3d 53, 59 n.5 (2d Cir. 2019) (appeal from an order granting a motion to dismiss; explaining that Facebook's "publicly available terms [of service]" are "subject to judicial notice" (citing Fed. R. Evid. 201(b)(2))). Moreover, the terms of service may be considered because they are integral to and expressly referenced in the complaint. See, e.g., Compl. ¶ 6 & Ex. A; Shandong Shinho Food Indus. Co., Ltd. v. May Flower Int'l, Inc., 521 F. Supp. 3d 222, 233 n.2 (E.D.N.Y. 2021) (case alleging trademark infringement; considering a license to the trademark on a motion to dismiss because the license was "integral" to the complaint).

3

complaint, the user's channel will not be disabled until the complaint and counter notification are resolved. Id.

Business Casual contends that YouTube failed to apply these policies in a reasonable manner to non-party TV-Novosti, which operates thirty-nine YouTube channels. Id. ¶¶ 53-57, 70. One of the channels that TV-Novosti owns and operates is "RT Arabic." Id. ¶ 53. On January 2, 2021, Business Casual submitted a DMCA takedown request to YouTube concerning a video posted on the RT Arabic channel that Business Casual alleged copied copyrighted content from the J.P. Morgan Video (the "First RT Video"). Id. ¶ 27. YouTube removed the First RT Video from its platform on January 11, 2021, and applied a copyright strike to the RT Arabic channel. Id. ¶ 28.

On February 9, 2021, Business Casual submitted a DMCA takedown request to YouTube concerning a second video posted on the RT Arabic channel that Business Casual alleged copied copyrighted content from the Rockefeller Video (the "Second RT Video"). Id. ¶ 32. On February 15, 2021, Business Casual submitted a DMCA takedown request concerning a third video posted on the RT Arabic channel that Business Causal alleged copied copyrighted content from the J.P. Morgan Video (the "Third RT Video"). Id. ¶ 33. YouTube removed the Third RT Video on February 18, 2021, and applied a second copyright strike to the RT Arabic channel. Id. ¶ 35. On February 28, 2021, YouTube

4

notified Business Casual that TV-Novosti had filed a counter notification with respect to the Third RT Video and that YouTube would reinstate that video if Business Causal did not seek a court order regarding TV-Novosti's alleged infringement within ten days.[3] Id. ¶ 37. On March 4, 2021, YouTube removed the Second RT Video and applied a third copyright strike to the RT Arabic channel. Id. ¶ 38. On March 12, 2021, YouTube notified Business Casual that TV-Novosti had filed a counter notification with respect to the Second RT Video. Id. ¶ 40. In sum, YouTube removed the First RT Video nine days after it received Business Casual's complaint; the Second RT Video twenty-three days after it received Business Casual's complaint; and the Third RT Video three days after it received Business Casual's complaint.

On March 31, 2021, YouTube briefly terminated the RT Arabic channel, but reinstated the channel shortly thereafter. Id. ¶ 48. TV-Novosti published a statement regarding this episode in which it said that YouTube had confirmed to TV-Novosti that the termination was "unintentional." Id. ¶ 68. On the date that this action was filed, the First, Second, and Third RT Videos were not available on YouTube, but RT Arabic and TV-Novosti's other YouTube channels remained on the platform. Id. ¶¶ 47-49. Between

---

[3] Business Casual filed an action against TV-Novosti in this district on March 9, 2021, alleging that TV-Novosti and the RT videos infringed Business Casual's copyrights. See Business Casual Holdings, LLC v. TV-Novosti, No. 21-cv-2007 (S.D.N.Y. filed Mar. 9, 2021). That action is currently pending before this Court.

5

March and April 2021, Business Casual exchanged correspondence with several "senior level" Google executives and YouTube representatives regarding Business Casual's allegations of copyright infringement against TV-Novosti. Id. ¶¶ 59, 69-73. At the argument for the current motion, YouTube advised that TV-Novosti has been suspended from YouTube.

Business Casual filed this action against YouTube on April 22, 2021, alleging that YouTube (1) directly infringed Business Casual's copyrights (Counts 1-3); (2) contributed to TV-Novosti's copyright infringement (Count 4); and (3) is vicariously liable for TV-Novosti's copyright infringement (Count 5). YouTube moved to dismiss all of Business Casual's claims.

## II.

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the allegations in the complaint are accepted as true, and all reasonable inferences must be drawn in the plaintiff's favor. See McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985). The Court should not dismiss the complaint if the plaintiff has stated "enough facts to state a claim to relief

that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

### III.

#### A.

Business Casual contends that YouTube directly infringed the copyrights associated with the J.P. Morgan and Rockefeller Videos because TV-Novosti posted infringing content on the platform and YouTube failed to terminate TV-Novosti's channels.

To state a claim for direct copyright infringement, a plaintiff must plead that the defendant engaged in some "volitional conduct" that caused the copyright infringement. See Lopez v. Bonanza.com, Inc., No. 17-cv-8493, 2019 WL 5199431, at *22 (S.D.N.Y. Sept. 30, 2019). In the context of online platforms that host content uploaded or transmitted by third-party users, a platform cannot be liable for direct copyright infringement based on the allegedly infringing activities of its users unless the platform had some "deliberate role" in the alleged infringement, such that the platform morphed from a "passive provider of a space in which infringing activities happened to occur to an active participant in the process of

7

copyright infringement." See Smith v. BarnesandNoble.com, LLC, 143 F. Supp. 3d 115, 122-23 (S.D.N.Y. 2015) (citing Cartoon Network LP, LLLP v. CSC Holdings, Inc., 536 F.3d 121, 133 (2d Cir. 2008)); see also VHT, Inc. v. Zillow Grp., Inc., 918 F.3d 723, 732 (9th Cir. 2019) ("Direct copyright liability for website owners arises when they are actively involved in the infringement . . .. To demonstrate volitional conduct, [a plaintiff] must provide some evidence showing [that] the alleged infringer exercised control (other than by general operation of its website); selected any material for upload, download, transmission, or storage; or instigated any copying, storage, or distribution" of copyrighted content) (emphasis in original); Parker v. Google, Inc., 242 F. App'x 833, 836-37 (3d Cir. 2007); CoStar Grp., Inc. v. LoopNet, Inc., 373 F.3d 544, 550-51 (4th Cir. 2004); Wolk v. Kodak Imaging Network, Inc., 840 F. Supp. 2d 724, 742-43 (S.D.N.Y. 2012) (citing Cartoon Network, 536 F.3d at 123-25, 130-31), aff'd sub nom. Wolk v. Photobucket.com, Inc., 569 F. App'x 51 (2d Cir. 2014).

Additionally, "it is a hallmark principle of copyright law that licensors may not sue their licensees for copyright infringement." Jasper v. Sony Music Entm't, Inc., 378 F. Supp. 2d 334, 339 (S.D.N.Y. 2005) (citing U.S. Naval Inst. v. Charter Commc'ns, Inc., 936 F.2d 692, 695 (2d Cir. 1991)). "A defendant may raise a complete defense to a copyright infringement claim

8

by presenting the court with the license or sublicense on a motion to dismiss, and dismissal of a claim for copyright infringement is proper where a contract underlying the suit clearly and unambiguously demonstrates the existence of the defendant's license to exploit the plaintiff's copyrights and where plaintiff has not shown any limitation on that license." Spinelli v. Nat'l Football League, 96 F. Supp. 3d 81, 121 (S.D.N.Y. 2015); see also Ariel (UK) Ltd. v. Reuters Grp. PLC, No. 05-cv-9646, 2006 WL 3161467, at *5, 10 (S.D.N.Y. Oct. 31, 2006), aff'd, 277 F. App'x 43 (2d Cir. 2008).

Business Casual has failed to plead adequately that YouTube engaged in volitional conduct relating to TV-Novosti's alleged infringement. Business Casual alleged that after it lodged complaints against the First, Second, and Third RT Videos, YouTube promptly took those videos off its platform and has kept them off the platform until at least the time that Business Casual filed its complaint. Compl. ¶¶ 31-49. Furthermore, Business Casual alleged that although YouTube has automated processes to identify and flag videos containing copyrighted content, TV-Novosti intentionally circumvented these processes by applying certain editing techniques to the content that TV-Novosti allegedly copied. Id. ¶ 44. These allegations show that YouTube actively and diligently policed allegedly infringing activity on its platform and accordingly cannot support a

9

plausible claim that YouTube volitionally caused any infringement.[4]

Business Casual contends that the time that elapsed between the date that it lodged its DMCA complaint regarding the Second RT Video and the date that YouTube ultimately took the Second RT Video down—twenty-three days—was excessive and therefore demonstrates YouTube's volitional conduct. But Business Casual has not pointed to any authority to support the proposition that YouTube was under a legal obligation to conduct its investigation into Business Casual's complaint on a more compressed timeline. Cf. VHT, 918 F.3d at 733-34 ("[Copyright owner] also asserts that [an online platform] failed to remove [copyrighted content] once it received notice that infringing content was on the [platform], a conscious choice that amounts to volitional conduct on [the platform's] part. This claim is unavailing because, once [the copyright owner] put [the platform] on notice of claimed infringement, [the platform] took affirmative action to address the claims."). In any event,

---

[4] For these reasons, Business Casual's arguments invoking cases such as Capitol Records, LLC v. ReDigi Inc., 934 F. Supp. 2d 640 (S.D.N.Y. 2013), are unpersuasive. See id. at 657 (explaining that "a case may exist where one's contribution to the creation of an infringing copy is so great that it warrants holding that party directly liable for the infringement, even though another party has actually made the copy."). This line of cases is inapposite where, as here, Business Casual's own allegations clearly establish that YouTube did not participate in the creation of the infringing videos and where the creator of the videos attempted to mask the allegedly infringing nature of portions of the videos.

irrespective of how long it took YouTube to remove the Second RT Video, Business Causal has failed to claim plausibly that any purported delay by YouTube constituted active, volitional conduct that caused TV-Novosti's alleged infringement.

Moreover, any argument that YouTube's volitional act of infringement was its failure to terminate TV-Novosti's YouTube channels fails. There are no allegations in the complaint that any videos currently posted on TV-Novosti's YouTube channels infringe any of Business Casual's copyrights. Furthermore, YouTube's decision not to terminate TV-Novosti's channels postdates TV-Novosti's alleged infringement and YouTube's deletion of the three RT videos. Therefore, YouTube's failure to terminate TV-Novosti's channels could not have caused or contributed to TV-Novosti's decision to upload the allegedly infringing content in the first instance and cannot constitute volitional conduct that caused the alleged infringement.

Additionally, irrespective of whether Business Casual can plead adequately that YouTube engaged in volitional conduct that caused copyright infringement, Business Casual's claims of direct infringement fail in view of the License. Business Casual does not dispute that it assented to YouTube's terms of service, including the License, when it joined YouTube and uploaded its videos to the platform. Business Casual also does not argue that the License is unenforceable or otherwise not binding on the

11

parties. Instead, Business Casual contends that the License does not cover the conduct at issue here because the License does not grant any rights "to an unrelated third party, like TV-Novosti, to do whatever it pleases with Business Casual's content." See Opp'n at 23.

This argument is without merit. The License is broad and explicitly grants to YouTube the right to "reproduce, distribute, prepare derivative works, display and perform" Business Casual's YouTube videos. See ECF No. 30-3 at 11. Under the plain language of the License, YouTube cannot be liable for directly infringing any copyrights associated with any content that Business Casual has uploaded to its channel. Although the argument that the License does not absolve TV-Novosti of liability for alleged infringement may support a claim of direct copyright infringement against TV-Novosti, it is unpersuasive here because YouTube has a clear and broad License to Business Casual's content.

Finally, Business Casual appears to argue that it stated a claim for direct copyright infringement because YouTube has failed to demonstrate its entitlement to a "safe harbor" under the DMCA. Specifically, Business Casual alleges that YouTube has lost its ability to rely on a safe harbor under the DMCA because YouTube failed to implement and apply a reasonable "repeat infringer" policy with respect to TV-Novosti. See 17 U.S.C.

§ 512(i). But this argument misconstrues the safe harbor provisions of the DMCA and how they interact with the other federal copyright laws. The DMCA safe harbors provide potential defenses against copyright infringement claims where, but for the safe harbors, the plaintiff has a meritorious cause of action against the defendant for copyright infringement. But alleged failures to satisfy the conditions of a DMCA safe harbor provision cannot constitute a cause of action without a viable underlying claim for copyright infringement. See, e.g., 17 U.S.C. § 512(*l*) (the failure of a service provider to qualify for a DMCA safe harbor "shall not bear adversely upon the consideration of a defense by the service provider that the service provider's conduct is not infringing"); Arista Records LLC v. Usenet.com, Inc., No. 07-cv-8822, 2008 WL 4974823, at *4 (S.D.N.Y. Nov. 24, 2008) (explaining that the "DMCA does not provide an affirmative cause of action" and the law's safe harbors "apply if the provider is found to be already liable under existing principles of law" (quoting Ellison v. Robertson, 357 F.3d 1072, 1077-78 (9th Cir. 2004))); Veoh Networks, Inc. v. UMG Recordings, Inc., 522 F. Supp. 2d 1265, 1271-72 (S.D. Cal. 2007) (explaining that the DMCA safe harbors "presuppose[] that a specific allegation of infringement" has been asserted). Accordingly, whether YouTube is prevented from taking advantage of a DMCA safe harbor because it has failed to comply with the

13

DMCA's repeat infringer provision is immaterial here because Business Causal has not pleaded a plausible claim of direct copyright infringement.

Accordingly, YouTube's motion to dismiss Business Causal's claims of direct infringement (Counts 1-3) is **granted**.

### B.

YouTube also moves to dismiss Business Casual's claims for contributory and vicarious copyright infringement. To plead a claim of contributory copyright infringement, the plaintiff must allege that the defendant had actual or constructive knowledge of, and participated in, a direct infringer's infringing conduct. Marvullo v. Gruner & Jahr, 105 F. Supp. 2d 225, 229-30 (S.D.N.Y. 2000); see also Lefkowitz v. John Wiley & Sons, Inc., No. 13-cv-6414, 2014 WL 2619815, at *10 (S.D.N.Y. June 2, 2014). "The participation sufficient to establish a claim of contributory copyright infringement may not consist of merely providing the means to accomplish an infringing activity." Marvullo, 105 F. Supp. 2d at 230. Instead, the plaintiff must allege that the defendant "substantially" participated in the infringing act and "acted in concert with the direct infringer." Id. "A mere allegation that the defendant provided the third party with the opportunity to engage in wrongful conduct" is insufficient to survive a motion to dismiss. Quiroga v. Fall

River Music, Inc., No. 93-cv-3914, 1998 WL 851574, at *37 (S.D.N.Y. Dec. 7, 1998).

Business Casual's allegations are insufficient to state a claim for contributory copyright infringement. With respect to knowledge, there is no allegation that YouTube knew of TV-Novosti's alleged infringement before Business Casual lodged its DMCA complaints. To the contrary, Business Causal alleged that YouTube has systems in place to detect automatically and to police copyrighted content and that TV-Novosti intentionally attempted to circumvent these safeguards by doctoring the allegedly copied content. The complaint further alleges that upon obtaining knowledge of the RT videos and Business Casual's allegations, YouTube promptly and permanently took each video down from the platform. Because YouTube actively stopped TV-Novosti's alleged infringement by taking the allegedly infringing videos down, Business Casual has not alleged plausibly that YouTube "acted in concert" with TV-Novosti or participated in or contributed to the alleged infringement in any way. See Marvullo, 105 F. Supp. 2d at 230.

Moreover, Business Casual's claim for vicarious copyright infringement is similarly without merit. "A defendant is liable for vicarious copyright infringement if it profits from direct infringement while declining to exercise a right to stop or limit it." Lopez, 2019 WL 5199431, at *23. Business Casual's

15

allegations demonstrate that YouTube did not decline to exercise its right to stop Business Casual's alleged infringement. To the contrary, YouTube promptly stopped the alleged infringement shortly after it learned of Business Causal's allegations by taking the RT videos down. And any argument that YouTube is vicariously liable for TV-Novosti's alleged infringement because YouTube failed to terminate TV-Novosti's channels fails. Because there is no allegation that any content currently hosted on any of those channels infringes Business Casual's copyright, YouTube's failure to take the channels down cannot constitute a failure to stop alleged infringement.

Accordingly, YouTube's motion to dismiss Business Causal's claims of direct infringement (Counts 4-5) is **granted**.

### C.

In its brief in opposition to this motion to dismiss, Business Casual requested leave to amend its complaint to the extent that any portion of the motion was granted. "It is the usual practice upon granting a motion to dismiss to allow leave to replead." Cruz v. TD Bank, N.A., 742 F.3d 520, 523 (2d Cir. 2013). While it is doubtful that Business Casual can file an amended complaint that is not futile, it should be given the opportunity to do so.

allegations demonstrate that YouTube did not decline to exercise its right to stop Business Casual's alleged infringement. To the contrary, YouTube promptly stopped the alleged infringement shortly after it learned of Business Causal's allegations by taking the RT videos down. And any argument that YouTube is vicariously liable for TV-Novosti's alleged infringement because YouTube failed to terminate TV-Novosti's channels fails. Because there is no allegation that any content currently hosted on any of those channels infringes Business Casual's copyright, YouTube's failure to take the channels down cannot constitute a failure to stop alleged infringement.

Accordingly, YouTube's motion to dismiss Business Causal's claims of direct infringement (Counts 4-5) is **granted**.

### C.

In its brief in opposition to this motion to dismiss, Business Casual requested leave to amend its complaint to the extent that any portion of the motion was granted. "It is the usual practice upon granting a motion to dismiss to allow leave to replead." Cruz v. TD Bank, N.A., 742 F.3d 520, 523 (2d Cir. 2013). While it is doubtful that Business Casual can file an amended complaint that is not futile, it should be given the opportunity to do so.

## Conclusion

The Court has considered all of the parties' remaining arguments. To the extent not specifically addressed above, they are either moot or without merit. For the foregoing reasons, YouTube's motion to dismiss is **granted** and Business Casual's claims are **dismissed without prejudice**. Business Casual may file a motion to amend the complaint together with a copy of the proposed amended complaint within 21 days of the date of this Opinion. YouTube may respond to the motion in accordance with the local rules. See Local Civil Rule 6.1. If Business Casual fails to file a motion to amend the complaint, the current dismissal will be with prejudice.

The Clerk is directed to close all pending motions.

**SO ORDERED.**

Dated:   New York, New York
         March 21, 2022

_____
John G. Koeltl
United States District Judge