# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BUSINESS CASUAL HOLDINGS, LLC, *a Delaware limited liability company*,<br><br>*Plaintiff*,<br><br>v.<br><br>YOUTUBE, LLC, *a Delaware limited liability company*; GOOGLE LLC, a *Delaware limited liability company*; *and* ALPHABET INC., *a Delaware corporation*,<br><br>*Defendants*. | Docket No.:<br>21-cv-3610 |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT

DHILLON LAW GROUP, INC.
A California Professional Corporation
Ronald D. Coleman
50 Park Place, Suite 1105
Newark, NJ 07102
973-298-1723
rcoleman@dhillonlaw.com
*Attorneys for Plaintiff*
*Business Casual Holdings, LLC*

## CONTENTS

TABLE OF AUTHORITIES ................................................................................................... iii

INTRODUCTION AND STATEMENT OF FACTS ................................................................. 1

(a) It is incorrect that "RT has been 'suspended' from YouTube." ................................................ 3

(b) It is incorrect that "YouTube's termination of RT Arabic's channel was 'unintentional.'" ..... 4

(c) It is incorrect that "YouTube did not engage in 'volitional conduct' because Business Casual has alleged that YouTube has automated systems to detect copyright infringement which shows that YouTube 'actively and diligently polices its platform for copyright infringement.'" ............. 5

ARGUMENT ................................................................................................................................. 8

PLAINTIFF SHOULD BE PERMITTED TO AMEND THE COMPLAINT .............................. 8

1.     Leave to Amend the Pleadings Is Freely Granted .......................................................... 8

2.     The Claim Added to the Complaint Is Not Futile. ......................................................... 9

3.     There Are No Other Grounds to Deny Leave to Amend. ............................................. 9

CONCLUSION ............................................................................................................................ 10

## TABLE OF AUTHORITIES

**Cases**

*Dougherty v. North Hempstead Zoning Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002) .. 9

*Foman v. Davis,* 371 U.S. 178, 182 (1962) ................................................................................. 8

*Newark Branch, NAACP v. Harrison*, 907 F.2d 1408, 1417 (3rd Cir. 1990) ................................ 8

**Rules**

Fed. R. Civ. P. 12(b)(6) ................................................................................................................. 9

Fed. R. Civ. P. 15(a) ..................................................................................................................... 8

**INTRODUCTION AND STATEMENT OF FACTS**

Defendants here can be expected to resist amendment on the ground of futility, based on the Court's dismissal of plaintiff's claims of direct infringement, as well as its remarks concerning amendment, in its Memorandum and Opinion of March 21, 2022 (Doc. 41) (the "MAO"). In particular, the Court dismissed Plaintiff's claims 1-3 in reliance on a series of putative "facts" set forth in MAO, and central to its rationale. As set out below, the proposed Amended Complaint makes clear—on a plausible, bona fide and evidentially supported basis—that many of those factual assertions are unsupportable inferences contrary to the pleadings, or even plainly wrong based on the documentary record. The Court will, on consideration of the corrected facts, have no difficulty concluding that, on the standard for evaluation of pleadings under Fed. R. Civ. P. 12(b)(6), the proposed Amended Complaint is not futile.

As the Amended Complaint now makes crystal clear, the following factual findings of fact set forth in the MAO, besides contradicting the well-pleaded allegations of the original Complaint, are demonstrably incorrect:

- RT has been "suspended" from YouTube.  **This is incorrect.**

- YouTube's termination of RT Arabic's channel was "unintentional." **This is incorrect.**

- YouTube did not engage in "volitional conduct" because Business Casual has alleged that YouTube has automated systems to detect copyright infringement which shows that YouTube "actively and diligently polices its platform for copyright infringement." **This is incorrect.**

- Business Casual cannot claim plausibly that any purported delay by YouTube constituted active, volitional conduct that caused RT's alleged infringement. **This is incorrect.**

• YouTube content creators, including Business Casual, have granted YouTube a "sublicense" their videos to copyright pirates, without these content creators' permission, and to keep all of the profit for itself and the pirate. **This is incorrect.**

• YouTube has not engaged in volitional conduct that would constitute a "deliberate role" because it acted merely as a "content hosting platform." **This is incorrect.**

• Business Casual has not alleged, and cannot allege, that any videos currently posted to RT's channels infringe any of its copyrights. **This is incorrect.**

• Business Casual has not alleged, and cannot allege, that YouTube's Terms of Service are "unenforceable." **This is incorrect.**

• YouTube did not intentionally delay the application of RT's third copyright strike. **This is incorrect.**

• Business Casual made no allegation, and cannot allege, that YouTube knew of RT's alleged infringement before Business Casual lodged its DMCA complaints. **This is incorrect.**

• YouTube's "removal" of RT's infringing videos, but not the termination of the repeat infringer's account, is "sufficient" recourse under the DMCA. **This is incorrect.**

• YouTube's refusal to exercise its power to stop or limit RT's infringements of Business Casual's works after being placed on actual notice of these infringements was reasonable and met the standards of the DMCA. **This is incorrect.**

• Business Casual itself alleges that YouTube "promptly" took down each of RT's allegedly infringing videos. **This is incorrect.**

As will be shown below, while the Court's understanding of each above "fact" was arguably at odds with the plausible, detailed and documented factual allegations of the Complaint,

2

consideration of the proposed Amended Complaint—and the full extent of documentation and detail in support of its allegations—will demonstrate that it is not futile and should be permitted.

Plaintiff addresses the factual, or mixed fact/law premised of the MOA, below:

### (a) It is incorrect that "RT has been 'suspended' from YouTube."

This Court's conclusion that Business Casual's claims against YouTube have been remedied because RT's channels have been "suspended" is erroneous for two reasons.

First, RT's channels are **not**, and have **never been**, "suspended," much less terminated. The Amended Complaint alleges, and Plaintiff will prove, that only the general public's access to all of RT's videos has been temporarily blocked – and not because of this lawsuit, but for violating YouTube's Community Guidelines which prohibits the downplaying of war crimes. The Amended Complaint alleges, and Plaintiff will prove, that unlike the owner of a "suspended" or "terminated" channel, the management of RT can still login to its channels right now and access all of its videos. While inaccessible to the public—for now—RT's videos are still hosted on YouTube's servers.

As alleged in the Amended Complaint, a temporary "blocking" of RT's videos is not the same as the termination of their accounts, which is the remedy required by the DMCA—not "strongly-worded warnings" or "worldwide video blockings"—for repeat infringers. And there is only one plausible inference for why YouTube has stopped short of terminating RT's channels: because YouTube intends to reinstate RT on its platform, presumably following the end of the Russian war in Ukraine.

Secondly, even though RT's videos are temporarily unavailable, the relief sought by Plaintiff is not solely prospective.  Plaintiff seeks, and it entitled to, damages under the Copyright Act, at the very least for the 346-day period during which YouTube **did not even block** RT's channels between March 31, 2021 and March 11, 2022. As the Amended Complaint makes clear,

3

not only did YouTube not block RT's channels despite RT's established status as a willful repeat infringer: **YouTube reinstated RT** in willful violation of its repeat infringer policy through the day that all of RT's videos were blocked globally, following Russian's invasion of Ukraine, in compliance, as alleged in the Amended Complaint, with a written order from a senior Kremlin official ordering YouTube to "stop censoring Russian media."

As the Amended Complaint makes explicit, the record is replete with evidence that, when proved at trial, would lead to the highly plausible inference—indeed, no other inference is plausible—that YouTube turned a blind eye to RT's **admittedly** fraudulent counter-notifications. The Amended Complaint alleges, and Plaintiff will prove, that YouTube did this out of fear that applying its repeat infringer policy, as required under the DMCA, by terminating RT's channels would trigger a ban of YouTube's billion-dollar business in Russia. The Amended Complaint alleges, plausibly and supported by ample documentation, that YouTube materially profited from its decision to decline to apply its repeat infringer policy to RT's YouTube channels.

**(b)   It is incorrect that "YouTube's termination of RT Arabic's channel was 'unintentional.'"**

While YouTube would later claim that its termination of RT Arabic was "unintentional" (thus "justifying" the channel's reinstatement), the Amended Complaint alleges plausibly, and Plaintiff will prove, that this claim is false.  The Amended Complaint alleges, and Plaintiff will prove, that YouTube's shutdown of RT Arabic was no "glitch" but was, in fact, a well-meditated decision authorized by YouTube's senior leadership team. As set forth in the allegations and exhibits to the Amended Complaint, YouTube's emails to Business Casual confirm that YouTube's executive team held "an internal call" about RT's efforts to game YouTube's system to avoid termination—and that it took nothing more than a brief and casual viewing of RT's infringements along with RT's written admission to Business Casual for YouTube's executives to

4

conclude that RT was, in fact, a repeat infringer and the circumstances for termination were appropriate.

As the facts alleged, and demonstrated by documentation, in the Amended Complaint set out, those familiar with YouTube's copyright enforcement system can demonstrate by admissible evidence that RT Arabic was terminated not in spite of its false counter-notifications, but because of them.

**(c) It is incorrect that "YouTube did not engage in 'volitional conduct' because Business Casual has alleged that YouTube has automated systems to detect copyright infringement which shows that YouTube 'actively and diligently polices its platform for copyright infringement.'"**

In the MOA, the Court concluded that RT's circumvention of YouTube's anti-infringement technology showed that YouTube "actively and diligently polices" its platform for copyright infringement. In so finding, the Court disregarded—without discovery—the contrary allegation of the Complaint (which, of course, must be presumed as true under Rule 12(b)(6)) that YouTube engaged in volitional conduct to infringe Plaintiff's copyrights. As the Amended Complaint makes clear, however, the issue in this case is not that YouTube lacks anti-infringement technology. Although the Court places great importance in this finding in the MOA, **the contrary has never been Plaintiff's allegation**. What the Amended Complaint now alleges clearly and specifically is that when YouTube became aware of RT's brazen and repeated infringements of Plaintiff's copyrighted videos (which was, all the same, enabled by years of circumvention by RT of YouTube's anti-infringement technology), YouTube made an affirmative decision to look the other way and not to terminate the repeat infringer's account.

Documents uncovered in the time since the filing of the original Complaint, and whose content and plausible inferences are alleged clearly in and integrated into the Amended Complaint prove that YouTube provided RT's channels with access to a secret technology that provides RT

5

with total immunity from its copyright-detection technology known as "Content ID." Indeed, in previous proceedings in this action, YouTube failed to disclose that it provides RT's channels with access to its "Managed CMS System," a covert technology developed by YouTube's software engineers for the principal purpose of protecting YouTube's largest and most important channels (such as those owned by governments) from copyright strikes and Content ID claims. As set forth in the Amended Complaint, and as Plaintiff will prove at trial, YouTube's Managed CMS System does this by enabling YouTube's most financially valuable channels to **completely circumvent** YouTube's copyright-detection technology.

As the Amended Complaint alleges, there are approximately forty million channels on YouTube's website, virtually all of which live under YouTube's "Affiliate CMS System" umbrella. The Amended Complaint sets forth, on information and belief, that only a few thousand channels share the privilege of operating in YouTube's Managed CMS system. As set forth in detail in the Amended Complaint, when creators such as Business Casual and other Affiliate Channels upload a video to YouTube, YouTube's technology immediately scans the video file and audio content being uploaded and cross-compares it against a vast digitized library of "reference files" looking for potential copyright-protected matches. If the newly-uploaded video is clean, i.e., no match is detected, YouTube will not flag a copyright claim on the uploaded video. If, however, the uploader's video includes copyright-protected music, YouTube will automatically flag the video for copyright.

When a video gets flagged for copyright, in turn—as set out in the Amended Complaint— revenue from YouTube / Google's AdSense business from the newly-uploaded video, or at least a prorated portion of that video which uses the copyrighted song, flows to the copyright owner. This protects creators. But there is no such protection available to creators whose works are uploaded

to a Managed Channel, which, the Amended Complaint sets out on information and belief, will **never** be compared to any reference copyright works files.

As a practical matter, as alleged in the Amended Complaint, the only way for a rightsholder to become aware of an infringement of its copyright and then to file a claim against a Managed Channel—which it will have to do on its own accord, because YouTube will not—is if the rightsholder finds it copyrighted material by dint of constant monitoring or chance and manually files a claim. The Amended Complaint alleges that because RT's channels are Managed Channels, they can and do routinely and systematically infringe copyrighted content without fear of being flagged for copyright by YouTube's system or copyright owners learning that their works are being infringed.

All this, as alleged in the Amended Complaint, is by design, and—abstracting from mere moral and legal qualms—highly rational. With billions of videos on its website, YouTube is aware that copyright owners have as much chance of finding their works on another user's channel, generating revenue for the infringer and for YouTube, but not for the creator—as finding a needle in a continent-sized haystack. As set forth in the Amended Complaint, Business Casual found its videos on RT's channels by mere chance and against all odds.

The allegations of the Amended Complaint, finally, also address the question of why RT modified their videos, such as by changing the color saturation from Business Casual's videos, to avoid detection from technology that it was already immune to. The Amended Complaint alleges facts explaining that Managed Channels may not retain their immunity from copyright and equity forever. Managed Channels, as alleged in the Amended Complaint, sometimes switch back to Affiliate Channels through a process known as a "CMS Transfer"; modifying the videos ensured their relative immunity regardless of any change in status. Ultimately, the Amended Complaint

7

sets out a willful, unlawful and secret program of copyright infringement for profit on the part of YouTube, protecting the accounts of its most profitable and powerful partners—far indeed from meeting its DMCA-mandated obligation to implement "standard technical measures" to protect owners of valid copyrights such as Plaintiff.

## ARGUMENT
## PLAINTIFF SHOULD BE PERMITTED TO AMEND THE COMPLAINT

**1. Leave to Amend the Pleadings Is Freely Granted**

Under Fed. R. Civ. P. 15(a), a plaintiff may file an amended complaint after an answer has been filed with leave of court. The Rule does not prescribe a time limit for the filing of amendments. Consequently, motions for leave to amend have been granted at various stages of litigation, even including after the entry of judgment. See, e.g., *Newark Branch, NAACP v. Harrison*, 907 F.2d 1408, 1417 (3rd Cir. 1990).

The United States Supreme Court has enumerated several factors that are given weight by the courts in the exercise of their discretion on a motion for leave to amend: (1) undue delay; (2) bad faith; (3) dilatory motive; (4) repeated failure to remedy problems in the complaint; (5) undue prejudice; and (6) futility. *Foman v. Davis,* 371 U.S. 178, 182 (1962). None of these factors is present here.

Courts also consider the effect denial of leave to amend would have on plaintiff, the reasons plaintiffs may have failed to include or exclude information in an earlier pleadings, and possible injustice to third parties. There is a strong bias toward granting motions for leave to amend. *Id*. Rule 15(a) itself directs that leave to amend "shall be freely given when justice so requires."

## 2. The Claim Added to the Complaint Is Not Futile.

An amendment to a pleading will be deemed futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). *Dougherty v. North Hempstead Zoning Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002). If, however, as here, there are at least colorable grounds for relief, justice requires that the motion to amend be granted.

As set forth in exhaustive length in the Statement of Facts section *supra*, on a full appreciation of the facts being alleged plausibly the Court should readily conclude that the proposed amendment is not futile and should be permitted.

## 3. There Are No Other Grounds to Deny Leave to Amend.

The standard, again, for leave to amend is liberal. Courts are only permitted to deny leave to amend if they make a finding of "undue delay, bad faith, dilatory motive, prejudice, [or] futility." *Id*. Allowing plaintiff to file an amended pleading will neither delay the present proceedings nor prejudice defendants. Denial of this application, however, would severely prejudice plaintiff and deprive it of the opportunity to pursue an important additional theory of recovery in this case, obviating the necessity of commencing additional litigation against culpable defendants.

## CONCLUSION

Defendants cannot demonstrate bad faith, delay or prejudice and, as set forth above, the proposed amended complaint is not futile. For these reasons, leave to amend the Complaint, in the form annexed to the Notice of Motion," should be granted.

DHILLON LAW GROUP INC.
A California Professional Corporation

By: _____
      Ronald D. Coleman
225 Broadway, Suite 715
New York, NY 10007
347-996-4840
rcoleman@dhillonlaw.com
*Attorneys for Plaintiff*
*Business Casual Holdings, LLC*

Date: July 6, 2022