BRIAN M. WILLEN
JASON MOLLICK
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Telephone: (212) 999-5800
Facsimile: (212) 999-5899
bwillen@wsgr.com
jmollick@wsgr.com

*Counsel for Defendants YouTube, LLC,*
*Google LLC, and Alphabet Inc.*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BUSINESS CASUAL HOLDINGS, LLC, | Case No. 1:21-cv-03610-JGK |
| Plaintiff, | |
| v. | |
| YOUTUBE, LLC, GOOGLE LLC, and ALPHABET INC., | |
| Defendants. | |

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO**
**<u>PLAINTIFF'S MOTION FOR LEAVE TO AMEND THE COMPLAINT</u>**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ...........................................................................................................................1

BACKGROUND ............................................................................................................................2

      A.    Plaintiff Sues YouTube for "Failure to Maintain and Reasonably
             Implement a Repeat Infringer Policy" ...................................................................2

      B.    YouTube Moves to Dismiss for Failure to State a Claim of Prima Facie
             Copyright Infringement ..........................................................................................6

      C.    The Court Dismisses the Original Complaint, Finding that Plaintiff
             "Misconstrues the Safe Harbor Provisions of the DMCA" ...................................8

ARGUMENT ...............................................................................................................................10

I.      THE PROPOSED AMENDED COMPLAINT DOES NOT ADDRESS ANY OF
        THE DEFICIENCIES IDENTIFIED IN THE COURT'S ORDER OF
        DISMISSAL ......................................................................................................................11

      A.    Plaintiff Offers No New Facts in Support of Its Direct or Secondary
             Infringement Claims .............................................................................................11

      B.    Plaintiff Continues to Rest on a Fundamental Misunderstanding of the
             DMCA Safe Harbor ..............................................................................................13

II.     PLAINTIFF'S ARGUMENTS IN ITS MOTION TO AMEND ARE
        IRRELEVANT AND DO NOT JUSTIFY GRANTING LEAVE TO AMEND .............17

CONCLUSION.............................................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

### CASES

*Austin v. Ford Models, Inc.*,
    149 F.3d 148 (2d Cir. 1998),
    *abrogated on other grounds by*
    *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506 (2002)....................................................10, 11

*Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*,
    139 S. Ct. 881 (2019)...........................................................................................................15

*Gayle v. Larko*,
    2019 U.S. Dist. LEXIS 159785 (S.D.N.Y. Sept. 17, 2019).........................................15, 16

*In re Tribune Co. Fraudulent Conveyance Litig.*,
    10 F.4th 147 (2d Cir. 2021),
    *cert. denied*, 142 S. Ct. 1128 (2022) .................................................................................10

*Jinjit, Ltd. v. Jovani Fashion, Ltd.*,
    2016 U.S. Dist. LEXIS 44863 (S.D.N.Y. Mar. 30, 2016) ..................................................15

*Lenz v. Universal Music Corp.*,
    815 F.3d 1145 (9th Cir. 2016) ............................................................................................12

*Lopez v. Bigcommerce, Inc.*,
    2017 U.S. Dist. LEXIS 120842 (S.D.N.Y. Aug. 1, 2017) ..................................................16

*Marvullo v. Gruner & Jahr*,
    105 F. Supp. 2d 225 (S.D.N.Y. 2000).........................................................................15, 16

*Palmer Kane LLC v. Scholastic Corp.*,
    2014 U.S. Dist. LEXIS 44881 (S.D.N.Y. Mar. 31, 2014) ..................................................15

*Reid v. ASCAP*,
    1994 U.S. Dist. LEXIS 21510 (S.D.N.Y. Jan. 5, 1994)......................................................16

*Ritani, LLC v. Aghjayan*,
    880 F. Supp. 2d 425 (S.D.N.Y. 2012)................................................................................16

### STATUTES

17 U.S.C. § 411(a) ........................................................................................................................15

17 U.S.C. § 412............................................................................................................................17

17 U.S.C. § 504(b) .......................................................................................................................17

17 U.S.C. § 512....................................................................................................................*passim*

**RULES**

Fed. R. Civ. P. 8.........................................................................................................................15

Fed. R. Civ. P. 11...................................................................................................................6, 19

Fed. R. Civ. P. 12(b)(6)...........................................................................................................10

Defendants YouTube, LLC, Google LLC, and Alphabet Inc. (together, "YouTube") oppose Plaintiff Business Casual Holdings, LLC's ("Plaintiff" or "Business Casual") motion for leave to file an amended complaint, Dkt. 56.[1]

## **INTRODUCTION**

Plaintiff's proposed First Amended Complaint (Dkt. 56-1, "FAC") doubles-down on the same approach to pleading a copyright infringement claim against YouTube that this Court has already rejected. Plaintiff's case against YouTube is not aimed at redressing harm from alleged infringement, but instead is part of its campaign to force YouTube to punish TV-Novosti ("RT") by terminating its entire YouTube account and removing non-infringing content. There is no reason to allow this misguided campaign to continue. Plaintiff's proposed Amended Complaint is futile.

As before, Plaintiff's core claim is that YouTube supposedly failed to apply its "repeat infringer policy" to terminate RT's account. FAC ¶¶ 30, 35. In dismissing Plaintiff's original Complaint, this Court rejected this theory as a matter of law. The Court explained that the repeat infringer provisions of the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 512(i)(1)(A), are merely a prerequisite to asserting a ***defense*** to an otherwise valid claim of infringement. If a platform has not infringed in the first place, the question of whether it "reasonably implemented" its repeat-infringer policy is "immaterial." Dkt. 41 ("Order") at 12-14.

Plaintiff's proposed FAC does nothing to cure the deficiencies that the Court identified. Plaintiff offers no new facts or allegations that support an underlying claim of copyright infringement against YouTube. The direct infringement claims fail now, as before, because

---

[1] YouTube, LLC is a subsidiary of Google LLC, which is an indirect subsidiary of Alphabet Inc. Dkt. 16. Google LLC is the provider of the YouTube service. Dkt. 30-3 (YouTube Terms of Service) at 5.

Plaintiff licensed its content to YouTube, and because YouTube did not engage in any volitional conduct that resulted in the reproduction or public display of that content. Declining to terminate RT's account, after having already removed the only videos that supposedly infringed Plaintiff's copyrights, does not give rise to a direct infringement claim. Plaintiff's secondary infringement claims fail now, as before, because YouTube had no prior knowledge of RT's alleged infringements or an ability to detect them; and, as soon as YouTube did learn of RT's videos, it promptly investigated and removed them. There is no allegation that YouTube continued hosting any other RT videos that allegedly infringed Plaintiff's copyrights, and hosting ***non-infringing*** RT videos is not a basis for contributory or vicarious liability.

The Court should deny Plaintiff's motion for leave to amend and dismiss this case with prejudice. If Plaintiff has a viable infringement claim, it is solely against RT, not YouTube.

## **BACKGROUND**

### A.   **Plaintiff Sues YouTube for "Failure to Maintain and Reasonably Implement a Repeat Infringer Policy"**

YouTube's motion to dismiss provides a detailed relevant history. Dkt. 29 ("YouTube MTD") at 3-10. To recap, Plaintiff Business Casual maintains a YouTube channel where it publishes documentary videos about key figures in the industrial revolution, including as relevant here: (1) a 9-minute video about John D. Rockefeller, which it published on YouTube on June 8, 2018 (the "Rockefeller Video"); and (2) a 40-minute video about J.P. Morgan, which it published on YouTube on June 25, 2020 (the "J.P. Morgan Video"). Dkt. 1 ("Compl.") ¶¶ 22-23. Plaintiff claims to own copyrights over the stylized manner in which it displays historical, public-domain images contained in those videos, but not over the preexisting images themselves. *Id.* ¶¶ 24-25 & Exs. B, C; FAC ¶¶ 39-53; *see also* Order at 2.

In uploading these videos to YouTube's platform, Plaintiff agreed to the YouTube Terms of Service and related copyright policies, which (among other things) "grant to YouTube a worldwide, non-exclusive, royalty-free, sublicensable and transferable license to use that Content (including to reproduce, distribute, prepare derivative works, display and perform it) in connection with the Service and YouTube's (and its successors' and Affiliates') business, including for the purpose of promoting and redistributing part or all of the Service." Dkt. 30-3 at 10 (the "License"). Plaintiff does not dispute the authenticity or enforceability of the License, or that it is subject to judicial notice. *See* Order at 2-3 & n.2.

On April 22, 2021, Plaintiff filed its initial Complaint against YouTube, ostensibly "for failure to maintain and reasonably implement a repeat infringer policy as required by the [DMCA]." Compl. ¶ 1. The alleged "repeat infringer" is TV-Novosti (or "RT"), a YouTube Content Manager that operates 39 distinct channels featuring content from international news broadcaster "Russia Today," which is reportedly funded by the Russian government. *Id.* ¶¶ 53, 57. Plaintiff asserts the RT channels—which focus on different regions of the world and are in many different languages—collectively have more than 26 million subscribers and receive roughly 402 million views each month. *Id.* ¶ 55. Plaintiff claims that one of those channels, RT Arabic, published three videos that copied snippets from the Rockefeller and J.P. Morgan Videos. *Id.* ¶¶ 27, 32-33. Although Plaintiff now claims that the copying was more extensive, its takedown notices to YouTube identified a total of just 80 seconds of allegedly-infringing content across all three videos. *Id.* Ex. D at 2; Ex. E at 2, 17-18; Ex. F at 13-40. Plaintiff also alleges that RT deliberately "remov[ed] Business Casual's watermark from each of Business Casual's copyrighted videos …, add[ed] its own 'RT' watermark, and alter[ed] the brightness and saturation of each of

its infringing videos to … circumvent YouTube's automated Content ID and Copyright Match Tools to avoid getting caught doing what it knew was unlawful." *Id.* ¶ 44.

Notwithstanding serious questions as to the scope of Plaintiff's rights over public-domain images, and whether RT's use of those images constitutes de minimis or fair use, ***YouTube removed all three videos within days of being notified of them***. Order at 4-5. YouTube removed the "first" and "third" videos nine and three days after Plaintiff's notices, respectively. Compl. ¶¶ 27-28 & Ex. D at 2 (first video); *id.* ¶¶ 33, 35 & Ex. F (third video). As for the "second" video— which copied just seven seconds of content (*id.* ¶ 32 & Ex. E at 2)—YouTube responded after four days to inquire whether Plaintiff had considered the doctrine of fair use in its takedown notice, a legal requirement under the DMCA. After further correspondence (and some confusion as to the correct link where the video appeared), YouTube took it down 23 days after the initial notice. *Id.* ¶ 38 & Ex. E at 2-7. In sum, YouTube removed all three alleged-infringing videos and never reinstated them. *Id.* ¶ 49 & Ex. I; Order at 4-5. ***No other RT content on YouTube has allegedly infringed Plaintiff's copyrights.***

Plaintiff sued YouTube anyway, claiming that the DMCA's "repeat infringer" provisions (17 U.S.C. § 512(i)(1)(A)) "required" YouTube to go further and "immediately terminate" RT's entire account, including 38 other channels in other languages that have never been alleged to host infringing content. Compl. ¶ 1 and Prayer for Relief ¶ 1. Before Plaintiff filed suit, YouTube explained that its copyright policies do not generally require copyright owners to prove infringement in court before "copyright strikes" are applied to user accounts. But strikes are held in abeyance where the alleged infringer submits facially-valid counternotifications disputing the claims under penalty of perjury, as a respondent may do under Section 512(g)(3) of the DMCA. *See* Compl. ¶¶ 37, 40, 46 & Ex. A at 3, 7 (YouTube's policy: "If you submit a counter notification,

your channel won't be disabled while the counter notification is unresolved."). Because RT submitted counternotifications disputing all three claims, YouTube informed Plaintiff that "[i]f a court resolves the copyright claims you've brought against RT Arabic in your favor," Plaintiff may submit that judgment to YouTube for further consideration under its repeat-infringer policy. *Id.* ¶ 73 & Ex. S.[2]

After Plaintiff filed the original Complaint, YouTube's counsel also informed Plaintiff that it had failed to disclose YouTube's full repeat-infringer policy to the Court. YouTube directed Plaintiff to its published "Content Manager Copyright Strikes Policy" (Dkt. 30-4 at 2), which explains that where (as here) a channel is operated by the administrator of a Content Manager account (used by large institutional entities that operate numerous associated channels) copyright strikes result in channel-level penalties unless the Content Manager receives 10 strikes across its managed channels within 90 days. Accordingly, if Plaintiff succeeds in obtaining a judgment in the related case against RT (No. 1:21-cv-02007-JGK) finding that RT Arabic hosted three infringing videos, and if YouTube is properly notified of such judgment, then under YouTube's policies any strikes associated with those videos will no longer be held in abeyance, and three strikes will be applied on a channel-level basis to RT Arabic. That would result in the termination of the RT Arabic channel, but not the termination of RT's 38 other channels that never hosted the accused videos or any other content allegedly infringing Plaintiff's works.[3]

---

[2] RT ultimately withdrew its counternotification for one of the three accused videos, but continues to dispute the others. Compl. ¶ 31.

[3] Plaintiff asserts in its proposed FAC that YouTube's Content Manager Copyright Strikes Policy is a "special," "off-the-books," and "secret policy." FAC ¶¶ 63-70. Those allegations are untrue and would run

**B.      YouTube Moves to Dismiss for Failure to State a Claim of Prima Facie Copyright Infringement**

YouTube moved to dismiss the original Complaint on August 18, 2021, explaining that Plaintiff's lawsuit is premised on a fundamental misunderstanding of the DMCA. The DMCA safe harbor is an affirmative *defense* to an otherwise viable claim of copyright infringement. The repeat infringer requirement is a prerequisite to asserting that defense; it is not an independent legal obligation that gives rise to an affirmative cause of action. YouTube MTD at 19-20; Dkt. 39 ("YouTube Reply") at 1; *see also, e.g.*, 17 U.S.C. § 512(l). Thus, misguided though they are, Plaintiff's arguments about YouTube's repeat-infringer policy and enforcement decisions as to RT are irrelevant, because YouTube did not infringe Plaintiff's content to begin with.

YouTube explained that Plaintiff's direct infringement claims failed for two reasons. First, Plaintiff authorized YouTube to "use" (including "to reproduce, distribute, prepare derivative works, display and perform") all of the content at issue when it posted the J.P. Morgan and Rockefeller Videos onto the platform pursuant to the License. That License expressly and broadly covers all of the purported acts of infringement by YouTube in connection with hosting or

---

afoul of Rule 11 if included in a signed and filed pleading. Plaintiff has long known—and the FAC confirms (¶ 63)—that the policy at issue is published on Google's "YouTube Help Center" website: https://support.google.com/youtube/answer/9142671?visit_id=637571380788581027-409427384&rd=1#zippy=%2Ccontent-manager-copyright-strikes-policy (dropdown item for "Content Manager copyright strikes policy"). YouTube's counsel provided Plaintiff a live web link to the publicly-available policy over a year ago. There is nothing "secret" about the public-facing YouTube Help Center and its policies. Plaintiff cites other portions of YouTube's copyright policies *which are published on the same website*, and even attached screenshots of the Help Center to the original Complaint. Compl. Ex. A (Dkt. 1-1) at 7-10; *see also* FAC ¶¶ 54-57. It is disingenuous and misleading for Plaintiff to cite portions of YouTube's policy, while claiming that other portions are "off-the-books."

displaying the three accused RT videos; and, "[i]t is a hallmark principle of copyright law that licensors may not sue their licensees for copyright infringement." YouTube MTD at 10-12; YouTube Reply at 2-3.

Second, even apart from the License, the facts alleged in the Complaint make clear that YouTube did nothing more than provide an automated online hosting platform to which RT (and Plaintiff) posted videos of their own creation and selection. YouTube did not engage in any of the requisite volitional conduct that directly caused the three alleged infringements. YouTube MTD at 12-16; YouTube Reply at 3-5.

YouTube explained that the secondary liability claims failed as well, and not just because of the License. To establish contributory infringement, a plaintiff must allege that the defendant materially contributed to someone else's infringing conduct "with knowledge" of that specific activity. YouTube MTD at 16-17; YouTube Reply at 4-5. Mere "general awareness" of the possibility of unspecified infringement on the platform is not enough. YouTube Reply at 5 (collecting cases). Likewise, one infringes vicariously by profiting from someone else's infringement while declining to exercise a right and ability to stop it. YouTube MTD at 18-19; YouTube Reply at 6.

YouTube did the opposite of these things. As explained, the facts alleged in the Complaint make clear that promptly after YouTube gained knowledge of the accused videos, it investigated and removed all three of them. YouTube Reply at 6-8. YouTube neither contributed to the alleged infringement upon gaining relevant knowledge of it, nor failed to exercise any right or ability to stop it from continuing. In fact, Plaintiff alleged that RT took measures deliberately to "circumvent YouTube's automated Content ID and Copyright Match Tools to avoid getting caught doing what it knew was unlawful." Compl. ¶ 44. The only thing YouTube did not do, according to Plaintiff,

was to terminate RT's account—thereby removing ***non***-infringing content, which plainly is not a basis for asserting any theory of liability.

C.    **The Court Dismisses the Original Complaint, Finding that Plaintiff "Misconstrues the Safe Harbor Provisions of the DMCA"**

On March 21, 2022, the Court dismissed Plaintiff's Complaint. The Court fundamentally rejected Plaintiff's core theory of the case, i.e., that it stated a claim of infringement because YouTube supposedly failed to implement and apply a reasonable repeat-infringer policy with respect to RT:

> [T]his argument misconstrues the safe harbor provisions of the DMCA and how they interact with the other federal copyright laws. The DMCA safe harbors provide potential defenses against copyright infringement claims where, but for the safe harbors, the plaintiff has a meritorious cause of action against the defendant for copyright infringement. But alleged failures to satisfy the conditions of a DMCA safe harbor provision cannot constitute a cause of action without a viable underlying claim for copyright infringement…. Accordingly, whether YouTube is prevented from taking advantage of a DMCA safe harbor because it has failed to comply with the DMCA's repeat infringer provision is ***immaterial*** here because Business Casual has not pleaded a plausible claim of direct copyright infringement.

Order at 12-14 (emphasis added; citations omitted).

The Court held that Plaintiff failed to state "a viable underlying claim for copyright infringement." Order at 13. The direct infringement claims failed for the same two reasons identified by YouTube. First, Plaintiff "does not dispute that it assented to YouTube's terms of service, including the License," and it "does not argue that the License is unenforceable or otherwise not binding[.]" *Id.* at 11. That License is "broad and explicitly grants to YouTube the

right to 'reproduce, distribute, prepare derivative works, display and perform' Business Casual's YouTube videos [citing License]. Under the plain language of the License, YouTube cannot be liable for directly infringing any copyrights associated with any content that Business Casual has uploaded to its channel." *Id.* at 12; *see also id.* at 8-9.

Even aside from the License, the Court found that Plaintiff "failed to plead adequately that YouTube engaged in volitional conduct relating to [RT's] alleged infringement." Order at 9-10. "In the context of online platforms that host content uploaded or transmitted by third-party users, a platform cannot be liable for direct copyright infringement based on the allegedly infringing activities of its users unless the platform had some 'deliberate role' in the alleged infringement, such that the platform morphed from a 'passive provider of a space in which infringing activities happened to occur to an active participant in the process of copyright infringement.'" *Id.* at 7-8 (citation omitted). Here, Plaintiff admitted that "YouTube promptly took [the three accused videos] off its platform" after learning of them; nor did YouTube "participate in the creation" of those videos. *Id.* at 9-10 & n.4. Thus, "irrespective of how long it took YouTube to remove the Second RT Video [23 days, which Plaintiff claimed was excessive], Business Casual has failed to claim plausibly that any purported delay by YouTube constituted active, volitional conduct that caused TV-Novosti's alleged infringement." *Id.* at 10-11.

The Court also found that Plaintiff failed to state a claim of secondary infringement. As to contributory infringement, "there is no allegation that YouTube knew of TV-Novosti's alleged infringement before Business Casual lodged its DMCA complaints. To the contrary, Business Casual alleged that YouTube has systems in place to detect automatically and to police copyrighted content and that TV-Novosti intentionally attempted to circumvent these safeguards by doctoring the allegedly copied content. The complaint further alleges that upon obtaining knowledge of the

RT videos and Business Casual's allegations, YouTube promptly and permanently took each video down from the platform." Order at 14-15. The vicarious infringement claim failed for similar reasons, since "Business Casual's allegations demonstrate that YouTube did not decline to exercise its right to stop [the] alleged infringement. To the contrary, YouTube promptly stopped the alleged infringement shortly after it learned of Business Casual's allegations by taking the RT videos down." *Id.* at 15-16.

The Court thus dismissed the Complaint in its entirety. It gave Plaintiff an opportunity to amend, but noted "it is doubtful that Business Casual can file an amended complaint that is not futile[.]" Order at 16. After securing several extensions, Plaintiff filed its motion to amend and proposed First Amended Complaint on July 6, 2022. Dkts. 53, 54, 56.

**ARGUMENT**

A motion for leave to amend should be denied if the proposed claim is futile. "Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *In re Tribune Co. Fraudulent Conveyance Litig.*, 10 F.4th 147, 175 (2d Cir. 2021) (citation omitted), *cert. denied*, 142 S. Ct. 1128 (2022). "To determine whether granting leave to amend would be futile, [courts] consider the proposed amendments ***and*** the original complaint." *Id.* (emphasis added). An amendment might add or clarify allegations, or plead new theories of recovery that would be consistent with those facts; but a plaintiff may not use an amendment to change, contradict, or omit facts that were already sworn to in a prior pleading. *See, e.g.*, *Austin v. Ford Models, Inc.*, 149 F.3d 148, 155 (2d Cir. 1998) (affirming denial of leave amend that attempted to "erase" fatal admissions made in the prior complaint, because "[t]he amendment of a pleading does not make it any the less an admission of the party"), *abrogated on other grounds by Swierkiewicz v. Sorema N. A.*, 534 U.S. 506 (2002).

Here, the proposed FAC does not address any of the defects identified by the Court in dismissing the original Complaint. Plaintiff ignores those issues and doubles down on the same fundamental misunderstanding of the DMCA that the Court clearly and explicitly rejected. Because Plaintiff's amendment would be futile, leave should be denied.

I.   **THE PROPOSED AMENDED COMPLAINT DOES NOT ADDRESS ANY OF THE DEFICIENCIES IDENTIFIED IN THE COURT'S ORDER OF DISMISSAL**

A.   **Plaintiff Offers No New Facts in Support of Its Direct or Secondary Infringement Claims**

The FAC does not add a single new fact or legal theory that supports a claim of copyright infringement against YouTube. The three RT videos at issue in the original Complaint are the same three videos underlying Plaintiff's causes of action in the FAC. Plaintiff alleges nothing new regarding the posting of those videos, the existence or validity of YouTube's License to Plaintiff's content in those videos, YouTube's knowledge of those videos, Plaintiff's takedown notices, and YouTube's response to those notices. Nor could Plaintiff dispute those facts now, as it already swore to them in the original Complaint. *Austin*, 149 F.3d at 155.

Specifically, Plaintiff continues to allege now, as it did before, that:

1.   Plaintiff initially uploaded the Rockefeller and J.P. Morgan Videos to YouTube's platform, which is governed by a License that gave YouTube the right to use and display that content. FAC ¶¶ 76-77;

2.   RT subsequently copied snippets from Plaintiff's videos, produced three videos that incorporated that content, and uploaded them onto YouTube—all on RT's own accord without any involvement by YouTube. *Id.* ¶¶ 83, 92, 94;

3.   RT "deliberately" doctored the videos "to avoid getting caught doing what it knew was unlawful," and "has never refuted removing the color from Plaintiff's original

videos to evade detection from YouTube's copyright-detection technology." *Id.*
¶¶ 107-08, 125;

4.     The first time YouTube was told about RT's conduct was when Plaintiff submitted
       its takedown notifications to YouTube. *Id.* ¶¶ 83, 92, 94;

5.     Despite receiving counternotifications from RT disputing Plaintiff's claims,
       YouTube promptly removed all three accused videos from the platform. *Id.* ¶¶ 85,
       90-91, 96, 98, 102, 105, 126, 130;

6.     As to the "second" accused video—which Plaintiff admits contains just "one
       copyrighted scene totaling seven seconds" of allegedly-infringing material (*id.*
       ¶ 92)—YouTube removed it after 23 days because it was corresponding with
       Plaintiff and evaluating whether the content was fair use, which Plaintiff must
       consider under the DMCA. *Id.* ¶¶ 118-26; *accord Lenz v. Universal Music Corp.*,
       815 F.3d 1145, 1148, 1151-53 (9th Cir. 2016); and

7.     YouTube never restored the three accused videos. *Id.* ¶ 103.

Thus, as before, the allegations in the FAC do not state a claim against YouTube for
copyright infringement. Indeed, Plaintiff's allegations run headlong into the Court's prior ruling,
which its motion for leave to amend barely acknowledges.[4] There is no infringement at all by
YouTube because Plaintiff licensed all of the content at issue to YouTube. Order at 11-12. Indeed,
YouTube's License—and the Court's dispositive holding about it—go completely unaddressed in
Plaintiff's motion and proposed FAC. There is no direct infringement because there is no plausible

---

[4] The proposed FAC is so disconnected from a legitimate copyright claim that Plaintiff initially forgot
to include causes of action for copyright infringement when it first filed the document. *See* Dkt. 53-1
(original FAC, omitting any causes of action).

allegation that YouTube played a volitional role in creating or posting the three accused videos, other than acting as an automated hosting platform. *Id.* at 9-11. There is no contributory infringement because there is no allegation that YouTube had any prior knowledge of the specific alleged infringements, or that YouTube continued hosting those videos after receiving and processing Plaintiff's takedown notices. *Id.* at 14-15. There is no vicarious infringement because there is no allegation that YouTube had any ability to monitor and detect the infringements, or that YouTube declined to remove them upon receiving Plaintiff's takedown notices. *Id.* at 15-16. And there is no additional claim of infringement of any kind, because there is no allegation that YouTube continued to host any other RT content that allegedly infringed Plaintiff's copyrights.

In short, the Court's ruling dismissing Plaintiff's original claims for direct and secondary infringement is equally applicable to the allegations in the proposed Amended Complaint. Plaintiff has done nothing to escape that dispositive ruling, and its motion for leave is futile.

### B. Plaintiff Continues to Rest on a Fundamental Misunderstanding of the DMCA Safe Harbor

Rather than even trying to address the deficiencies identified by the Court, Plaintiff doubles down on a theory that this Court already rejected and that cannot state a viable infringement claim against YouTube as a matter of law.

Plaintiff's principal theory is again that YouTube engaged in volitional infringement because it has not terminated RT's entire account under its repeat-infringer policy. *See, e.g.*, FAC ¶ 154. The Court has made clear that theory fails as a matter of law. Indeed, it is simply a non-sequitur:

> [A]ny argument that YouTube's volitional act of infringement was its failure to terminate TV-Novosti's YouTube channels fails. There are no allegations in the complaint that any videos currently posted on TV-Novosti's YouTube channels

infringe any of Business Casual's copyrights. Furthermore, YouTube's decision not
to terminate TV-Novosti's channels postdates TV-Novosti's alleged infringement
and YouTube's deletion of the three RT videos. Therefore, YouTube's failure to
terminate TV-Novosti's channels could not have caused or contributed to TV-
Novosti's decision to upload the allegedly infringing content in the first instance
and cannot constitute volitional conduct that caused the alleged infringement.

Order at 11.

The same rationale applies to Plaintiff's renewed effort to center claims of secondary
infringement on the decision not to terminate RT's account. As the Court explained, "any argument
that YouTube is vicariously liable for TV-Novosti's alleged infringement because YouTube failed
to terminate TV-Novosti's channels fails. Because there is no allegation that any content currently
hosted on any of those channels infringes Business Casual's copyright, YouTube's failure to take
the channels down cannot constitute a failure to stop alleged infringement." Order at 16. Simply
put: failing to terminate RT's account—even if RT was a "repeat infringer" under YouTube's
policy (which it was not)—is not an act of copyright infringement and cannot give rise to any claim
for relief against YouTube. *Id.* at 12-14.

Plaintiff's only effort to address the Court's ruling consists of rank (and unelaborated)
speculation that there are "thousands of other [RT] videos that were believed to have infringed the
copyrights of Business Casual[.]" FAC ¶ 165. This allegation is wholly conclusory and not
supported by even the slightest factual detail. Plaintiff does not say what "other" videos were
supposedly infringed, how they were infringed, when they were infringed, who infringed them, or
whether YouTube was ever notified of those infringements. Plaintiff also does not identify the
copyrighted works that it claims were infringed, much less allege that those works are registered

-14-

with the Copyright Office—a statutory prerequisite to bringing an infringement action. *See* 17 U.S.C. § 411(a); *Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881 (2019).[5]

These conclusory assertions are not remotely enough to plead a viable claim of infringement. "Courts in this District have held that a copyright claim must allege (1) which specific original works are the subject of the copyright claim, (2) that plaintiff owns the copyrights in those works, (3) that the copyrights have been registered in accordance with the [Copyright Act], and (4) by what acts during what time the defendant infringed the copyright." *Jinjit, Ltd. v. Jovani Fashion, Ltd.*, 2016 U.S. Dist. LEXIS 44863, at *17 (S.D.N.Y. Mar. 30, 2016) (citation omitted). "Rule 8(a)(2) has been construed to require a plaintiff to plead ***with specificity*** the acts by which a defendant has committed copyright infringement." *Marvullo v. Gruner & Jahr*, 105 F. Supp. 2d 225, 230 (S.D.N.Y. 2000) (emphasis added); *accord, e.g.*, *Gayle v. Larko*, 2019 U.S. Dist. LEXIS 159785, at *7-8 (S.D.N.Y. Sept. 17, 2019) (citing *Marvullo*). Thus, "[a] properly pled copyright infringement claim must allege … by what acts during what time the defendant infringed the copyright. It must set out the particular infringing acts … with some specificity. Broad, sweeping allegations of infringement do not comply with Rule 8." *Marvullo*, 105 F. Supp. 2d at 230 (citations omitted); *accord, e.g.*, *Palmer Kane LLC v. Scholastic Corp.*, 2014 U.S. Dist. LEXIS 44881, at *8 (S.D.N.Y. Mar. 31, 2014) ("A plaintiff may not rest on bare-bones allegations that infringement occurred.") (citation omitted).

---

[5] Plaintiff speculates that RT rushed to delete these "other" videos, citing a sudden reduced viewership of RT Arabic content at the end of March 2021. FAC ¶ 175. Plaintiff fails to notice that this reduction coincides with YouTube's brief termination of RT Arabic on March 31, 2021. *Id.* ¶ 156. Once the channel was restored, viewership went back to the same levels as before. *Id.* ¶ 175.

Plaintiff's allegation of "other" infringements does not come close to meeting these standards. It is precisely the kind of "broad, sweeping allegation" that courts routinely dismiss. *See, e.g.*, *Lopez v. Bigcommerce, Inc.*, 2017 U.S. Dist. LEXIS 120842, at *10 (S.D.N.Y. Aug. 1, 2017) (dismissing copyright claim against Google where "the FAC does not provide sufficient specificity to properly plead copyright infringement, as it fails to identify any specific instances of infringement"); *Ritani, LLC v. Aghjayan*, 880 F. Supp. 2d 425, 440-41 (S.D.N.Y. 2012) (dismissing infringement claim because "there are no facts alleged in the Amended Complaint as to how or when [defendant] violated any of the listed copyrights"); *Gayle*, 2019 U.S. Dist. LEXIS 159785, at *7-9 (dismissing claim where plaintiff did not identify which "specific original works" were infringed, or show "that the copyrights were registered in accordance with the statute"); *Marvullo*, 105 F. Supp. 2d at 228 ("[P]laintiff's unadorned allegation in paragraph nine that defendants have published the McNeely photograph 'beyond the scope … of the limited license,' absent any factual support, merely states a legal conclusion insufficient to withstand a motion to dismiss."); *Reid v. ASCAP*, 1994 U.S. Dist. LEXIS 21510, at *5-6 (S.D.N.Y. Jan. 5, 1994) (dismissing infringement claim where plaintiff failed to allege "by what act or acts and on what dates" defendant duplicated sound recordings as alleged in the complaint). Plaintiff cannot, with a single sentence of boilerplate, evade this Court's decision or save its claims.[6]

Finally, Plaintiff's damages claim confirms that it has no viable basis for pursuing an infringement claim against YouTube. Plaintiff does not seek damages associated with YouTube's

---

[6] Plaintiff attempts to corroborate its "new" claims by alleging that "another YouTube content creator," who it calls "John Doe," experienced similar issues with RT. FAC ¶¶ 177-78. Plaintiff's attempt to save its claims by invoking an anonymous person's unidentified copyrights only underscores the weakness of its position.

hosting of the three RT videos at issue. Instead, Plaintiff seeks disgorgement of all advertising revenue that YouTube allegedly received from RT's content since March 31, 2021—the date RT Arabic was reinstated following its temporary removal from YouTube. FAC at Prayer for Relief ¶ 4; *see also id.* ¶ 156. That was well *after* the three accused videos had already been removed. Nothing in the Copyright Act entitles Plaintiff to such relief. The statute affords two types of money damages, each tied to the specific infringing content at issue: (i) statutory damages and (ii) actual damages and profits. 17 U.S.C. § 512(a). Plaintiff is not entitled to statutory damages because it did not register the works at issue until after the alleged infringement began. 17 U.S.C. § 412; *see also* FAC ¶¶ 78-79. As for actual damages and profits, the Act expressly limits those to "actual damages suffered by [plaintiff] *as a result of the infringement*, and any profits of the infringer that are *attributable to the infringement*[.]" 17 U.S.C. § 504(b) (emphases added). Simply stated, Plaintiff cannot seek profits allegedly earned from RT videos not accused of infringing its copyrights as a matter of law.

## II.     PLAINTIFF'S ARGUMENTS IN ITS MOTION TO AMEND ARE IRRELEVANT AND DO NOT JUSTIFY GRANTING LEAVE TO AMEND

In support of reviving its misguided campaign against YouTube, Plaintiff offers a supporting brief (Dkt. 54, "Mot.") that does nothing to justify the filing of the FAC. The Motion cites no authority on copyright law, and in many places is disconnected from the FAC's allegations. For example, the Motion's introduction begins by listing over a dozen "factual assertions" and "unsupportable inferences" that the Court supposedly relied on in dismissing the original Complaint. Mot. at 1-2. Plaintiff declares each to be "incorrect" without saying anything more—including why they are incorrect or how they are relevant. *Id.* As Plaintiff did not see fit to elaborate on these "incorrect" points, neither will YouTube. However, three points that Plaintiff emphasizes in the Motion merit a response.

*First*, Plaintiff claims the Court erred in concluding that "Business Casual's claims against YouTube have been remedied because RT's channels have been 'suspended'" in light of the war in Ukraine. Mot. at 3-4. This Court said no such thing. Rather, it noted that YouTube has suspended RT in certain regions (a fact publicly known), but never suggested that Plaintiff's claims have been "remedied" for that reason. Order at 6. To the contrary, at the hearing on YouTube's motion, counsel stated that RT's suspension had not mooted the case (Dkt. 42, Hearing Tr. at 3:9-4:20), and the subsequent ruling on the merits confirms that the Court agreed with that.

*Second*, Plaintiff claims the Court erred in concluding that YouTube's temporary termination of RT Arabic in March 2021 was "unintentional." Mot. at 4-5; *see also* Order at 5. Again, the Court said no such thing. The Court merely paraphrased allegations in Plaintiff's own Complaint that suggested that the termination was "unintentional." Order at 5 ("TV-Novosti published a statement regarding this episode in which it said that YouTube had confirmed to TV-Novosti that the termination was 'unintentional.'") (citing Compl. ¶ 68). The Court did not make a determination whether the March 2021 termination was intentional in dismissing Plaintiff's claims. For good reason: that has nothing to do with whether Plaintiff has stated a viable claim for copyright infringement. No matter whether YouTube intentionally or unintentionally terminated RT Arabic in March 2021, its reinstatement of that account—without any of the allegedly infringing content—simply is not an act of copyright infringement.

*Third*, Plaintiff disputes the Court's observation, which was based on allegations in Plaintiff's own Complaint, that "YouTube actively and diligently policed allegedly infringing activity on its platform." Mot. at 5; Order at 9-10. That amounts to an untimely and procedurally improper argument for reconsideration of the Court's reasoning—not a basis for amending the Complaint. *See* L.R. 6.3. Indeed, the FAC alleges the same facts as before: that YouTube deployed

copyright-protection measures, and that RT deliberately evaded those measures to avoid getting caught. FAC ¶¶ 107-08, 125. Plaintiff also repeated those allegations in the related case, where it recently filed a Third Amended Complaint. No. 1:21-cv-02007-JGK, Dkt. 52 ¶¶ 3, 58-60, 68, 70-71, 155, 161, 167, Prayer for Relief ¶ 2.

Plaintiff claims that the FAC "now" alleges that YouTube volitionally infringed because it "made an affirmative decision to look the other way and not to terminate the repeat infringer's account." Mot. at 5. But that is always what Plaintiff has alleged, and it does nothing to save the copyright claims. Indeed, as discussed above, the Court has squarely held that "any argument that YouTube's volitional act of infringement was its failure to terminate TV-Novosti's YouTube channels fails." Order at 11. That is exactly right. It is futile for Plaintiff to expect a different result by reasserting the same argument based on the same underlying facts.

One last point requires a response. Plaintiff's Motion claims that "[d]ocuments uncovered in the time since the filing of the original Complaint … prove that YouTube provided RT's channels with access to a secret technology that provides RT with total immunity from its copyright-detection technology[.]" Mot. at 5-6. Plaintiff says that this is "covert technology" that YouTube developed for the specific purpose of "protecting YouTube's largest and most important channels (such as those owned by governments) from copyright strikes and Content ID claims." *Id.* at 6-8. ***But none of this is actually alleged in the Amended Complaint***, nor are any of the secret "documents" attached to Plaintiff's papers. That is telling, as Plaintiff's assertions are entirely false and could not be asserted in a signed complaint consistent with Rule 11. RT's content does not have "immunity" from YouTube's copyright-detection technology, including Content ID; and as this case shows, RT is not immune from having its videos removed for alleged infringement or

having copyright strikes assigned under YouTube's repeat-infringer policy. This is a conspiracy theory, and it certainly does not support the filing of the proposed FAC.

Even if any of this were true (and actually alleged in an amended complaint), it would make no difference. Plaintiff does not even try to suggest that YouTube's supposed "secret technology" prevented Plaintiff from securing the removal of the three allegedly-infringing videos, caused those videos to be posted on YouTube in the first place, or helped them to remain on YouTube longer than they otherwise would have. Nor does it do anything to overcome YouTube's License to display and use Plaintiff's works. Order at 11-12. In short, Plaintiff's wild assertions do not support a claim of infringement by YouTube in connection with the three RT videos at issue in this case.

## **CONCLUSION**

Plaintiff should not be given leave to amend to repeat the legal errors the Court has already rejected. Plaintiff's effort to premise an infringement claim on YouTube's decision not to terminate RT's entire account and remove non-infringing content is futile. The Court should deny Plaintiff's motion for leave to amend and dismiss this case with prejudice.

Dated: August 5, 2022

Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

*s/ Brian M. Willen*

Brian M. Willen
Jason Mollick
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Telephone: (212) 999-5800
Facsimile: (212) 999-5899
bwillen@wsgr.com
jmollick@wsgr.com

*Counsel for Defendants YouTube, LLC,*
*Google LLC, and Alphabet Inc.*

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Section II.D of the Court's Individual Practices, the undersigned certifies that

this brief contains 6,078 words and complies with the Court's formatting rules.


Dated: August 5, 2022                                          *s/ Brian M. Willen*_____

                                                                            *Counsel for Defendants YouTube, LLC,*
                                                                            *Google LLC, and Alphabet Inc.*