UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------

BUSINESS CASUAL HOLDINGS, LLC,

                          Plaintiff,                21-cv-3610 (JGK)

           - against -               MEMORANDUM OPINION
                                            AND ORDER

YOUTUBE, LLC, ET AL.,

                          Defendants.
--------------------------------------

JOHN G. KOELTL, District Judge:

The plaintiff, Business Casual Holdings, LLC ("Business Casual"), brought this action against YouTube, LLC, Google LLC ("Google"), and Alphabet, Inc. ("Alphabet") (collectively, "YouTube"), seeking damages and injunctive relief for claims of direct, contributory, and vicarious copyright infringement. See Complaint, ECF No. 1 ("Original Complaint"). In a Memorandum Opinion and Order dated March 21, 2022, this Court granted YouTube's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and dismissed the Original Complaint without prejudice. See Bus. Casual Holdings, LLC v. Youtube, LLC, No. 21-cv-3610, 2022 WL 837596 (S.D.N.Y. Mar. 21, 2022) (the "First Opinion"). Business Casual now moves pursuant to Federal Rule of Civil Procedure 15(a)(2) for leave to file a proposed amended complaint. See ECF No. 56-1 ("Amended Complaint"). For the reasons below, Business Casual's motion for leave to amend is **denied.**

I.

A.

The Amended Complaint repeats the bulk of the allegations from the Original Complaint, which is described at length in the First Opinion. See 2022 WL 837596, at *1-2. Familiarity with the First Opinion is assumed. Unless otherwise noted, the following allegations are taken from the Original and Amended Complaints. Where necessary, the summary below indicates which allegations are new additions contained only in the Amended Complaint.[1]

YouTube operates an online user-generated content-hosting platform on which its users may upload, view, and share video content. See First Opinion, 2022 WL 837596, at *1. YouTube, LLC is a wholly owned subsidiary of Google, and Google is a wholly owned subsidiary of Alphabet. Compl. ¶¶ 15-17; Am. Compl. ¶¶ 26-29. Business Casual creates documentary content that it posts on its YouTube channel. Compl. ¶ 14.

On June 8, 2018, Business Casual published on YouTube an original documentary video titled, "How Rockefeller Built His Trillion Dollar Oil Empire" (the "Rockefeller Video"). Compl. ¶ 22; Am. Compl. ¶ 76. On January 25, 2020, Business Casual posted on YouTube another original documentary video, titled

---

[1] Unless otherwise noted, this Memorandum Opinion and Order omits all alterations, omissions, emphasis, quotation marks, and citations in quoted text.

"J.P. Morgan Documentary: How One Man Financed America" (the "J.P. Morgan Video"). Compl. ¶ 23; Am. Compl. ¶ 77. The Amended Complaint explains that these videos, like many of Business Casual's videos, feature unique three-dimensional renderings of historical scenes that have been created using Business Casual's specialized "parallax" technology. See Am. Compl. ¶¶ 36, 39-53. Business Casual obtained federal copyright registrations for both the Rockefeller Video and the J.P. Morgan Video on March 8, 2021. Compl. ¶¶ 24-25; Am. Compl. ¶¶ 78-79.

As discussed in the First Opinion, YouTube's terms of service provide in pertinent part that users who upload video content to YouTube grant "to YouTube a worldwide, non-exclusive, royalty-free, sublicensable and transferable license to use that [c]ontent (including to reproduce, distribute, prepare derivative works, display and perform it)" (the "License"). ECF No. 30-3 at 10; see also id. at 5 ("Your use of the [YouTube service] is subject to these terms . . . .").[2] YouTube also has rules and

---

[2] For the reasons discussed in the First Opinion, the Court may consider YouTube's terms of service, which include the License, even though the terms of service were not reproduced in or attached to either the Original Complaint or the Amended Complaint. See First Opinion, 2022 WL 837596, at *1 n.2. As before, Business Casual does not dispute that the terms of service are authentic and publicly available on the internet, and therefore subject to judicial notice. In any event, YouTube's terms of service are properly considered at this stage because they are integral to and are expressly referenced in the Complaint and the Amended Complaint. See, e.g., Am. Compl. ¶ 57; Compl. ¶ 6; Compl. Exs. A, E, F, ECF Nos. 1-1, 1-5, 1-6.

policies related to the posting and maintenance of copyrighted content on its platform. See generally ECF No. 1-1. Under one such policy (the "Repeat Infringer Policy"), YouTube will remove a video if a copyright owner lodges a complaint with YouTube in accordance with the Digital Millennium Copyright Act ("DMCA"), alleging that the video infringes the owner's copyright. Compl. ¶ 45; Am. Compl. ¶ 55. If a valid DMCA complaint is filed and a video is removed from the platform, YouTube will give the user against whom the complaint is lodged a so-called "copyright strike." Compl. ¶ 45; Am. Compl. ¶ 55. If a user receives three copyright strikes within a 90-day period, "their account, along with any associated channels, will be terminated." Compl. ¶ 45; Am. Compl. ¶ 55. However, when a user in YouTube's "Partner Program" receives three copyright strikes in a 90-day period, YouTube affords the user an additional week-long courtesy period during which the user's channel will remain on the platform. Compl. ¶ 46; Am. Compl. ¶ 56. If, within that timeframe, the user submits a "counter-notification" to YouTube contesting the DMCA complaint, the user's channel will not be disabled until the complaint and the counter-notification are resolved. Compl. ¶ 46; Am. Compl. ¶ 56.

In both the Original Complaint and the Amended Complaint, the plaintiff contends that YouTube failed to apply its Repeat Infringer Policy in a reasonable manner to non-party TV-Novosti, which allegedly operates 39 YouTube channels on behalf of the Russian government. Compl. ¶¶ 50-51, 53. One of those channels is known as "RT Arabic." Id. ¶ 53; Am. Compl. ¶ 85. On January 2, 2021, Business Casual submitted a DMCA takedown notice to YouTube concerning a video posted on the RT Arabic channel that allegedly copied certain scenes from the J.P. Morgan Video (the "First RT Video"). Compl. ¶ 27; Am. Compl. ¶ 83. On January 11, 2021, "nine days after [Business Casual] filed its DMCA takedown notice," YouTube removed the First RT Video and "applied a copyright strike to TV-Novosti's RT Arabic YouTube channel." Am. Compl. ¶ 85; see Compl. ¶ 28. The Amended Complaint alleges that TV-Novosti filed a counter-notification regarding the First RT Video on January 19, 2021, but then conceded that the counter-notification was a "mistake" and withdrew it the following day. See Am. Compl. ¶¶ 88-89.

On February 9, 2021, Business Casual submitted a second DMCA takedown notice to YouTube concerning another video posted on the RT Arabic channel, which allegedly copied one copyrighted scene from the Rockefeller Video (the "Second RT Video"). Compl. ¶ 32; Am. Compl. ¶ 92. On February 15, 2021, Business Casual submitted a third DMCA takedown notice to YouTube regarding a

5

video livestreamed on the RT Arabic channel (the "Third RT
Video"), which allegedly copied the same scenes from the J.P.
Morgan Video that had appeared in the First RT Video. Compl.
¶¶ 33-34; Am. Compl. ¶¶ 94-95. YouTube removed the Third RT
Video on February 18, 2021, and applied a second copyright
strike to the RT Arabic channel. Compl. ¶ 35; Am. Compl. ¶ 96.

On February 28, 2021, YouTube notified Business Casual that
TV-Novosti had filed a DMCA counter-notification with respect to
the Third RT Video and that YouTube would reinstate the video if
the plaintiff did not seek a court order regarding TV-Novosti's
alleged copyright infringement within ten days. Compl. ¶ 37; Am.
Compl. ¶ 98. The plaintiff timely filed a copyright-infringement
action against TV-Novosti in this Court. Am. Compl. ¶ 104; see
Bus. Casual Holdings, LLC v. TV-Novosti, No. 21-cv-2007
(S.D.N.Y. filed Mar. 9, 2021) (the "TV-Novosti Action").

On March 4, 2021, YouTube removed TV-Novosti's Second RT
Video and applied a third copyright strike to the RT Arabic
channel. Compl. ¶ 38; Am. Compl. ¶ 102. The Amended Complaint
alleges that in the period between YouTube's receipt of the
second takedown notice and its removal of the Second RT Video,
YouTube requested and Business Casual provided certain details
pertaining to YouTube's concern that the Second RT Video might
qualify as "fair use." See Am. Compl. ¶¶ 118-119, 123-125. On
March 12, 2021, YouTube notified Business Casual that TV-Novosti

6

had filed a counter-notification with respect to the Second RT Video. Compl. ¶ 40; Am. Compl. ¶ 105. Business Casual amended its complaint in the TV-Novosti Action accordingly. See Compl. ¶ 41; Am. Compl. ¶ 106.

In sum, as alleged in both the Original Complaint and the Amended Complaint, YouTube removed the First RT Video nine days after it received Business Casual's complaint; the Second RT Video twenty-three days after it received Business Casual's complaint; and the Third RT Video three days after it received Business Casual's complaint. With regard to all three videos, the Original Complaint and the Amended Complaint allege that TV-Novosti had altered watermarks and colors in the infringed images so that the videos would "evade detection from YouTube's copyright-detection technology." Am. Compl. ¶¶ 107-108; see, e.g., id. ¶ 125 (paraphrasing an email in which the plaintiff explained to YouTube that TV-Novosti's alterations "mak[e] it impossible for YouTube's Content Matching Tool to detect [the plaintiff's] original content on [TV-Novosti's] channel"); see also Compl. ¶ 44 (alleging that TV-Novosti manipulated colors and replaced watermarks to "circumvent YouTube's automated . . . Copyright Match Tool" in order "to avoid getting caught doing what it knew was unlawful").

On March 31, 2021, YouTube briefly terminated the RT Arabic channel, but reinstated the channel several hours later. Compl.

¶ 48; Am. Compl. ¶¶ 156, 163. As of the filing of the proposed
Amended Complaint, the First, Second, and Third RT Videos were
still inaccessible on YouTube, see Am. Compl. ¶ 103, though RT
Arabic and TV-Novosti's other YouTube channels remained on the
platform, see, e.g., id. ¶ 22; Compl. ¶¶ 47-49. Between January
and April 2021, Business Casual exchanged correspondence with
several YouTube representatives and "senior" Google executives
regarding its allegations of copyright infringement against TV-
Novosti. See, e.g., Compl. ¶¶ 59, 69-73; Am. Compl. ¶¶ 113, 114-
119, 123-129, 132-138, 146-147. As indicated in the Amended
Complaint, Business Casual's communications with YouTube
repeatedly expressed Business Casual's position that TV-
Novosti's channels should be terminated under YouTube's Repeat
Infringer Policy. See, e.g., Am. Compl. ¶¶ 129, 133, 137.

**B.**

Business Casual filed its Original Complaint against
YouTube on April 22, 2021, alleging that YouTube (1) directly
infringed Business Casual's copyrights, (2) contributed to TV-
Novosti's copyright infringement, and (3) is vicariously liable
for TV-Novosti's copyright infringement. See Compl. ¶¶ 75-98,
99-101, 102-104. On August 18, 2021, YouTube moved to dismiss
all of Business Casual's claims pursuant to Rule 12(b)(6). See
ECF No. 28.

In the First Opinion, this Court granted YouTube's motion
to dismiss in full. See 2022 WL 837596, at *6. Turning first to
the direct infringement claim, the Court concluded that YouTube
could not be held directly liable for TV-Novosti's "post[ing]
[of] infringing content on the platform" because the plaintiff
"failed to plead adequately that YouTube engaged in volitional
conduct relating to TV-Novosti's alleged infringement." Id. at
*3-4. Any claim that YouTube "volitionally caused" the alleged
infringement was simply implausible, given the plaintiff's own
allegations that: (1) YouTube removed the First, Second, and
Third RT Videos shortly after the plaintiff lodged each of its
DMCA complaints; (2) the allegedly infringing videos remained
blocked at the time of the filing of this action; and (3) TV-
Novosti had edited the allegedly copied content to circumvent
YouTube's "automated processes" designed to detect infringing
media. Id. at *4. The Court also rejected the notion that
YouTube's "failure to terminate" TV-Novosti's channels could
support a direct infringement claim, reasoning in part that this
alleged failure did not "cause[] . . . TV-Novosti's decision to
upload the allegedly infringing content." Id.

Additionally, and "irrespective of whether Business Casual
[could] plead adequately" that YouTube engaged in a volitional
infringing act, the Original Complaint failed to state a direct
infringement claim against YouTube "in view of the License." Id.

Business Casual never disputed that its License to YouTube was valid, binding, and enforceable, and under the "clear and broad" terms of that License, YouTube could not "be liable for directly infringing any copyrights associated with content that Business Casual has uploaded to its channel." Id. at *4-5.

Next, the Court found that the plaintiff's contributory infringement claim against YouTube failed for two independent reasons. First, "there [was] no allegation that YouTube knew of TV-Novosti's alleged infringement before Business Casual lodged its DMCA complaints." Id. at *6. Second, in light of Business Casual's allegations that YouTube removed each video shortly after learning of the infringing content, any inference that YouTube "acted in concert" with TV-Novosti or "contributed to the alleged infringement" was implausible. Id.

Finally, the Court determined that Business Casual's claim of vicarious infringement was "similarly without merit." Id. As described in the First Opinion, the plaintiff failed to allege plausibly that YouTube "decline[d] to exercise its right to stop [the] alleged infringement." Id. Further, Business Casual could not hold YouTube vicariously liable for its alleged failure to terminate TV-Novosti's channels, because the Original Complaint made "no allegation that any content currently hosted on any of those channels infringes Business Casual's copyright." Id.

The Court dismissed all of Business Casual's claims against YouTube without prejudice, stating that "[w]hile it is doubtful that Business Casual can file an amended complaint that is not futile, it should be given an opportunity to do so." Id. In July 2022, Business Casual filed its motion for leave to file the Amended Complaint. See ECF No. 56.

## II.

Rule 15(a) provides that courts should "freely give leave [to amend a complaint] when justice so requires." Fed. R. Civ. P. 15(a)(2). However, such leave need not be granted "[w]here a proposed amendment would be futile." Hill v. Curcione, 657 F.3d 116, 123-24 (2d Cir. 2011). "Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6)." In re Tribune Co. Fraudulent Conv. Litig., 10 F.4th 147, 175 (2d Cir. 2021).

The futility inquiry on a motion for leave to amend is "comparable to that required upon a [Rule 12(b)(6)] motion to dismiss." Aetna Cas. & Sur. Co. v. Aniero Concrete Co., 404 F.3d 566, 604 (2d Cir. 2005). In evaluating whether granting leave to amend would be futile, a court must consider both the proposed amendments and the original complaint, "accepting as true all non-conclusory factual allegations therein, and drawing all reasonable inferences in the plaintiff's favor." Pyskaty v. Wide

11

World of Cars, LLC, 856 F.3d 216, 225 (2d Cir. 2017); see also
Tribune Co., 10 F.4th at 175.

### III.

The plaintiff has moved for leave to assert amended claims
of direct, contributory, and vicarious copyright infringement
against YouTube. See Am. Compl. ¶¶ 179-208. In response, YouTube
argues that granting leave to amend would be futile because the
plaintiff has not come forward with any new factual allegations
or legal theories sufficient to state a copyright infringement
claim. YouTube also argues that the plaintiff improperly relies
on the DMCA's "safe harbor" provisions, see 17 U.S.C. § 512, as
the basis for a cause of action against YouTube. For the reasons
below, the plaintiff's motion for leave to amend is **denied**.

### A.

To begin, the plaintiff's Amended Complaint fails to cure
either of the defects that required dismissal of the original
direct infringement claims. As discussed in the First Opinion,
to state a claim for direct copyright infringement, a plaintiff
must plausibly allege that the defendant engaged in "volitional
conduct that cause[d]" the infringement at issue. Wolk v. Kodak
Imaging Network, Inc., 840 F. Supp. 2d 724, 741 (S.D.N.Y. 2012)
(citing Cartoon Network LP v. CSC Holdings, Inc., 536 F.3d 121,
131 (2d Cir. 2008)). Where, as here, the defendant is a provider
of an online platform that hosts content uploaded or transmitted

12

by third-party users, the defendant cannot be held liable for the infringing activities of its users unless that defendant played some "deliberate role" in the alleged infringement. Smith v. BarnesandNoble.com, LLC, 143 F. Supp. 3d 115, 123 (S.D.N.Y. 2015); see First Opinion, 2022 WL 837596, at *3 (collecting cases). In other words, a plaintiff pursuing a direct copyright infringement claim against such a platform must establish that the defendant, by virtue of its conduct, "transformed from a passive provider of a space in which infringing activities happened to occur to an active participant in the process of copyright infringement." Smith, 143 F. Supp. 3d at 123.

Here, the Amended Complaint fails to allege any new facts that would support an inference of volitional infringing conduct on YouTube's part. The causes of action in the Amended Complaint arise out of the same three allegedly infringing videos at issue in the Original Complaint, and the plaintiff has not identified any other YouTube-hosted content that might have infringed its copyrights.[3] Moreover, with regard to the three videos underlying

---

[3] The Amended Complaint includes an allegation that the RT Arabic channel on YouTube featured "thousands of other videos that were believed to have infringed the copyrights of Business Casual and many other channels," Am. Compl. ¶ 165, and the plaintiff also refers repeatedly to "TV-Novosti's years of brazen and repeated infringements of plaintiff's copyrights," id. ¶ 113. However, these vague and conclusory allegations lack the specificity required to plead additional instances of copyright infringement, and the Amended Complaint otherwise fails to identify allegedly infringing content beyond the First, Second,

Business Casual's claims, the Amended Complaint alleges that YouTube removed the videos from its platform shortly after receiving the plaintiff's DMCA copyright complaints, see Am. Compl. ¶¶ 82-85, 92, 94-96, 102, that YouTube continued to block access to those videos at least as of the filing of the Amended Complaint, see id. ¶ 103, and that TV-Novosti had altered the allegedly infringed content to circumvent YouTube's automated copyright-detection system, see id. ¶¶ 107-108, 125. As before, these allegations indicate that YouTube policed its platform for copyrighted content and swiftly removed the allegedly infringing videos once they were brought to YouTube's attention, rendering implausible any inference that YouTube volitionally caused the infringement.[4] See First Opinion, 2022 WL 837596, at *4.

---

and Third RT Videos. See Kelly v. L.L. Cool J., 145 F.R.D. 32, 36 (S.D.N.Y. 1992) (a "properly [pleaded] copyright infringement claim must allege," inter alia, "which specific original works are the subject of the copyright claim" and "by what acts during what time the defendant infringed the copyright"), aff'd, 23 F.3d 398 (2d Cir. 1994); Marvullo v. Gruner & Jahr, 105 F. Supp. 2d 225, 230 (S.D.N.Y. 2000) ("Rule 8(a)(2) has been construed to require a plaintiff to plead with specificity the acts by which a defendant has committed copyright infringement.").

[4] In its motion for leave to amend, Business Casual repeatedly asserts that the Amended Complaint "allege[s] clearly . . . that YouTube provided [TV-Novosti's] channels with access to a secret technology that provides [TV-Novosti] with total immunity from its copyright-detection technology." Pl.'s Memo. of Law, ECF No. 54, at 5. However, contrary to the representations made in the plaintiff's motion, such allegations are completely absent from the Amended Complaint. Perhaps recognizing this discrepancy, the plaintiff submitted with its reply papers a declaration in which Business Casual's founder describes the "secret technology." See Edson Decl., ECF No. 63. But the Court is not entitled to take

In any event, the plaintiff's Amended Complaint fails to
state a claim for direct copyright infringement because it is
devoid of allegations casting doubt on the existence, validity,
or enforceability of the License. As noted in the First Opinion,
"it is a hallmark principle of copyright law that licensors may
not sue their licensees for copyright infringement," Jasper v.
Sony Music Ent., Inc., 378 F. Supp. 2d 334, 339 (S.D.N.Y. 2005),
and here, Business Casual granted to YouTube a broad License to
"use," "reproduce, distribute, prepare derivative works [from],
display, and perform" the content in Business Casual's YouTube
videos, see First Opinion, 2022 WL 837596, at *5. Accordingly,
under the plain language of the License, Business Casual cannot
hold YouTube directly liable for hosting or displaying video
content that Business Casual has uploaded to YouTube's platform.
That would include the hosting or displaying of the copyrighted
video segments that appeared on TV-Novosti's YouTube channel,
because Business Casual had authorized YouTube to display those

---

judicial notice of that declaration, see Fed. R. Evid. 201(b),
and the declaration was not attached to, incorporated by
reference into, or integral to the Amended Complaint. See
Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir.
2000) (identifying the limited exceptions to the general rule
that courts cannot "consider material outside the complaint" in
determining whether the complaint states a claim). Accordingly,
the Court cannot consider the declaration and the plaintiff's
arguments about its contents.

segments when it uploaded the Rockefeller and J.P. Morgan Videos to YouTube.

In its reply papers on the motion for leave to amend, the plaintiff appears to argue that YouTube cannot "rel[y] on [its] License" because YouTube acted as an "unauthorized licensor" of the Business Casual videos. Pl.'s Reply, ECF No. 62, at 11. The plaintiff specifically contends that YouTube was not entitled to "license [its] works to an infringer," and that YouTube is therefore liable for the infringing activity of "unauthorized licensee" TV-Novosti. Id. But this argument misunderstands the import of the License and the nature of YouTube's license defense. The relevant question here is not whether YouTube was entitled to authorize TV-Novosti's use of Business Casual's copyrighted video content.[5] Rather, the question is whether YouTube's use of the plaintiff's content -- here, the display of copyrighted video segments that Business Casual had previously uploaded to YouTube -- fell within YouTube's broad rights as the licensee of the plaintiff's YouTube videos. As discussed above, the License does cover that use.

---

[5] Indeed, the Amended Complaint does not plausibly allege that YouTube even knew of TV-Novosti's infringing use before it received the plaintiff's DMCA notices, much less that YouTube explicitly or implicitly permitted TV-Novosti to copy Business Casual's videos.

In short, TV-Novosti's alleged use of Business Casual's copyrighted video segments might support a direct infringement claim against TV-Novosti.[6] See First Opinion, 2022 WL 837596, at *5. But in view of the License, YouTube's display of those video segments cannot supply a basis for a direct infringement claim against YouTube. Because the Amended Complaint fails to cast doubt on the license defense or adequately plead volitional conduct, granting leave to amend with regard to the plaintiff's direct infringement claims would be futile.

**B.**

The Amended Complaint likewise fails to cure the various deficiencies that compelled the dismissal of the plaintiff's contributory and vicarious infringement claims. To state a claim for contributory copyright infringement, a plaintiff must allege that the defendant had actual or constructive knowledge of, and substantially participated in, a third party's act of direct

---

[6] Business Casual has indeed pursued a copyright infringement action against TV-Novosti. After TV-Novosti failed to litigate the case for some time, the Court granted Business Casual's order to show cause for a default judgment and referred the case to the Magistrate Judge for an assessment of damages, if any, and entry of a final judgment. See TV-Novosti Action, No. 21-cv-2007, ECF Nos. 69, 70. That matter remains pending. According to the plaintiff's Original Complaint, YouTube has informed the plaintiff that if the TV-Novosti Action is resolved in the plaintiff's favor, the plaintiff may submit a "copy of the judgment" to YouTube so that YouTube can take appropriate action under the Repeat Infringer Policy. See Compl. ¶ 73; id. Ex. S, ECF No. 1-19.

17

infringement. Marvullo v. Gruner & Jahr, 105 F. Supp. 2d 225, 230 (S.D.N.Y. 2000). It is not enough to allege simply that the defendant provided the direct infringer with the means to engage in infringing activity. Id. Rather, the contributory infringer "must have acted in concert with the direct infringer." Id.

Like the Original Complaint, the Amended Complaint contains no allegation that YouTube knew of the allegedly infringing TV-Novosti videos before Business Casual lodged its DMCA takedown notices. To the contrary, the Amended Complaint alleges that TV-Novosti manipulated the video content for the precise purpose of evading YouTube's detection. Moreover, because YouTube promptly and permanently removed the First, Second, and Third RT Videos from its platform once it received the plaintiff's DMCA notices, the Amended Complaint does not permit an inference that YouTube acted in concert with TV-Novosti.

The Amended Complaint also fails to state a claim for vicarious infringement. To hold a defendant vicariously liable for another party's infringing act, a plaintiff must allege plausibly that the defendant "profit[ed] from [the] direct infringement while declining to exercise a right to stop or limit it." Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd., 545 U.S. 913, 930 (2005). In this case, the plaintiff's allegations foreclose an inference that YouTube declined to exercise its right to stop TV-Novosti's alleged infringement.

To the contrary, the allegations indicate that YouTube removed the First, Second, and Third RT Videos, and thereby stopped the alleged infringement, shortly after Business Casual notified YouTube of its copyright concerns.

The Amended Complaint repeatedly emphasizes that the Third RT Video infringed the same Business Casual images as the First RT Video, presumably to support an argument that YouTube should have noticed and removed the Third RT Video sooner. See, e.g., Am. Compl. ¶¶ 83, 94, 95, 131. But the alleged similarities between the infringed images do not support an inference that YouTube had specific knowledge of the Third RT Video before it received the plaintiff's DMCA complaint, especially given the Amended Complaint's allegations that TV-Novosti altered those images to evade YouTube's copyright-detection process.

Finally, the Amended Complaint takes issue with the fact that YouTube removed the Second RT Video 23 days after receiving the plaintiff's second DMCA notice. To the extent the plaintiff intends to suggest that the length of this 23-day period renders YouTube secondarily liable for TV-Novosti's infringement, such an argument is meritless. As before, Business Casual "has not pointed to any authority" suggesting that YouTube was obligated to investigate Business Casual's complaint on "a more compressed timeline." First Opinion, 2022 WL 837596, at *4. Moreover, the new allegations in the Amended Complaint indicate that YouTube

19

spent the 23-day period actively communicating with Business Casual and evaluating the alleged infringement, see Am. Compl. ¶¶ 118-119, 123-126, foreclosing any inference that YouTube simply sat back and allowed the alleged infringement to occur. Accordingly, the purported delay in YouTube's removal of the Second RT Video does not support a contributory or vicarious infringement claim against YouTube.

In sum, the Amended Complaint fails to remedy the defects that required the dismissal of the plaintiff's original claims for contributory and vicarious infringement. Thus, granting the plaintiff leave to amend with regard to those claims would be futile.

### C.

As with the Original Complaint, the plaintiff devotes much of the Amended Complaint to arguing that YouTube's alleged refusal to terminate TV-Novosti's channels was inconsistent with YouTube's Repeat Infringer Policy, and thus with the "repeat infringer" provision of the DMCA. See 17 U.S.C. § 512(i)(1)(A). Indeed, the bulk of the new allegations in the Amended Complaint concern YouTube's purported failure to apply its Repeat Infringer Policy to TV-Novosti in a reasonable manner. See, e.g., Am. Compl. ¶ 7 (YouTube did not "apply its three-strike policy to all of [TV-Novosti's] associated channels"); id. ¶ 35 ("Plaintiff has brought this case because [YouTube] refuses to

20

terminate the account of [TV-Novosti] . . . ."); id. ¶¶ 58-62
(identifying alleged flaws in the Repeat Infringer Policy); id.
¶¶ 63-70 (alleging that YouTube maintains an "off-the-books"
"repeat infringer" policy for "special channels"); id. ¶¶ 71-75,
112-113, 129 (alleging that YouTube tolerates the filing of
false counter-notifications); id. ¶¶ 139-155, 156-175
(describing the alleged circumstances of YouTube's "decision"
not to terminate TV-Novosti's channels). The plaintiff also
seeks "disgorgement of all [advertising] revenues" that YouTube
"received from the repeat infringer's thirty-nine channels"
after the allegedly infringing videos were removed, id. at 50,
¶ 4, as well as a declaratory judgment that YouTube, in refusing
to terminate all of TV-Novosti's channels, failed to "reasonably
implement[]" a "repeat infringer policy . . . as contemplated
by" the DMCA, see id. at 50, ¶ 1 (citing 17 U.S.C. § 512(i)(1)(A)).

Plainly, the plaintiff here is attempting to assert an
independent claim against YouTube for its alleged failure to
discontinue TV-Novosti's account in accordance with its Repeat
Infringer Policy. Lest there be any doubt on this point, the
plaintiff asserts in its motion papers that YouTube's failure to
"terminate the accounts of repeat infringers . . . is why we are
here." Pl.'s Reply at 1. But as this Court already made clear,
Business Casual "misconstrues the safe harbor provisions of the
DMCA and how [those provisions] interact with the other federal

copyright laws." First Opinion, 2022 WL 837596, at *5. The DMCA
does not establish an affirmative cause of action. Rather, the
DMCA provides internet service providers ("ISPs") with potential
"safe harbor" defenses that will shield ISPs from liability for
copyright infringement so long as certain statutory criteria,
including the maintenance of a policy for terminating "repeat
infringers," are met. See Arista Records LLC v. Usenet.com,
Inc., No. 07-cv-8822, 2008 WL 4974823, at *4 (S.D.N.Y. Nov. 24,
2008); Martin v. Tumblr, Inc., No. 15-cv-8338, 2017 WL 11665339,
at *4 (S.D.N.Y. Feb. 10, 2017) (DMCA provision "does not create
a right of action, but rather creates a defense to liability, or
safe harbor"); see also 17 U.S.C. § 512(i)(1)(A) (an ISP will
qualify for the "limitations on liability established by this
section . . . only if the [ISP] . . . has adopted and reasonably
implemented" a "policy that provides for the termination" of
"repeat infringers"). Put differently, an ISP's compliance with
the DMCA's safe harbor provisions does not come into play until
a plaintiff pleads a viable copyright infringement claim against
the ISP in the first instance, at which point, the ISP may
assert its eligibility for a safe harbor as a defense to
liability. See Arista Records, 2008 WL 4974823, at *4 (DMCA's
"limitations of liability apply if the provider is found to be
already liable under existing principles of law").

In short, Business Casual cannot transform the DMCA's prerequisites for a safe harbor defense into the basis for an affirmative claim against YouTube. That is not how the statute was written, and it is not for the Court to permit a cause of action that Congress did not create. The allegations concerning YouTube's failure to terminate TV-Novosti's channels would be relevant here only if the plaintiff had first pleaded a plausible claim for copyright infringement, thereby shifting the burden to YouTube to establish its entitlement to a DMCA safe harbor defense. But the Amended Complaint fails to state an infringement claim against YouTube, and accordingly, whether YouTube has complied with the DMCA's "repeat infringer" provision is immaterial here.[7]

---

[7] For reasons similar to those set forth in the First Opinion, any argument that YouTube is directly or secondarily liable for copyright infringement based on its purported failure to terminate TV-Novosti's channels is meritless. See First Opinion, 2022 WL 837596, at *4, *6. YouTube is alleged to have removed each of the three infringing TV-Novosti videos shortly after receiving Business Casual's DMCA notices, and the Amended Complaint contains no allegation that any videos currently hosted on TV-Novosti's YouTube channels are infringing Business Casual's copyrights. Further, YouTube's claimed refusal to terminate TV-Novosti's channels postdates both TV-Novosti's posting of the three allegedly infringing videos and YouTube's removal of them. Thus, YouTube's alleged failure to terminate TV-Novosti's channels could not have caused or contributed to TV-Novosti's decision to upload the allegedly infringing content at the outset, nor could it constitute volitional conduct that caused or perpetuated the alleged infringement.

CONCLUSION

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed, the arguments are either moot or without merit. For the foregoing reasons, the plaintiff's motion for leave to file the Amended Complaint is **denied,** and the action is **dismissed with prejudice.** The Clerk of Court is respectfully directed to close all pending motions, to enter judgment dismissing this action with prejudice, and to close this case.

**SO ORDERED.**

Dated:     New York, New York
           November 22, 2022

                                        _____
                                             John G. Koeltl
                                        **United States District Judge**